UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF NEW YORK
------------------------------------------------------------------X

**JOSHUA HARPER**,

                                              Plaintiff,


            -against-

**VILLAGE OF HILLBURN**, **VILLAGE OF**
**HILLBURN BOARD OF TRUSTEES, and**
**LAWRENCE H. MCMANNIS, as**
**Building Inspector**,

                                         Defendants.


------------------------------------------------------------------X

**NOTICE OF REMOVAL**

        The Village of Hillburn, Village of Hillburn Board of Trustees and Lawrence H.

McMannis, as Building Inspector, by their attorney, Terry Rice, file this Notice of

Removal of the above-described action to the United States District Court for the

Southern District of New York from New York State Supreme Court, Rockland County

where the action is now pending as provided by 28 U.S.C. § 1441 *et seq*, including 28

U.S.C. § 1441(c). The grounds for removal are as follows:

        1.    The above-entitled action was commenced by the filing of a summons and complaint

on January 13, 2025, and is now pending in that Court. The pleading was assigned Index No.

030207/2025. A true copy of the process, pleadings and orders filed in the action are annexed

hereto as Exhibit "A".

        2.    The action was commenced against Defendants in New York State Supreme Court,

Rockland County by the Plaintiff and is a civil action. The complaint asserts Fourth Amendment,

Equal Protection, Due Process, Fifth Amendment taking and Fair Housing Act claims pursuant to 42 U.S.C. § 1983.

3.   The District Court has jurisdiction in that the civil action arises under the Constitution and laws of the United States and involves a federal question. As a result, this action may be removed to this Court pursuant to 28 U.S.C. §§ 1441(c) and 1331.

4.   This Notice of Removal is proper in that it is filed within thirty (30) days of receipt of the pleading setting forth the claim for relief for which removal is based.

5.   On January 14, 2025, Defendants emailed written notice of the filing of this Notice of Removal to counsel for Plaintiff as required by 28 U.S.C. § 1446(d) and notified counsel by filing the same on the New York State Courts Electronic Filing site, a copy of which is annexed hereto as Exhibit "B".

6.   On January 14, 2025, Defendants filed a copy of this Notice of Removal with the Clerk of New York State Supreme Court, Rockland County as required by 28 U.S.C. § 1446(d) (Exhibit "B").

**WHEREFORE**, Defendants, without waiving any defenses or objections, request that this action proceed in the United States District Court for the Southern District of New York as an action properly removed pursuant to 28 U.S.C. § 1441 *et seq*.

Dated: Suffern, New York
      January 14, 2025

/s  *Terry Rice*
Terry Rice (TR 1022)
Attorneys for Defendants
Four Executive Boulevard
Suite 100
Suffern, New York 10901
(845) 5590-8430
tr0823@msn.com

EXHIBIT "A"

Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 4 of 167

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-------------------------------------------------------------------X

JOSHUA HARPER,

                              Plaintiff,

                   -against-

VILLAGE OF HILLBURN, VILLAGE OF HILLBURN
BOARD OF TRUSTEES, and LAWRENCE H.
MCMANNIS, as Building Inspector,

                           Defendants.

-------------------------------------------------------------------X

Index No.:

**SUMMONS**

Plaintiff Designates Rockland
County as the place of trial.

Venue is based
 on CPLR § 504.

***TO THE ABOVE-NAMED DEFENDANT(S):***

       **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve
a copy of your Answer; or, if the Complaint is not served with this Summons, to serve a Notice of
Appearance upon the Plaintiff's Attorneys, within twenty (20) days after the service of this
Summons, exclusive of the date of service or within thirty (30) days after the service is complete
if this Summons is not personally delivered to you within the State of New York.  If you fail to so
appear or answer, judgment will be taken against you by default for the relief demanded in the
Complaint.

Dated: Nanuet, New York
        January 13, 2025

                              Yours, Etc.,

                              CONDON PAXOS PLLC

                              By: *Aron Goldberger*
                                 Aron Goldberger
                                 Brian K. Condon
                              *Attorneys for Plaintiff, Joshua Harper*
                               55 Old Turnpike Road, Suite 502
                               Nanuet, New York 10954
                               (845) 627-8500 (Telephone)
                               Aron@CondonPaxos.com
                               Brian@CondonPaxos.com

Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 5 of 167

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-------------------------------------------------------------------X

JOSHUA HARPER,

                           Plaintiff,

                  -against-

VILLAGE OF HILLBURN, VILLAGE OF HILLBURN
BOARD OF TRUSTEES, and LAWRENCE H.
MCMANNIS, as Building Inspector,

                          Defendants.

-------------------------------------------------------------------X

Index No.:

**<u>VERIFIED COMPLAINT</u>**

Plaintiff, JOSHUA HARPER, by and through his counsel, CONDON PAXOS PLLC, as and for his Verified Complaint in the above-captioned action against the Defendants VILLAGE OF HILLBURN, VILLAGE OF HILLBURN BOARD OF TRSUTEES, and LAWRENCE H. MCMANNIS, as Building Inspector, respectfully allege on personal knowledge as to his own actions, and upon information and belief as to the actions of others and matters of public record, as follows:

<u>**INTRODUCTION**</u>

1.    This is an action for declaratory judgment and injunctive relief pursuant to CPLR 3001 arising from the illegal, discriminatory, unconstitutional policies, practices, and threats of Defendants Village of Hillburn, Village of Hillburn Board of Trustees, and Lawrence H. McMannis, as Building Inspector (collectively "Defendants"), recent legislation requiring property owners to apply for a permit and allow Defendants to inspect Plaintiff Harper's property without a warrant or probable cause if Plaintiff Harper wishes to rent his single unit home to a family.

2.    Over the course of the past two decades, as Orthodox Jewish communities have continued to grow and seek out space to practice their faith in Rockland County, there has been a disturbing rise in antisemitic animus directed at these communities, sometimes in the form of harassment and violence, and other times manifesting in more systemic and insidious ways, including in how municipalities have utilized rental registration laws to burden and exclude Orthodox Jews.

3.    Upon information and belief, Defendants have done so because the residents feared and complained that the "PENGUIN PEOPLE" – a pejorative reference to religious Jews black and white clothing – were "tak[ing] over" the Village of Hillburn. See copy of Facebook posts attached as **Exhibit "A."**

4.    In response to this perceived threat, the Village of Hillburn upon information and belief concocted a pretextual rental registry law, under the guise of a "safer and nicer quality of life," designed to disproportionally target and burden Plaintiff Harper, an Orthodox Jewish renter, with the aim of discouraging Orthodox Jewish residents from moving into the Village of Hillburn.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction because Plaintiff Harper seeks a declaratory judgment that Local Law 3 of 2023 is jurisdictionally flawed and was passed with discriminatory intent in violation of the Fair Housing Act. Plaintiff Harper also seeks to vindicate his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983 to redress the deprivation of his Constitutional rights.

6.    This Court has concurrent jurisdiction over the federal constitutional claims as held in *Martinez v. California*, 444 US 277 (1980); *Brown v. State*, 89 NY2d 172 [1996].

7.    Venue is proper in Rockland County, New York pursuant to CPLR §504.

## THE PARTIES

8.    At all relevant times herein, Plaintiff Joshua Harper ("Plaintiff Harper" or "Plaintiff") is an Orthodox Jew and taxpaying resident, and the owner of real property situated at 7 Brook Street, Hillburn, New York 10931. Plaintiff Harper's property is situated within five hundred feet of Old Route 17, an existing state thruway, road, or highway.

9.    Upon information and belief, Defendant Village of Hillburn ("Village" or "Hillburn"), was and still is, at all times relevant hereto, a municipal corporation duly formed and existing pursuant to the laws of the State of New York, with a principal place of business located at 31 Mountain Avenue, Hillburn, New York 10931.

10.    Upon information and belief, Defendant Village of Hillburn Board of Trustees ("BOT") is the duly organized and existing governing and legislative body of the Village of Hillburn, New York. The BOT is responsible for the advancement and passage of Local Law 3 of 2023, titled regulating rental properties ("Local Law 3").

11.    Upon information and belief, Defendant Lawrence H. McMannis serves as Hillburn's Building Inspector ("Building Inspector"). The Building Inspector is named herein in his official capacity to enjoin him from enforcing Local Law 3 of 2023.

## FACTUAL BACKROUND

12.    The Village of Hillburn is located in Rockland County, in the Town of Ramapo, with a population of approximately 1,000 people.[1]

13.    In or around 2017 Plaintiff Harper moved to Hillburn seeking a peaceful and welcoming environment to establish a home, raise children, and contribute to the community.

---

[1] https://www.hillburn.org/.

14. Rather than being met with acceptance, Plaintiff Harper as a member of the Orthodox Jewish community encountered hostility and resistance fueled by discriminatory rhetoric and actions.

15. On or around 2021, Plaintiff Harper and the Orthodox Jewish community attempted to install and *Eruv* (symbolic borders that enable members of the Orthodox Jewish community to carry items and push strollers outdoors on the Sabbath) in Hillburn.

16. While the Mayor of Hillburn initially granted the request, upon information and belief, fierce protest from fellow Hillburn residents led to the revocation of the approval permit.

17. At a Hillburn public hearing, one resident stated, "Putting this in our faces is a racist approach; will anyone protect our spiritual paths from these fish lines" See a copy of the Board Minutes attached as **Exhibit "B."**

18. As Facebook posts from this period indicate, these complaints were largely based on antisemitic sentiments: one resident lamented on Facebook that "Time's acoming for a new village name Kiriasburn" (an apparent reference on the Jewish-majority Village of Kiryas Joel). See **Exhibit "A."**

19. Upon information and belief, as a result of this antisemitic backlash, it took over three years for the *Eruv* to be installed, which only occurred after the Orthodox Jewish community obtained legal advice that the *Eruv* installation was under the jurisdiction of Orange & Rockland, Inc., as opposed to the Mayor of Hillburn.

20. As more members of the Orthodox Jewish community moved into Hillburn, the hostility and hate they encountered intensified.

21. When a resident posted a flyer of a Jewish organization located in Hillburn on Facebook, the first comment stated: "We all knew that Hillburn was under attack. This just

confirms it. What are Hillburn residents going to do to preserve their history and traditions?" See **Exhibit "A."**

22.  Another user commented on that post stating "Watch out Hillburn, looks like your about to be run over, don't let that happen. Fight the good fight." See **Exhibit "A."**

23.  As the Orthodox Jewish community sought to acquire a house for use as a synagogue, upon information and belief, residents complained that the BOT was "selling out" to the Orthodox Jewish community, which prompted the BOT to define Place of Worship/Neighborhood as:

> "A portion of a one-family detached residence used exclusively for the conduct of organized religious services. No school or outside catering is permitted. At least 75% of the membership must live within a three-quarter (3/4) mile radius of the neighborhood place of worship."

Local Law No. 5 of 2021, amending Chapter 250 of the Village Code.

24.  At a public hearing on or about October 6, 2021, discussing Local Law 5 of 2021, Hillburn's Mayor stated, "that it has come to his attention that a rumor has been circulating around town that this Village Board is selling out to the Jewish community nothing is farther from the truth than that." See a copy of the October 26, 2021, Board Minutes attached as **Exhibit C**

25.  At another public hearing on or about November 16, 2021, discussing Local Law 5 of 2021, Hillburn's Mayor stated that a house of worship can currently "be placed anywhere in this village." He further stated that "[w]e are trying to restrict it a little bit more by putting them in areas that are not in residential areas. That's the whole idea of changing the premise in this and updating it." See a copy of the November 16, 2021, Board Minutes attached as **Exhibit D**

26.  However, the other non-Jewish houses of worship in Hillburn, such as Brook Church and Lighthouse Worship, were grandfathered and received an exemption from the BOT as a pre-existing house of worship.

INDEX NO. 030207/2025
RECEIVED NYSCEF: 01/13/2025

27.   On or around April 25, 2023, Hillburn held a public hearing, and the Village Clerk read the duly posted and published Notice of Public Hearing of Local Law 3 of 2023 (although introduced as Local Law No. 2 of 2023, by the time it was adopted, it was designated as Local Law No. 3 of 2023), which created chapter 188 of the Village Code entitled Rental Properties. See a copy of the April 25, 2023, Board Minutes attached as **Exhibit "E."**

28.   Thereafter, on May 9, 2023, there was a continuation of the public hearing on Local Law 3. The Village attorney summarized that the purpose of the local law "would require the owner of any rental property to register with the Village and obtain a permit that requires inspection." See a copy of the May 9, 2023, Board Minutes attached as **Exhibit "F."**

29.   At the May 9, 2023, public hearing, a member of the BOT stated that "it is important for the H.F.D. [Hillburn Fire Department] to know how many people are in the dwelling."

30.   Yet, offered no explanation as to why it was not important for the Hillburn Fire Department to know how many people are in every home in Hillburn, regardless of whether it is a rental property.

31.   At the close of the hearing, a motion was made by the BOT for a resolution to adopt Local Law 3. By resolution of the BOT on May 9, 2023, Local Law 3 was adopted by the BOT.

32.   On or around May 16, 2023, Hillburn submitted a Local Law Filing to the New York Secretary of State, upon which date Local Law 3 became immediately effective. See a copy of the filed documents attached as **Exhibit "G"**.

33.   Pursuant to General Municipal Law ("GML") 239-m, Hillburn was obligated to refer Local Law 3 to the County Planning Department for comment.

34.   However, Hillburn enacted Local Law 3 without referring the legislation to the Rockland County Department of Planning as mandated by GML § 239-m.

35.  On or around April 2024, Plaintiff Harper purchased a second home in Hillburn with the intent of renting his initial home to a single family.

36.  In accordance with all applicable legal requirements, Plaintiff successfully leased his home and ensures its responsible maintenance as a rental home.

37.  In or around July 2023, the Orthodox Jewish community sought a permit to use a single room in a home as a synagogue, which was denied multiple times with no sound basis or compelling governmental justification.

38.  Thereafter, the Orthodox Jewish community proceeded with its required appeal to the Zoning Board of Appeals.

39.  To that end, the Zoning Board of Appeal's treatment did not improve once the hearing finally took place on September 16, 2024. Instead, the hearing presented the Zoning Board of Appeals with an opportunity to air its hostility towards the Orthodox Jewish community in full public view.

40.  Within the first ten minutes of the almost ninety-minute hearing, one representative, for example, remarked that, should the variances be approved to use a house as a place of worship, "this nice little town of Hillburn that we all grew up and spent our lives in [would] slowly be . . . segregated,"[2] reflecting the discriminatory underpinnings of Hillburn's resistance to its changing demographic composition.

41.  On or around November 21, 2024, Hillburn sent out a letter to property owners informing them of Local Law 3 and attaching the form to be completed, stating that the form must

---

[2] *See* Joshua Harper, *2024 09 16 18 04 32*, YouTube (Sept. 16, 2024), https://www.youtube.com/watch?v=3hgiyrrKieE.

be filed with the building department no later than January 15, 2025, with a fee of $25.00 for 1-2 units.[3]

42.   The rental application form imposes excessive and intrusive requirements mandating the name of each occupant, whether the occupant is an adult or child, and the specific bedroom or room they occupy within their personal home. § 188-3(6)-(7).

43.   Local Law 3 states that an owner of real property who fails to permit the Building Inspector to inspect their property is denied a permit and cannot lawfully rent their property in Hillburn. § 188-2(B).

44.   Local Law 3 includes all properties that are non-owner occupied. § 188-1.

45.   Local Law 3 authorizes the Building Department to conduct inspections of each rental property, with at least one inspection per year required. § 188-4(A).

46.   Essentially, Local Law 3 authorizes Hillburn officials to conduct a *full* inspection of a rental home, curtilage, and outbuildings. Local Law 3 authorizing property inspections does not specify its scope. During these inspections, the Building Inspector could search for evidence that can result in criminal charges and/or condemnation of the property.

47.   Evidence adduced through inspection could result in a violation, which needs to be remedied within the Building Inspector's determined timeframe. Failure to remedy said violation in conformance with said report or within the Building Inspector's arbitrary timeframe, automatically constitutes a violation of Local Law 3.  § 188-4(B).

48.   If the owner of the property chooses to exercise his Constitutional rights and refuses to allow an inspection, the Building Inspector may deny the owner a permit with respect to his property. § 188-4(A).

---

[3] https://hillburn.org/News-Events/rental-registry.

49.  The Building Inspector may then decline a future rental application if the permit has been revoked within the previous year. § 188-8(6)(b).

50.  Moreover, the Building Inspector may arbitrarily impose conditions and restrictions as are directly related to and incidental to the use of the property. § 188-8(4).

51.  Local Law 3 goes even further and prohibits tenants and guests from parking their motor vehicles on any part of the lawn on their own property or on the public or private street for which they pay taxes.

52.  A property owner's rental permit that is revoked or suspended by the Building Inspector may file with the Village Clerk a letter setting forth the basis for his/her contention that the suspension or revocation is erroneous within five days. § 188-9

53.  At which point, the BOT must provide the property owner with an opportunity to be heard, either in writing or in person, to either affirm, reverse or modify the suspension or revocation. *Id.*

54.  Local Law 3 sets forth civil penalties, in addition to existing criminal penalties, for any property owner that violates, disobeys, neglects or refuses to comply with the terms of Local Law 3 as follows:

    a) A violation of this chapter shall be subject to a fine of up to $5,000 and/or up to 30 days in jail;
    b) Each week a violation continues shall be deemed a separate offense subjecting the offender to additional weekly fines of up to $5,000 and/or additional jail sentences of up to 30 days.

§ 188-10(A).

55.  An owner of rental property who fails to permit the Building Inspector to inspect their property is also subject to having liens placed on their property as a result of the refusal. § 188-10(C).

56. Further, in the event Hillburn seeks injunctive relief or some other form of relief from a Court to enforce the provisions of Local Law 3, then in such event the defendant/respondent shall pay the legal fees and expenses incurred by Hillburn in such court proceeding. § 188-10(B).

57. Plaintiff Harper maintains standing to bring this action because if he does not consent to a warrantless search of his property, he is faced with (1) criminal charges and fines; and/or (2) loss of all rental income related to his only rental property.

58. A state actor is liable under 42 U.S.C. § 1983 if it took action pursuant to official policy of some nature that caused a Constitutional tort under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

59. Government liability may be imposed for a single decision by Government policy makers under appropriate circumstances

60. In the event that the tenant refuses to give such consent, Plaintiff Harper is placed in the position of being in violation of Local Law 3, subject to its exorbitant penalties and potential civil damages.

61. Upon information and belief, no tenant or neighbor of Plaintiff Harper has ever complained to Hillburn regarding code violations or other nuisances at his property.

62. Meanwhile, Plaintiff Harper maintains no conditions at his property that would (1) give rise to the need for an emergency entry into his property; or (2) vest Hillburn with probable cause to believe that Plaintiff Harper maintains an interior code violation or other nuisance at this time.

63. Plaintiff Harper currently maintains no substantive interior code violations within his rental property.

64. Plaintiff Harper has never been prosecuted or fined by Hillburn for maintaining interior code violations or other nuisances.

65. Plaintiff Harper is, by all accounts, a model property owner and landlord.

**AS AND FOR A FIRST CAUSE OF ACTION**
**DECLARATORY JUDGMENT THAT LOCAL LAW 3 IS INVALID PURUSANT TO**
**GENERAL MUNICIPALITY LAW 239-m**

66. The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Verified Complaint as if the same were more fully set forth herein.

67. Local Law 3 constitutes an amendment to Hillburn's property ordinances.

68. As set forth in its title, GML 239-m deals with "Referral of certain proposed city, town and village planning and zoning actions to the county planning agency."

69. As applicable here, GML 239-m(2) mandates that "[i]n any . . . village which is located in a county which has a county planning agency . . . each referring body shall, before taking final action on proposed actions included in GML 239-m(3), refer the same to such county planning agency or regional planning council."

70. The requirements in the statute are imposed upon a referring body, such as Hillburn, before "final action" may be taken by such referring body.

71. Pursuant to GML239-m(3)(a)(ii), Hillburn's "adoption or amendment of a zoning ordinance *or local law*" is one of the proposed actions subject to such referral requirements, if that ordinance or local law applies to real property listed in GML 239-m(3)(b).

72. As set forth in GML §239-m(3)(b)(iii), real property within five hundred feet of "any existing or proposed county or state parkway, thruway, expressway, road or highway."

73. Here, Local Law 3 applies to Plaintiff Harper's real property located within 500 feet of Old Route 17, a state road or highway.

74.  In sum, before a village board takes final action to adopt or amend a zoning ordinance or local law affecting real property located within five hundred feet of any existing or proposed county or state parkway, thruway, expressway, road or highway, the BOT must first refer that ordinance or local law to the Rockland County Department of Planning.

75.  Yet upon information and belief, Hillburn failed to refer Local Law 3 to the County Planning Department for process as mandated by the aforementioned statues.

76.  By reason of the foregoing, Local Law 3 should be declared and adjudged jurisdictionally flawed, defective, and void.

**AS AND FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF UNREASONABLE SEARCHES AND SEIZURES PURSUANT TO THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**(42 U.S.C. § 1983)**

77.  The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Verified Complaint as if the same were more fully set forth herein.

78.  The Fourth Amendment of the United States Constitution, which is applicable to the states by operation of the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

79.  The Plaintiff maintains a legitimate expectation of privacy at his home located in the Village of Hillburn.

80.  Among these protected rights is the individual interest in avoiding disclosure of personal matters, such as the name of each occupant, specifying whether they are an adult or child, and the specific bedroom or room they occupy within their personal home.

Page **12** of **24**

81.  "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Court*, 387 U.S. 523, 527 (1967).

82.  The Supreme Court has repeatedly held that "searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *City of Los Angeles, Calif. v. Patel*, 576 US 409 (2015).

83.  This rule, which applies to the states via the Fourteenth Amendment, is applicable to both commercial premises as well as private homes. *See Marshall v. Barlow's, Inc.*, 436 U.S. 311, 312 (1978).

84.  As the Supreme Court has noted, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313 (1972).

85.  The Fourth Amendment guarantees Plaintiff the right to refuse warrantless government inspections of their home unless the government first secures a valid administrative search warrant issued by a neutral party authorized to issue an administrative search warrant, or unless an emergency exists.

86.  An exception to the warrant requirement has been recognized for searches of pervasively or closely regulated industries. *New York v. Burger,* 482 U.S. 691 (1987) (junkyard industry).

87.  Plaintiff is not doing business in a "pervasively or closely regulated industry."

88.  Even if Plaintiffs were operating in such an industry, in *New York v. Burger,* the Supreme Court enunciated three criteria that must be met before any such warrantless inspection

Page **13** of **24**

or search is constitutionally acceptable: First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be necessary to further [the] regulatory scheme. Finally, the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant.

89.   A rental homeowner's rental property is (1) a "house," as specified in the Fourth Amendment; and (2) at least equivalent to the "commercial property" held to be entitled to Fourth Amendment protection.

90.   Local Law 3 is an inspection requirement, as a physical intrusion into a home to collect information that can later be used in a criminal prosecution, is a "search," as contemplated by the Fourth Amendment.

91.   The warrantless inspection of rental homes located within Hillburn is not "necessary to further the regulatory scheme." For example, Hillburn could operate a complaint-driven scheme, one that relies upon probable cause, or one that enlists property owners' use of private building inspectors.

92.   Thus, without warrant or review by a neutral magistrate, Local Law 3 allows the Building Inspector to intrude upon and search citizens' home, bedroom, pantries, closets, and everywhere in between and resulting subject Plaintiff Harper to significant criminal and civil penalties as well as violations of established property rights.

93.   Local Law 3 property inspections violate Plaintiff Harper's right to be free from unreasonable searches by (1) coercing property owner's consent to such searches, and (2) violating tenants' reasonable expectation of privacy, while (3) maintaining no warrant requirement.

94. As the Court of Appeals stated in *Sokolov v. Village of Freeport*, a "property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property." 52 N.Y.2d 341, 346 [1981].

95. The Local Law 3 warrant process (1) is not predicated on neutral principles; (2) is tantamount to a general warrant inviting an open search; and (3) does not require probable cause.

96. Local Law 3 is not predicated on neutral principles because it arbitrarily discriminates against rental homes, while refraining from inspecting owner-occupied properties of any kind, irrespective of the property's conditions.

97. Local Law 3, therefore, violates Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments of the U.S. Constitution, both facially and as applied, to be free from unreasonable search and seizures and to refuse entry to the Building Inspector without a search warrant.

98. Defendants, intentionally and acting under color of state law, have deprived and continue to deprive Plaintiff Harper of his fundamental Constitutional right against unreasonable searches and seizures of his property and personal information.

99. Local Law 3 inflicts irreparable harm on Plaintiff Harper, who has a Constitutional right to be free from unreasonable searches and seizures, but for Local Law 3.

100. Plaintiff Harper has a substantial likelihood of success on the merits of his claims under the Fourth and Fourteenth Amendments. Plaintiff Harper lacks an adequate remedy at law for his infringement on his fundamental right against unreasonable search and seizures, and the

harm that Plaintiff Harper would suffer from denial of an injunction exceeds any legally cognizable harm an injunction may inflict upon Defendants. The public interest favors enjoining enforcement of Local Law 3.

101. As a direct and proximate result of the above violation of Plaintiff Harper's rights protected under the Fourth and Fourteenth Amendments, Plaintiff Harper has suffered an unlawful deprivation of his fundamental Constitutional right to be free from unreasonable searches and seizures and will continue to suffer such an injury until granted the relief sought herein.

102. Plaintiff Harper is entitled to injunctive relief in the form of a temporary restraining order, preliminary injunction, and ultimately a permanent injunction, enjoining Defendants from enforcing Local Law 3 in order to protect against the irreparable harm of ongoing deprivation of Fourth and Fourteenth Amendment rights.

103. Plaintiff Harper is further entitled to a declaration that Local Law 3 violates the Fourth and Fourteenth Amendment rights of Plaintiff Harper, and that Local Law 3 is unconstitutional as applied to Plaintiff Harper and on its face.

104. Plaintiff Harper is also entitled to compensatory and/or punitive damages, or nominal damages, in an amount to be determined upon a jury trial, as well as attorneys' fees.

**AS AND FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF THE RIGHT TO EQUAL PROTECTION PURSUANT TO THE**
**FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**(43 U.S.C. § 1983)**

105. The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Verified Complaint as if the same were more fully set forth herein.

106. The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Page **16** of **24**

107. The Equal Protection Clause prohibits states from making distinctions that intentionally treat Plaintiff differently from others similarly situated and there is no rational basis for the difference.

108. Courts have applied "a class-of-one theory" that holds that a single individual can claim a violation of his Equal Protection rights based on arbitrary disparate treatment.

109. The Local Law 3 search requirement is arbitrary and is not predicated on neutral principles because it arbitrarily discriminates against tenants of single family rental homes, while refusing to inspect single family owner-occupied homes.

110. The singling out of Plaintiff's property, and other single-family rental dwellings, while ignoring owner-occupied homes, is neither necessary nor rationally related to a legitimate government purpose.

111. There is neither a necessary nor even a rational basis for classifying single family rental homes and their owners and tenants as subject to an intrusive and comprehensive government search, whether with or without a warrant, while entirely exempting owner-occupied properties and their owners and occupants.

112. Furthermore, Local Law 3 treats renters as second-class citizens and prohibits tenants and guests from parking their motor vehicles on any part of the lawn on their own property or on the public or private street.

113. Consequently, Local Law 3 burdens Plaintiff Harper's fundamental Fourteenth Amendment rights while exempting similarly situated property owners from similar burdens.

114. Plaintiff Harper has no adequate remedy at law and seeks injunctive and declaratory relief for the deprivation of his Fourteenth Amendment rights by Defendants under color of state law.

Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 22 of 167

115. Plaintiff Harper is also entitled to compensatory and/or punitive damages, or nominal damages, in an amount to be determined upon a jury trial, as well as attorneys' fees.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF DUE PROCESS PURSUANT TO THE**
**FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**(42 U.S.C. § 1983)**

116. The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Verified Complaint as if the same were more fully set forth herein.

117. The Fourteenth Amendment to the United State Constitution provides "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]". U.S. Const. Amend. XIV, § 1.

118. The right to own and rent property is a fundamental right under the United States Constitution, and Plaintiff has a property interest in the ownership and use of his property.

119. The ability to lease property is a fundamental privilege of property ownership.

120. Local Law 3 deprives Plaintiff of his property rights by conditioning use of his rental property upon the waiver of the Ninth and Fourteenth Amendment Rights.

121. The Supreme Court of the United States has confirmed in a variety of contexts that government may not deny a benefit to a person because he exercises a constitutional right.

122. The Supreme Court has consistently applied the Unconstitutional Conditions Doctrine within the context of land use permitting.

123. Plaintiff rents his property in order to offset ownership expenses and maintain affordability of his second homes in exercise of his fundamental property ownership rights.

124. Plaintiff purchased, acquired, or invested in his second homes in Hillburn with the expectation of engaging in renting the property as a historically allowable use in order maintain affordability.

125. While each of these homes possesses a valid Certificate of Occupancy or Certificate of Compliance duly issued by Hillburn, if required, many of them do not, and are not required to, meet current building codes.

126. Yet by requiring a certification that the rental property complies with the current Code the Town is effectively revoking the Certificates of Occupancy and/or Certificates of Compliance issued for these properties without an administrative hearing, thereby preventing the leasing of these properties unless expensive, and unnecessary renovations are made to bring the properties to current code, all in violation of the Plaintiff Harper's procedural due process rights.

127. Moreover, any appeal of a property violation is conducted by the BOT, the same body that enacted the underlying law.

128. The BOT's vested interest in upholding Local Law 3 infects the hearings they conduct and raises a substantial question of bias.

129. Accordingly, Local Law 3 violates Plaintiff Harper's rights to substantive and procedural due process, both on its face and as applied, to the extent it extinguishes or irrationally interferes with Plaintiff Harper's previously permitted uses of his property at the time of acquisition and violating Plaintiff Harper's right to a neutral and impartial decision-maker.

130. Hillburn has no rational basis for the absence of grandfathering provisions in Local Law 3 and resulting immediate extinguishment of rights relative to Plaintiff Harper's previously permitted use of his rental property.

131. Plaintiff Harper has no adequate remedy at law and seeks injunctive and declaratory relief for the deprivation of his Fourteenth Amendment rights by Defendants under color of state law.

Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 24 of 167

132. Plaintiff Harper is also entitled to compensatory and/or punitive damages, or nominal damages, in an amount to be determined upon a jury trial, as well as attorneys' fees.

### AS AND FOR A FIFTH CAUSE OF ACTION
### VIOLATION OF THE TAKINGS CLAUSE PURSUANT TO THE
### FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (42 U.S.C. § 1983)

133. The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Verified Complaint as if the same were more fully set forth herein.

134. The Takings Clause of the Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth, provides that private property shall not "be taken for public use, without just compensation."

135. Hillburn, acting under color of law, has taken and deprived Plaintiff Harper of his significant property rights without a sufficient legal or factual basis, and without due process, in violation of the Fourteenth Amendment.

136. At issue here is a "regulatory taking," where a "state regulation goes too far and in essence effects a taking.

137. Local Law 3 upsets Plaintiff Harper's reasonable investment backed expectations in acquiring their properties in Hillburn resulting in unanticipated and unsustainable losses.

138. The Building Inspector has the authority to arbitrarily determine whether a violation occurred, how much time Plaintiff Harper will be allotted to remedy said violation.

139. Failure to remedy said violation in conformance with the report or within the Building Inspector's arbitrary timeframe, automatically constitutes a violation of Local Law 3, which carries the imposition of a $5,000 fine per week and/or jail time.

140. A violation of Local Law 3 also allows the Building Inspector to revoke Plaintiff Harper's permit to rent his property and deny Plaintiff Harper a rental permit for the next year.

141. This substantial economic impact upon Plaintiff constitutes an unconstitutional taking of Plaintiff's property without just compensation in violation of the Takings Clause.

142. Plaintiff Harper has no adequate remedy at law and seeks injunctive and declaratory relief for the deprivation of his Fifth Amendment right by Defendants under color of state law.

143. Plaintiff Harper is also entitled to compensatory and/or punitive damages, or nominal damages, in an amount to be determined upon a jury trial, as well as attorneys' fees.

## AS AND FOR A SIXTH CAUSE OF ACTION
## VIOLATION OF THE FAIR HOUSING ACT
### (42 U.S.C. § 3604)

144. The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Verified Complaint as if the same were more fully set forth herein.

145. As more Orthodox Jewish families moved into the Village, Defendants engaged in a pattern of discriminatory conduct designed to discourage their presence and limit the ability of Orthodox Jewish families to rent homes.

146. Plaintiff Harper, an Orthodox Jewish resident, lawfully purchased a second home and leased his initial property to a single family in compliance with all legal requirements.

147. Despite this, Plaintiff Harper is being subjected to excessive scrutiny and burdensome administrative obligations under the rental registry law, which disproportionately impacts Jewish property owners and renters on the basis of religion in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(a).

148. Plaintiff Harper will suffer distinct and palpable injuries that are traceable to Defendant's actions and discriminatory acts, including the deprivation of Plaintiff's ability to economically benefit from his property without acquiring a rental permit.

149. Plaintiff Harper is an aggrieved person as that term is defined in the FHA, 42 U.S.C. § 3602(i), and has suffered harm, damage and injury as a result of Defendants' conduct.

150. The Village and residents' animus toward Orthodox Jews moving into Hillburn, as evidenced by their statements was the significant factor in Hillburn's attempt to impose Local Law 3, with Hillburn now acting on behalf of their constituents to burden Plaintiff Harper, an Orthodox Jew, from renting his home.

151. Defendants' actions constitute a form of steering by creating a hostile environment and implementing exclusionary policies aimed at burdening the ability of Plaintiff Harper to rent or reside in the Village.

152. Plaintiff Harper is also entitled to compensatory and/or punitive damages, or nominal damages, in an amount to be determined upon a jury trial, as well as attorneys' fees.

**WHEREFORE**, Plaintiff JOSHUA HARPER request that the Court enter an order and judgment in favor of Plaintiff and against Defendants containing the following relief:

a) A temporary restraining order, followed by preliminary and permanent injunctions enjoining enforcement of Local Law 3 of 2023;

b) Declare Local Law 3 to be null, void and jurisdictionally invalid based upon the Village's failure to comply with General Municipal Law § 239- m; a judgment declaring that Local Law 3 of 2023 to be unconstitutional under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; and a judgment declaring that Defendants' acts alleged herein violated the Fair Housing Act;

Page **22** of **24**

c) Compensatory and/or punitive damages, or nominal damages, awarded to Plaintiff in an

amount to be determined upon a jury trial;

d) Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

e) Grant such other and further relief, as the Court deems equitable, just and proper.

Dated:     Nanuet, New York
           January 13, 2025

                              CONDON PAXOS PLLC

                              By: *Aron Goldberger*
                                  Aron Goldberger
                                  Brian K. Condon
                                  *Attorneys for Plaintiff, JOSHUA HARPER*
                                  55 Old Turnpike Road, Suite 502
                                  Nanuet, New York 10954
                                  (845) 627-8500 (telephone)
                                  Aron@CondonPaxos.com
                                  Brian@CondonPaxos.com

## <u>VERIFICATION</u>

JOSHUA HARPER, hereby affirm this 13th day of January, 2025, under the penalties of perjury under the laws of the state New York, which may include a fine or imprisonment, that the foregoing is true, and understands that this document may be filed in an action or proceeding in a Court of law, and states the following:

I am the Plaintiff in the above captioned action. I have read the foregoing Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe it to be true.

Dated:      Nanuet, New York
             January 13, 2025

                                                    *Joshua Harper*
                                                    _____
                                                      JOSHUA HARPER

Page **24** of **24**

Exhibit "A"



**The Hillburn Herald**
Short Video · Lillian Mann · Feb 26 · 😑

Does anyone know who requested these lime green wires to be installed on the telephone poles?  And was this approved by the village.

😡👍 4                                                    21 comments

👍 Like          💬 Comment          ✈ Send



**Lillian's Post**    ✕

😡👍 4                                          21 comments

👍 Like              ◯ Comment              ▽ Send

Top comments ▾

**Robert Van Dunk Sr**
What names are on the truck

4w   Like   Reply

**Lillian Mann**  Author
**Robert Van Dunk Sr** I didn't get the full name on the truck, but part of it said "
Eruv "

4w   Like   Reply   Edited                              👍

**Robert Van Dunk Sr**
**Lillian Mann** good I worked for Ramapo for 42 I have seen and had to deal
with it thanks

4w   Like   Reply                                      👍

**Monica Murray**
**Lillian Mann** thatl's what they are building, an eruv for certain group to walk
on sabbath

4w   Like   Reply                                      👍

**Grace DePalma DeGroat**
Time's acoming for a new village name Kirasburn??????????

5w   Like   Reply                              😂👍 5

**June VanDunk**
**Grace DePalma DeGroat** I don't wanna 😂 I really wanna 🙈

5w   Like   Reply                              ❤️😂 2

↳ 🖼 Grace DePalma DeGroat replied · 3 Replies



Lillian Mann thatl's what they are building, an eruv for certain group to walk on sabbath

4w   Like   Reply

Grace DePalma DeGroat
Time's acoming for a new village name Kirasburn??????????

5w   Like   Reply                                              5

June VanDunk
Grace DePalma DeGroat I don't wanna 😝 I really wanna 😭

5w   Like   Reply                                              2

Grace DePalma DeGroat
June VanDunk I don't either I love living in Hillburn

4w   Like   Reply                                              2

June VanDunk
Grace DePalma DeGroat we are working hard and we have a great group behind.

-4w   Like   Reply                                             2

Robert Van Dunk Sr
Should not village of hillburn be told or show permit

5w   Like   Reply

Nicole Antonelli
Robert Van Dunk Sr I could be wrong, but I don't think it matters because the utility poles are property of O&R, not the village.

5w   Like   Reply

Robert Van Dunk Sr
Nicole Antonelli you missed my point



Lillian Mann thatl's what they are building, an eruv for certain group to walk on sabbath

4w   Like   Reply

Grace DePalma DeGroat
Time's acoming for a new village name Kirasburn??????????

5w   Like   Reply                                    😂👍 5

June VanDunk
Grace DePalma DeGroat I don't wanna 😩 I really wanna 😭

5w   Like   Reply                                    ❤️😂 2

Grace DePalma DeGroat
June VanDunk I don't either I love living in Hillburn

4w   Like   Reply                                    👍😆 2

June VanDunk
Grace DePalma DeGroat we are working hard and we have a great group behind.

-4w   Like   Reply                                    ❤️ 2

Robert Van Dunk Sr
Should not village of hillburn be told or show permit

5w   Like   Reply                                    👍

Nicole Antonelli
Robert Van Dunk Sr I could be wrong, but I don't think it matters because the utility poles are property of O&R, not the village.

5w   Like   Reply                                    👍

Robert Van Dunk Sr
Nicole Antonelli you missed my point



Carolyn Cosentino Torino
January 31 ·

Top comments ▾



**Rogers Degroat**
The PEGUIN PEOPLE, , smh.
8w    Like                    👍 3

**Robert Van Dunk Sr**
**Rogers Degroat** just the start
8w    Like

**Rogers Degroat**
**Robert Van Dunk Sr** yes sir Rw,seen that shit first hand working for the TOR. Smh
8w    Like

**Robert Van Dunk Sr**
**Rogers Degroat** it's awful 😔
8w    Like          👍

**Rogers Degroat**
Sure is Rw, sure is
8w    Like

**Carolyn Cosentino Torino**  Author
**Rogers Degroat** yes i found out the whole deal of this. They had to get permits and O& R put them up so they can walk strollers past it and work on the holy day  😝
8w    Like

**Tyler Peterson**
They're not suppose to put them up with authorization from the village board. They are put up so they can conduct business in between them on days they aren't aloud to otherwise conduct business.
8w    Like                    👍 2

**Robert Van Dunk Sr**
**Tyler Peterson** I seen the time when orange n Rockland and police made them stop and take it down and they do need a permit



8w   Like                                                             2

Robert Van Dunk Sr
Tyler Peterson I seen the time when orange n Rockland and police made them
stop and take it down and they do need a permit

8w   Like                                                             2

Tyler Peterson
Robert Van Dunk Sr They sure do. When I was working in Jersey they made
them take it down to without permits

8w   Like

Robert Van Dunk Sr
Tyler Peterson when I was a supervisor I called the police the only people to
be around live wires is orange n Rockland phone and cable with the proper
training

8w   Like                                                             3

Carolyn Cosentino Torino  Author
Robert Van Dunk Sr supposely they got permits after 2 yrs

8w   Like

Robert Van Dunk Sr
Carolyn Cosentino Torino ask to see it

8w   Like

Shelly Flanagan-Ramos  Admin
I believe it's an Eruv.

An eruv is a symbolic enclosure that surrounds the Jewish community. Under Jewish
law, carrying on the Sabbath is allowed within the eruv because the entire area within
the eruv is considered as if a single property.

An eruv is a symbolic boundary created with a string of fishing wire typically hung from
a series of utility poles or other structures. The eruv creates a safe space for Orthodox
Jews to carry certain items they otherwise would be forbidden to carry while outside
the home on the Sabbath

8w   Like   Edited                                                   4



the eruv is considered as if a single property.

An eruv is a symbolic boundary created with a string of fishing wire typically hung from a series of utility poles or other structures. The eruv creates a safe space for Orthodox Jews to carry certain items they otherwise would be forbidden to carry while outside the home on the Sabbath

8w    Like    Edited                                                                    👍😮 4

**Connie Fittro Sharp**
**Shelly Flanagan-Ramos** Never knew that! Thanks for sharing!

8w    Like

**Bev Flanagan**
**Shelly Flanagan-Ramos** Thanks Shelly, great explanation! 👍❤️Mom

8w    Like

**Shelly Flanagan-Ramos**    Admin
**Bev Flanagan** copy and pasted mom. LOL 😆

8w    Like

**Elizabeth Osterhoudt Dennison**
I saw the Monsey Eruv truck hanging these fishing lines yesterday along Rt 17, some of them are hanging really low especially the one by the bus stop on 6th St.

8w    Like                                                                        👍 2

**Robert Van Dunk Sr**
**Elizabeth Osterhoudt Dennison** this is just the start I see it all the time they need a permit where I come from

8w    Like                                                                        👍

**Elizabeth Osterhoudt Dennison**
Apparently Orange and Rockland lets them hang these from their poles 🤦

8w    Like                                                                        👍

**Robert Van Dunk Sr**
**Elizabeth Osterhoudt Dennison** they' drank the juices

8w    Like

**Mae Bowens**
The wires just recently appeared

them are hanging really low especially the one by the bus stop on 6th St.

8w    Like                                                                    👍 2

**Robert Van Dunk Sr**
**Elizabeth Osterhoudt Dennison** this is just the start I see it all the time they need a permit where I come from

8w    Like                                                                    👍

**Elizabeth Osterhoudt Dennison**
Apparently Orange and Rockland lets them hang these from their poles 🤦

8w    Like                                                                    👍

**Robert Van Dunk Sr**
**Elizabeth Osterhoudt Dennison** they' drank the juices

8w    Like

**Mae Bowens**
The wires just recently appeared
                              👍

8w    Like

**Shelly Flanagan-Ramos** Admin
I noticed the green wiring and orange wiring this morning too.
                                                          👍

8w    Like

**Tim Williams**
Saw that truck over on the bridge the other day, on terrace yesterday, on 17 yesterday and third Street today.

8w    Like                                                                    👍

**Deena Williams**
Actually I saw those being put up along 17 almost 2 yrs agobut they weren't neon, they blended in with the other wires. My sons father actually stopped and asked them what they were doing. They said those wires they were putting up then were a way of communicating when it was time to worship.

8w    Like

**CG Dennison**
Eminent Domain

8w   Like


**Monica Murray**
Call the village office.

7w   Like


**Devorah Schon**
It's for the Eruv, to allow the Jewish families in Hillburn to carry and push strollers on the Sabbath. Proper permits were obtained and they shouldn't disturb anyone.

8w   Like   Edited                                                                

> The comment Devorah Schon is replying to has been deleted.


**Devorah Schon**
**Carolyn Cosentino Torino**have you experienced that?

8w   Like

> The comment Carolyn Cosentino Torino is replying to has been deleted.


**Carolyn Cosentino Torino**  Author
**Devorah Schon**
Yes the men do not hold the door if they are walking in and out of the post office.

8w   Like

> The comment Nick Cianciaruso is replying to has been deleted.


**Nick Cianciaruso**
**Carolyn Cosentino Torino** You really don't like a certain persons and or there religious beliefs based on "the men" not holding the door for you?

6w   Like

> The comment Carolyn Cosentino Torino is replying to has been deleted.


**Carolyn Cosentino Torino**  Author
**Nick Cianciaruso**
No there are so many other factors.
I dont like any one who lies on there martial status to have tax payers pay for their 13 kids, or lie that every house is a shul and they dont pay property taxes.
I just dont like anyone who rakes the system .
I dont like people who dont help the community in anyway but take take take.
Do i need to keep going on nick cianciaruso

I dont like any one who lies on there martial status to have tax payers pay for their 13 kids, or lie that every house is a shul and they dont pay property taxes. I just dont like anyone who rakes the system .
I dont like people who dont help the community in anyway but take take take.
Do i need to keep going on nick cianciaruso

6w    Like    Edited

The comment Nick Cianciaruso is replying to has been deleted.

 **Nick Cianciaruso**
**Carolyn Cosentino Torino** No you made your point. Wait until you guys see what shows up on Creelman lane! Thank your Mayor !!!

6w    Like

The comment Devorah Schon is replying to has been deleted.

 **Devorah Schon**
**Carolyn Cosentino Torino**that's a generalization that doesn't apply to majority of the Jewish community. I'm not going to argue with you or defend my community because it seems your mind is set to hate and be biased.     

6w    Like

 **Jody Vandunk**



8w    Like

 **Regina Mann**
It's so they can do things like push baby carriages on the Sabbath..really it's so when others see it they know that's the next Town they are going to take over...      2

8w    Like

 **Rogers Degroat**
**Regina Mann** sad but true

8w    Like

 **Marie Toney**
October 13, 2021 · 🌐

···

Yesterday, I attended the village meeting on line.  The ability to hear the public response was spotty at times.  Did anyone hear and understand the request from the Jewish community to make some changes to our telephone poles?

👍 1

10 comments

---

| 👍 Like | 💬 Comment | ➤ Send |
|---|---|---|

Most recent ▾

 **Mae Bowens**
It had to do with provisions for houses of worship in private homes and schools. During the meeting the mayor said it was available online for everyone to review but honestly I have looked and can not find it. I saw a hard copy a few weeks ago.

2y   Like   Reply

 **Grace DePalma DeGroat**
**Mae Bowens** looks like there already is a house of worship on Lake already early in am approx 7 7:15 . Try making a left turn from 6th onto Lake some mornings

2y   Like   Reply

 **Mae Bowens**
What was most interesting at the village meeting was the proposed amendments to the local law regarding zoning. That's is what in my opinion people need to pay close attention to.

2y   Like   Reply

 **Shelly Flanagan-Ramos**  Admin
**Mae Bowens** I agree.

2y   Like   Reply

**Marie Toney**  Author
Do you know what are to the proposed amendments to the local zoning?

attention to.

2y   Like   Reply

 Shelly Flanagan-Ramos  Admin
Mae Bowens I agree.

2y   Like   Reply

 Marie Toney  Author
Do you know what are to the proposed amendments to the local zoning?

2y   Like   Reply

 Marie Toney  Author
Thank you for the information. A month ago there were some trucks with men climbing telephone poles in the village already and they are not Orange and Rockland trucks. Does that mean that they have already started the process of changing the character of the village?

2y   Like   Reply                                     2

 Danielle Landrum
Marie Toney Mrs. Toney, I saw them as well on 17. They looked just like Orange and Rockland trucks. I had to do a double take.

2y   Like   Reply

 Shelly Flanagan-Ramos  Admin
In my opinion its not going to change the character of the neighborhood. There are already very unsightly wires, think cable and electrical utilities wires. running down streets. the eruv is very thin fishing line types of wire, barely visible to the eye. Nothing that would change the character of the neighborhood

2y   Like   Reply

 Shelly Flanagan-Ramos  Admin
Most likely because Orange & Rockland had already given permission to a erect the Eruv the applicant probably didn't think they needed approval from the village. That is my best guess; usually the applicant uses privately owned boom trucks to complete the process

telephone poles in the village already and they are not Orange and Rockland trucks. Does that mean that they have already started the process of changing the character of the village?

2y   Like   Reply                                                     2

 **Danielle Landrum**
**Marie Toney** Mrs. Toney, I saw them as well on 17. They looked just like Orange and Rockland trucks. I had to do a double take.

2y   Like   Reply

 **Shelly Flanagan-Ramos**   Admin
In my opinion its not going to change the character of the neighborhood. There are already very unsightly wires, think cable and electrical utilities wires. running down streets. the eruv is very thin fishing line types of wire, barely visible to the eye. Nothing that would change the character of the neighborhood

2y   Like   Reply

 **Shelly Flanagan-Ramos**   Admin
Most likely because Orange & Rockland had already given permission to a erect an Eruv the applicant probably didn't think they needed approval from the village. That is my best guess; usually the applicant uses privately owned boom trucks to complete the process

2y   Like   Reply

 **Shelly Flanagan-Ramos**   Admin
The applicant was asking for permission to erect an eruv, which is a ritual halakhic enclosure(a thin fishing line type of string) strung from pole to pole made for the purpose of allowing activities which are normally prohibited on Shabbat, specifically: carrying objects from a private domain to a semi-public domain, and transporting objects within a semi-public domain. Orange and Rockland has already given permission to allow use of their poles. Not sure if the approval of the village board was granted or not.

2y   Like   Reply   Edited

## Shelly's Post



Shelly Flanagan-Ramos
I was just informed the address this man lives at is 12 Terrace.
Thats very close to me!

32w   Like   Reply                                          😮 4

Bryan Tanksley
Crazy part is if that's where he lives they just moved in recently

32w   Like   Reply

Carla Alexander
**Bryan Tanksley** he has lived across from Brook Church also on Fox Hollow
as well as several other locations.

29w   Like   Reply                                          😮

Craig Van Dunk
**Shelly Flanagan-Ramos** that's scary

30w   Like   Reply

Carla Alexander
This is crazy they have all these people living in these so called boarding houses that
are single family homes. This is Native Genocide right here in our community sames a
500 years ago come in to a place we have lived our entire lives and the administration
makes it easy for them to take our sacred land away again especially since all these
changes that we fought against and set in place to protect the Native people and our
community for so many years and now they get it handed to them with no
consideration for the original people of these lands. We have many sacred spaces in
Hillburn and no one gives a damn about our Spirituality or Traditions as long as their
pockets are being filled by the new comers.

Native Genocide all over again right here in Hillburn it's so sad.

👍 3

29w   Like   Reply

 **June VanDunk**
March 1 · 🌐

What a great way to blend in and become part of our community. Yea, okay!!!
#SaveOurLand
#saveoursacredsites
#SaveOurMountains
#saveourwildlife

···

# Building Our Community

Areivim is constantly searching for more experienced role models, more effective professional support, and healthier environments. In our search for healthier environments, our staff stumbled across Hillburn, the town forgotten by time. Hillburn is a five-minute distance from Monsey and brings with it a calming effect on its residents and a chance for us to create a true Torah experience. The Areivim boys residence, Bais Hamedrash, and kollel families are all moving. Hillburn is becoming a Mokom Torah, a place where Klal Yisroel can bring up children as they should be.

 21                                          54 comments

# June's Post 


**Marie Toney**
We all knew that Hillburn was under attack. This just confirms it. What are Hillburn residents going to do to preserve their history and traditions?

4w   Like   Reply

↳  Shelly Flanagan-Ramos replied · 2 Replies


**Robert Van Dunk Sr**
This is what I seen for 42 year's town of Ramapo this is just a start.stay strong hillburn

4w   Like   Reply                                     3


**Bill Youmans**
Hillburn was the greatest village to grow up in, I grew up in the 60's and 70's there, everyone knew each other and respected each other , my family goes back generations there, Jenkins, Lelleck's, Brinkers, Merkins, many great families, Van dunks , Defreace, Perry's, Degroats, I can go on, just thinking of the old days and how great it was , didn't mean to rant a little but if you grew up in that era it was fantastic, didn't appreciate it till I was older

4w   Like   Reply                                     10

↳  Robert Van Dunk Sr replied · 9 Replies


**Carl Mann**
Send me a copy to june please                        

4w   Like   Reply

↳  June VanDunk replied · 1 Reply


**Carl Mann**
Thank you 👍

4w   Like   Reply


**Bill Youmans**
If you have a Hillburn day this year I'd love to come up, see faces I haven't seen in 30,40 years and just walk by our house , need a little blast from the past because I think about how great it was. STAY STRONG.

## June's Post 

 **Bill Youmans**
If you have a Hillburn day this year I'd love to come up, see faces I haven't seen in 30,40 years and just walk by our house , need a little blast from the past because I think about how great it was, STAY STRONG.

4w    Like    Reply  3

↳  John VanDunk Sr. replied · 6 Replies

 **Kathi Davis**
Once they get their toe in,the body follows!! Watch out Hillburn,looks like your about to be run over,don't let that happen.Fight the good fight..

4w    Like    Reply  5

↳  June VanDunk replied · 1 Reply

 **Orianna Lee**
This is nuts... 

4w    Like    Reply

↳  June VanDunk replied · 1 Reply

 **Lillian Mann**
We need to band together to stop this!

4w    Like    Reply    Edited  4

↳  June VanDunk replied · 6 Replies

 **Deena Williams**    ...
Just sickening

4w    Like    Reply

 **Carla Alexander**
What happened to FREEDOM OF SPEECH... I POSTED ON HERE AND I GUESS HOW I FEEL ISN'T FREE TO SPEAK....

THIS IS NATIVE GENICIDE ALL OVER AGAIN COME IN AND TRY TO PUSH US OFF OUR LAND. YOU OPEN UP TO LET OTHERS IN AND THEY TRY AND TAKE OVER..

WE'RE STILL HERE

## June's Post



Just sickening

4w    Like    Reply



**Carla Alexander**
What happened to FREEDOM OF SPEECH... I POSTED ON HERE AND I GUESS HOW I
FEEL ISN'T FREE TO SPEAK....

THIS IS NATIVE GENICIDE ALL OVER AGAIN COME IN AND TRY TO PUSH US OFF OUR
LAND. YOU OPEN UP TO LET OTHERS IN AND THEY TRY AND TAKE OVER..

WE'RE STILL HERE
NATIVE PRIDE ✌️

4w    Like    Reply    Edited                                                   5



**Carla Alexander**
We fought Segregation and Won time to get up and Start Fighting for our Homes,
Village and Community... We grew up here and we won't be pushed out...

We love our diverse commu ity, but we willnot stand for ANYONE TO TAKE OVER.
HILLBURN HAS ALOT OF HISTORY STARTING WITH THE FIGHT OF RACISM, WE OVER
CAME THAT AND WE WILL OVERCOME THIS...

EVERYONE IS WELCOME TO LIVE IN HILLBURN, BUT FIT IN DON'T TRY AND TAKE
OVER... DOESN'T MATTER WHO YOU ARE WE WILL KEEP THE INTEGRITY OF OUR
BEAUTIFUL VILLAGE INTACT... WE LOVE OUR DIVERSITY.. WE FOUGHT THIS FIGHT
ONCE AND WON WE CAN DO IT AGAIN....

Trinkets and Beads don't work anymore we are EDUCATED ....

WE SEE YOU NOW BUT YOUR ABOUT TO SEE US....

REVERSED RACISM.... ANTI- NATIVE

4w    Like    Reply    Edited                                                   12



**Craig McIntyre**
Don't trust them remember what happens every time the natives trust and welcome the
new comers,sounds like history trying to repeat

4w    Like    Reply                                                             3

## June's Post    ✕

CAME THAT AND WE WILL OVERCOME THIS...

EVERYONE IS WELCOME TO LIVE IN HILLBURN, BUT FIT IN DON'T TRY AND TAKE OVER... DOESN'T MATTER WHO YOU ARE WE WILL KEEP THE INTEGRITY OF OUR BEAUTIFUL VILLAGE INTACT... WE LOVE OUR DIVERSITY.. WE FOUGHT THIS FIGHT ONCE AND WON WE CAN DO IT AGAIN....

Trinkets and Beads don't work anymore we are EDUCATED ....

WE SEE YOU NOW BUT YOUR ABOUT TO SEE US....

REVERSED RACISM.... ANTI- NATIVE

4w    Like    Reply    Edited                           12

 **Craig McIntyre**
Don't trust them remember what happens every time the natives trust and welcome the new comers,sounds like history trying to repeat

4w    Like    Reply                                       3

 **Robert Van Dunk Sr**
I can't say the name there is a village that stood up with the same mess the village was hit with a law suit and just gave up the village run out of money to fight 😔

4w    Like    Reply

 **Robert Van Dunk Sr**
Channel 4 news just done a report on the same thing hillburn is going through.sarah Wallace

4w    Like    Reply

↳  June VanDunk replied · 3 Replies

⬤ **Marie Toney**
**Shelly Flanagan-Ramos** I believe in inclusion but not at the expense of others. I too have a problem with public funds being used for a religious group. What happened to the separation of church and state? History and traditions provide the base for present and future reforms. When we stop valuing our past, we are easily duped.

3w    Like    Reply

 **Shelly Flanagan-Ramos**
Admin · March 5 at 2:57 PM · ⊕

•••

Interesting read.

 **Carla Alexander**
March 5 at 9:12 AM · 🌐

Hillburn History...

Did you know Hillburn was originally names Woodburn the name was changed in 1883?

The company began laying out streets and homes and calle... See more



STREETTOTHELEFT.WEEBLY.COM

**Hillburn, Small Village On The Side Of The Thruway**

On the outskirts of Suffern, on the southern end of the Ramapo Pass along the west side o...

👍❤ 17                                    12 comments

---

👍 Like              ◯ Comment              ▽ Send

---

View more comments

 **June VanDunk**
And then we have this: to try and throw a monkey wrench in there and make an attempt to destroy everything our ancestors worked so hard for to protect and keep nice.

Top comments

**June VanDunk**
And then we have this: to try and throw a monkey wrench in there and make an attempt to destroy everything our ancestors worked so hard for to protect and keep nice.



To my dear and wonderful husband, **Shmeal**
May you have great success in our move to Hillburn, and may we build up a nice growing community. As always, keep up the great work you do.

**Ruchy**

3w    Like    Reply                                                    😡😮 4

**Elizabeth Osterhoudt Dennison**
**June VanDunk** And to think that we were done with segregation. They have no idea about the history of this village nor do they care. We will NOT be removed!

3w    Like    Reply                                                    👍❤️😆 7

    **June VanDunk**
    **Elizabeth Osterhoudt Dennison** it's history TRYING to repeat itself. Only difference is the class of segregationists.

    3w    Like    Reply    Edited                                    👍 3

    **Elizabeth Osterhoudt Dennison**
    **June VanDunk** you're right and we've seen it in other parts of this county and not one of these people in power have the balls to do anything about it. It's frustrating and it feels like we're living in the twilight zone

    3w    Like    Reply                                            👍😡 6

    **John VanDunk Sr.**
    **Elizabeth Osterhoudt Dennison** you got that right Liz you don't see Sixth Street 7th Street or Boulder Avenue on that map I know I'm getting old and I've looked very hard at it and I don't see it I wonder why SMH

    3w    Like    Reply                                            👍 2

    **Elizabeth Osterhoudt Dennison**
    **John VanDunk Sr.** Not sure when our streets were added but it's a good



Elizabeth Osterhoudt Dennison

June VanDunk you're right and we've seen it in other parts of this county and not one of these people in power have the balls to do anything about it. It's frustrating and it feels like we're living in the twilight zone

3w   Like   Reply                                                    6

John VanDunk Sr.
Elizabeth Osterhoudt Dennison you got that right Liz you don't see Sixth Street 7th Street or Boulder Avenue on that map I know I'm getting old and I've looked very hard at it and I don't see it I wonder why SMH

3w   Like   Reply                                                    2

Elizabeth Osterhoudt Dennison
John VanDunk Sr. Not sure when our streets were added but it's a good question.

3w   Like   Reply

John VanDunk Sr.
Elizabeth Osterhoudt Dennison because they were never meant to be in the original vision of a nice quiet little town minus our side of the road

3w   Like   Reply

John VanDunk Sr.
Elizabeth Osterhoudt Dennison the people that live in HB are first maybe second generation kids they would have no idea but they are the same people back in the seventies that went to school and knew about HB and did nothing but bad mouth us. called us inbreds and now they take up residence in Hilburn and demand a Voice like they've been through the stuff that we and our parents and grandparents went through SMH. The only reason why I am not living in Hillburn just like a lot of others we just could not afford it any longer what's the rest of the county found out how nice Hillburn was taxes Rose houses were built and me like a lot of others were pushed out but we still have love for HB

# Shelly's Post



All comments ▾

**Shelly Flanagan-Ramos**  Author  Admin
Chad Glinsky's former house across from HFD

19w   Like   Reply                           3 😮👍

**Nicole Antonelli**
They should provide more information, like how many people are they expecting to gather at this location and will they be arriving in vehicles. Parking could be a problem with the firehouse right across the street. I imagine you would see many instances of blocking the garage doors and safe pull out zones for the trucks.

19w   Like   Reply                                                    3 👍

**Marie Toney**
Traffic may or may not be effected. Due to our existing sidewalks, the residents of the 12 tax-exempt homes already purchased by Areivim are able to walk to this location..

18w   Like   Reply

**Elizabeth Osterhoudt Dennison**
We've got over a dozen illegally zoned halfway houses all throughout the town and run by the same organization. Something doesn't sit well 🤕

19w   Like   Reply                                                    3 👍

**Marie Toney**
**Elizabeth Osterhoudt Dennison** Tax-exempt homes that have been designated rehabilitation and halfway houses despite the fact that our village is not zoned for these type of facilities.

18w   Like   Reply                                                    👍

**Elizabeth Osterhoudt Dennison**
**Marie Toney** Exactly Ms. Toney!

18w   Like   Reply

18w   Like   Reply



**June VanDunk** · **Follow**

There are a lot of questions regarding this property and that "company"  . Remember that movie Gremlins? (Trolls are now Googling that movie right now)

Well, that house can be described as that lone Gremlin. Any changes will be the "water" in that movie. (Trolls are now googling What water did to the Gremlins)

19w   **Like**   Reply   



**Marie Toney**

Does anyone know, Is this one of the thirteen properties that has received a tax exemption? I would like to know why Hillburn residents are bearing an additional tax expense? Will the surrounding neighborhood be subjected to additional traffic? The notice also states that coverage will expand from 25% to 40%? Does coverage imply that the size of the property will expand? I hope we have an opportunity to get answers to these questions before the board decides to grant this petition.

19w   **Like**   Reply   Edited   4 



**June VanDunk** · **Follow**

**Marie Toney** I believe so. It's under the same name. Areivim

19w   **Like**   Reply



**Shelly Flanagan-Ramos**   Author   Admin

5/20/24 at 7pm is the public hearing at village hall. That's were questions should be asked, and hopefully answered.

19w   **Like**   Reply   2 



**Bonnie Powel**

**Shelly Flanagan-Ramos** I think they are answered already it's all for show, unless we "ALL " stick together make them listen to us, we will see , see you all at the meeting

19w   **Like**   Reply   3 



**Monica Murray**

**Shelly Flanagan-Ramos** I'll be there!

18w   **Like**   Reply



**Vicki A Jennings**
Your gonna have a lot of people in that house(? House of worship) wait till weddings
and funerals start

19w    Like    Reply                                                          



**Craig McIntyre**
Don't let them do it it will be the beginning of end of hillburn as we know it,Stop them
now



18w    Like    Reply



**Shelly Flanagan-Ramos**
Admin · 4 days ago · 😑                                    •••

September 16. ZBA meeting. From a previously cancelled meeting the applicant is back on the agenda to request approval of 9+ variances.

Please read the following notice for
complete details.

Please note: This applicant was featured on a previously aired news segment regarding tax exempt properties in the Village.

---

**Village of Hillburn**
**Zoning Board of Appeals**

**NOTICE OF PUBLIC HEARING**

PLEASE TAKE NOTICE that the Village of Hillburn Zoning Board of Appeals will hold a Public Hearing on the Application of Areivim, Inc. on Monday, September 16, 2024 at 7:00PM or as soon thereafter as can be heard, in the Municipal Meeting Room, 31 Mountain Avenue, Hillburn, NY 10931 and via teleconference. Applicant is seeking an Area Variance and a Use Variance from the Village Code to Allow the use of a Single Family Residence as a Place of Gathering. Property is in the R-6 Zone and is located at 38 Fifth Street in the Village of Hillburn, New York; Property Owner: Areivim, Property I.D.: 47.18-3-8 on the Village of Hillburn Tax Map.

The Applicant is seeking the following variances of the Zoning Law:

**Area Variances:**
Section 250-12 –Table A – R-6 Zone - Schedule of General Use & Bulk Requirements

|  | Allowed | Existing | Requested |
|---|---|---|---|
| Maximum Coverage | 25.0% | 36.6% | 40.3% |
| Minimum Lot Width | 125.0 FT | 50.0FT | 50.0 FT |
| Minimum Lot Area | 22,000SF | 5,500SF | 5,500SF |
| Minimum Front Yard Setback | 35.0 FT | 20.4FT | 20.4FT |
| Side Yard Setback | 8.0FT | 6.4FT | 6.4FT |

Zoning Law Section 250-53-AA(4), (5), (7), (8) - Special Use Permit Requirements

|  | Required | Provided |
|---|---|---|
| Screening of Parking | 25' Wide Planted Buffer | None |
| Number of Parking Spaces | 8 | 4 |
| Parking between Building & Street Line | Prohibited | 4 |
| Residency | Owner Occupancy | None |

**Use Variance:**
Section 250-11 – Table A – R-6 Zone - Table of General Use Regulations
Use of a Single Family Residence as a Place of Gathering/Worship

At the aforesaid time and place, the Zoning Board of Appeals of the Village of Hillburn will hear comments from any and all interested parties regarding the Application. Said Application is available for review at Village Hall during regular business hours.

 **June VanDunk** · Follow
So the return address label on those letters, has some company's name and not the village. I don't understand that. Ex: if I see some company name that mailed me a letter, I'd most likely toss it aside. Thinking it's junk mail. But if I see it was mailed from the Village, I'm going to open it.

4d   Like   Reply

 **Shelly Flanagan-Ramos**   Author   Admin
**June VanDunk** an applicant must notify all abutting property owners of their intentions when they appear before the ZBA for variances.

A copy of the hearing notice from the village (as attached in this post) is what is mailed to the property owner. The village doesn't mail it, the applicant mails it, hence the applicants return address.

Read all mail. 

4d   Like   Reply   Edited

 **June VanDunk** · Follow
**Shelly Flanagan-Ramos** I'm surprised. What if the "mailer" says "hmm, lemme NOT send to all, but to just a few, to make it look good ?" And they send to only 20 instead of the 30, who should be receiving it? Then only 20 (if they didn't toss it) show up to the meeting?

Oy boy 

4d   Like   Reply

 **Shelly Flanagan-Ramos**   Author   Admin
**June VanDunk** In places I have worked, we required certified mailings and the applicant had to show proof to the ZBA that it was mailed. The applicant would use the return address of the village so the green card was returned showing the abutting property owners were notified.

Not sure how our Village operates.

4d   Like   Reply                                        

 **Monica Murray**
**June VanDunk** it came from Areivim. Not even from the village office.

3d   Like   Reply                                        

 **June VanDunk** · Follow
**Monica Murray** cray cray

3d   Like   Reply



**Carolyn Cosentino Torino**
Hello Hillburn,
I hope everyone comes out. They will probably cancel the meeting like they did the first time.
This is a strategy hoping nobody shows up.
Don't let them take over our neighborhood.
Be supportive and come. It's important

4d    Like    Reply                                                    2 



**Marie Toney**
Please attend the meeting and state your opinion. Hopefully, the board hasn't already rendered a decision and this meeting will rubber stamp it in public.

4d    Like    Reply                                                    



**Monica Murray**
I plan on attending.                                             ...

3d    Like    Reply    



**Shelly Flanagan-Ramos**  Author  Admin
Any word on whether all those variances were granted by our Zoning Board tonight?                ...

2d    Like    Reply

 **Roy Schoenleber**
Yesterday at 6:51AM · 😄

What happened at last night's village board meeting.. Curious.. Was not able to attend

21 comme...

👍 Like          💬 Comment          ⊽ Send

Top comments ▾

 **Marie Toney**
Rabbi Gluck showed up with an engineer instead of a lawyer who stated his case for removing one more piece of property from the tax rolls. Interesting enough our village attorney was able to help him and related how to revise his application. Therefore, a decision was not made this past Monday. Another public meeting will be held in the near future at which time the zoning board will listen to Gluck's revised application based on suggestions given to him by our village attorney. Please show up to the next meeting to stop one more piece of property receiving a tax exemption.

1d    Like    Reply                                                              7 👍

 **Elizabeth Osterhoudt Dennison**
**Marie Toney** The attorney should be focussing on the dozen of illegally zoned, segregated "white only" halfway houses that are already up and running in this village. Do we really think this organization is going to go the legal route now?

1d    Like    Reply    Edited                                                    😡

**June VanDunk** · **Follow**
**Elizabeth Osterhoudt Dennison** YUP! OUR beloved Thurgood Marshall…. came here to INTEGRATE our SEGREGATED schools. THAT…is why he came to the Burn 😕
That part, the main reason for his visit, was left out at the meeting the other night.
"The only way that we can live, is if we grow. The only way that we can grow is if we change. The only way that we can change is if we learn. The only way we can learn is if we are exposed".
We are Not a "sleepy" little town.



"The only way that we can live, is if we grow. The only way that we can grow is if we change. The only way that we change is if we learn. The only way we can learn is if we are exposed".
We are Not a "sleepy" little town.

1d    Like    Reply                                                    2 ❤️

Elizabeth Osterhoudt Dennison
June VanDunk And to weaponize Thurgood Marshall's name for their own interest really upset me but they tried and it didn't work, we all caught onto it

1d    Like    Reply                                                    😡

June VanDunk · Follow
Elizabeth Osterhoudt Dennison that part 😡                    ...

1d    Like    Reply                                                    👍

Marie Toney
Elizabeth Osterhoudt Dennison The village was divided with two separate schools during Thurgood Marshall's time and he successfully integrated the schools. Today, we have Rabbi Gluck dividing Hillburn again. On one side of route 17, he has placed "rehabilitation, halfway houses and a school for wayward boys." On the other side young families have moved in. On one side of route 17, we have young men who are inebriated and on some time of substance, creating havoc and being rowdy.

1d    Like    Reply                                                    2 👍

Elizabeth Osterhoudt Dennison
Marie Toney You're absolutely right Marie. We all see what's going on. We're not that sleepy little town that time forgot!

1d    Like    Reply                                                    👍

Nick Cianciaruso
Elizabeth Osterhoudt Dennison I have never had any help from Village attorney Terry Rice! Just threats to lock me up! I find it interesting that he was there in person?! Usually he's on the silly screen in the corner. Who was

wayward boys." On the other side young families have moved in. On one side of route 17, we have young men who are inebriated and on some time of substance, creating havoc and being rowdy.

1d    Like    Reply                                                              2 👍

 Elizabeth Osterhoudt Dennison                                               ...
**Marie Toney** You're absolutely right Marie. We all see what's going on. We're not that sleepy little town that time forgot!

1d    Like    Reply                                                              👍

 Nick Cianciaruso                                                         ...
**Elizabeth Osterhoudt Dennison** I have never had any help from Village attorney Terry Rice! Just threats to lock me up! I find it interesting that he was there in person?! Usually he's on the silly screen in the corner. Who was the engineer representing him?!?

23h    Like    Reply                                                            👍

 Elizabeth Osterhoudt Dennison                                              ...
**Nick Cianciaruso** We're finding out quite a bit about our attorney. He lashed out at Marie! He did make it in person this time😄. Not sure who the engineer was or if he even had the credentials

23h    Like    Reply

 Nick Cianciaruso                                                        ...
**Elizabeth Osterhoudt Dennison** he gets a bit snippy when he is covering up village nightmares ! I wonder if he is friends with the engineer that represents the applicant! A lot of questions he would never answer! I find it interesting that he lashed out at a resident of the village. I've always had the position that he himself makes many decisions on behalf of the incompetent board members and the mayor . There's no real credibility/ credentials there either....

23h    Like    Reply                                                            👍



**Marie Toney**
The board could have denied the variance based on its inadequate representations. I wonder why Arevim is getting a third opportunity to obtain a variance?

1d    Like    Reply                                          2 



**Nick Cianciaruso**
I've had the planning board cancel the meeting 5 minutes before, with no real reason or explanation, for the town attorney to suggest something to help someone that isn't looking to help the village in some capacity (TAXS) (Ratable's) that's when he doesn't deserve his paycheck. One house at a time. You can see it playing out…. We are all humans….

23h    Like    Reply                                         2 



**Carolyn Attardo Caccamo**
It was on zoom

1d    Like    Reply



**Roy Schoenleber** Author
**Carolyn Attardo Caccamo** didn't know that

1d    Like    Reply

Exhibit "B"

VILLAGE OF HILLBURN
Board of Trustees Meeting
Tuesday, September 14, 2021 – 7:00PM

MINUTES OF THE BOARD OF TRUSTEES MEETING held on Tuesday, September 14, 2021, in the Municipal Meeting Room, 31 Mountain Avenue, Hillburn, New York 10931, via GoToMeeting.com and Facebook Live, commencing at 7:00PM.

**PRESENT:**
Joseph P. Tursi, Mayor
Bernadette Tarantino, Trustee
Bonnie O'Blenis, Trustee
Terry Rice, Village Attorney (via GoToMeeting.com)
Eve Mancuso, Village Engineer
Thomas Conklin, DPW Superintendent

RECORDER OF MINUTES:  Robin G. Miele, Clerk-Treasurer

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Hon. Mayor Joseph P. Tursi called meeting to order.  ZBA Member Laurens Winter led in the Salute to the Flag.

**Minutes of the 8/17/2021** - Approved by Village Board.
Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
Noes:  None

**Street & Water Commissioners' Reports** – Approved by Village Board.
Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
Noes:  None

**Police Commissioner's Report**
Mayor Tursi reported he had spoken with Ramapo Police Captain Hyman and related the Board's concern regarding lack of police presence in the Village.

**Village Water System**
-SUEZ Water New York – 9/7/2021 Water Bill:  Current Charge: $11,794.57 + $30,895.04 Carryover Balance (COW) -
A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino authorizing payment to SUEZ Water in the amount of $42,689.61 (Current billing & Carryover Balance).
Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
Noes:  None

-Testing of Meter by SUEZ Water New York - Pending.
-Northeast Leak Detection – Pending:  Report for West Side of Rte 17 & Invoice. (DPW Supt. to follow up on same)
-Puddles on west side of 6th St – Testing confirmed it is groundwater (no chlorine detected). Millings were placed in area.

**DPW Report - DPW Supt. Conklin**
Garbage Truck – Following the 8/17/2021 meeting, Supt. Conklin contacted Sanitation Equipment Corporation and confirmed that, if the packer cylinders cannot be rebuilt, they can be sealed.  Accordingly, a Purchase Order was issued and the truck has been taken to Sanitation Equipment Corporation for repair.

Ford Motor Company Vehicle Notifications:
RE:  2016 F-550 Ford - Aug 2021 Emission Recall 20E01– Truck was taken Mahwah Ford for the recall.
RE:  2017 F150 Ford – Notification of Extension of Warranty Coverage on the Power Door Lock Actuators.
RE:  New 2021 Ford F-550 (Ordered January 2021 – Delivery Date:  120 Days) – Supt. Conklin contacted Genesee Valley Ford regarding the status of the truck and was advised that there is another delay.
-Mayor Tursi stated he will contact Genessee Valley Ford regarding this matter.

Hudson Valley Water Works Conference – Supt. Conklin will be attending the 9/16/2021 meeting.

Tropical Storm Isaias 2020 – Public Assistance - NYS Dept. of Homeland Security & Emer. Services (DHSES) – Paperwork for reimbursement of Clerical Work (Category Z Project for Management Cost) is being processed.

Hurricane Henri and Hurricane Ida – Damage Assessment – Supt. Conklin reported that no damages were incurred by the Village as a result of the two storms.

Veterans Memorial Park Pond -
Princeton Hydro – Supt. Conklin reported the 2nd treatment to the pond had been postponed due to the high water level in the pond from the recent storms.  A new date will be scheduled.
-Invoice 42114 – 6/16/2021 Herbicide Treatment for Emergent Vegetation: $885.00  (6/16/2021 Herbicide Treatment: $835.00 previously paid) Approved by Village Board
Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
Noes:  None

NYS DOT – Local Highway Inventory Update – Annual Certificate of Highway Mileage was completed and filed.
Street Lights – Supt. Conklin will survey the Village to check for lights that are not working.
Recreation Equipment – East Hillburn – Purchase of Replacement Parts from GameTime – Waiting  for delivery.
Fibar for Parks – Supt. Conklin recommended waiting until spring 2022 to order fibar.
Rockland Green – 9/11/2021 email notice – Cardboard is be delivered to West Nyack facility; Mixed Paper and Mixed Containers are to be delivered to the Hillburn Transfer Station.
New CDL Requirements will go into effect 2/7/2022.

| Board Meeting | September 14, 2021 | continued |
|---|---|---|

<u>7:24PM Public Hearing – Introductory Local Law No. 5 of 2021 –</u>
A local law amending Chapter 250 of the Code of the Village of Hillburn

Mayor Tursi read the Notice of Public Hearing, that was duly posted, published and sent via regular and certified mail to: Suffern Village Clerk, Ramapo Town Clerk, Rockland County Clerk, Bergen County Clerk, Mahwah Town Clerk, Palisades Interstate Park Commission.
-Mayor Tursi stated that, after adopting the revised Zoning Local Law on 1/14/2020, it was determined that several addition/revisions were necessary, as detailed in Introductory Local Law No. 5 of 2021 (attached).
-Attorney Rice stated that the revisions/additions include items required to conform with RLUIPA (Religious Land Use and Institutionalized Persons Act) and to provide a provision to "grandfather" existing uses in areas that were re-zoned.
Attorney Rice reported Introductory Local Law No. 5 of 2021 had been sent to the RC Dept. of Planning for GML Review. A response is pending at this date. He recommends the Public Hearing be adjourned and reconvened at the 9/28/2021 Board meeting, to allow time for receipt and evaluation of the GML Review. The Environmental Assessment Forms can be discussed at that time as well.

Hearing was opened for Public Comments.

**Laurens Winter** (40 Rockland Ave) (ZBA Member) - Requested a copy of the introductory local law (provided).

**Timothy Williams (61 6th St)** (Zoning Law Planning Committee Member) - Questioned the amendments to the recently adopted Zoning Local Law, as he and other members of the Committee worked very hard on its preparation.
-Attorney Rice stated that under the law, schools and houses of worship cannot be excluded. In addition, while implementing the Zoning Law, the Bldg/Fire Inspector discovered several areas that required amendment, including grandfathering existing uses that no longer conform due to re-zoning.

Trustee O'Blenis confirmed if schools would now be allowed in the Village.
-Attorney Rice stated that, although schools must be included in the Zoning Law, there are restrictions.

> A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis to suspend the Public Hearing and reconvene on 9/28/2021 at 7:15PM.
> Ayes: Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes: None

> A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis to re-open the regular Board of Trustees meeting.
> Ayes: Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes: None

<u>H.F.D. Report</u>
NJEV – Quote for Inspections/Annual Preventative Maintenance: 5-CFR, 5-Quad & 5-MP (Chassis, Pump, Generator) – NJEV was contacted and it was determined that the costs for service are as follows: **Approved by Village Board**

| 5-CFR & 5 Quad: | $4,750.00 ($2,375.00 each) |
|---|---|
| 5-MP: | 1,350.00 *no more than |
| | $6,100.00 |

> Ayes: Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes: None

<u>RBC Wealth Management</u> – August 2021 Account Statement and June 2021 Portfolio Review.

<u>SAM Capital Funding Grant Applications</u>
-SAM Grant - Sponsored by Assemblyman Lawler's Office – Revised Funding Application: Pre-Fab Building and Back Hoe – Submitted – No further information received.
-SAM Grant – Sponsored by Senator Elijah Reichlin-Melnick's Office – 6/30/2021 Letter Request for Funding - Proposed Project Application: Veterans Memorial Park Pond Restoration – No further information received.

<u>Village Engineer's Report</u> – Engineer Mancuso reported:
MS-4 Stormwater Mapping Grant – Round 15 – A claim in the amount of $267.00 was submitted to the RC Stormwater Consortium (amount to be credited to the Village's share of Grant).

2021 Repavement Project – Funding: CHIPs Program - Proposed Areas: 5th St (from Mountain Ave. to Hickory Ave.), Hickory Avenue (from 5th St. to 6th St.), 6th St. (from Hickory Ave. to Rockland Ave.)
-Engineer Mancuso reported that Cavaliere Industries had advised the milling is planned for late October 2021.

<u>Village Attorney's Report</u> –
-Derelict Structures – Attorney Rice stated that there is a Section of the Code provides a remedy for vacant/nuisance properties whereby the Village can rectify the violation at the expense of the property owner.

-Mayor Tursi questioned if the Village Code allows the Bldg/Fire Insp. to hand-deliver a summons directly to the property owner, rather having a summons prepared in the Village Office and mailed to the property owner.
-Attorney Rice will review the Code.

-Installation of Eruvs – A letter had been sent to Leonard Gluck, who had requested the installation of eruvs, requesting he attend the meeting to provide information. Mayor Tursi received an email response from Mr. Gluck stating that he was unable to attend; however, he would be available on 10/12/2021.

A discussion was held on the status of this matter.
-In response to the 4/27/2021 email request received from Leonard Gluck, Mayor Tursi sent a letter dated 6/22/2021, giving permission to install 10 poles on Route 17 to allow for the installation of eruvs, with conditions including the approval of the locations by the DPW Supt. (subject to NYS DOT approval, as Route 17 is a state highway)

Board Meeting                                    September 14, 2021                                    continued

-On 7/27/2021, Mayor Tursi and Trustee O'Blenis confronted workers from Monsey Eruv Co. who were excavating holes for the installation of poles/eruvs, in contrary to the conditions set forth by the Village, and placing of markings for holes on private property. Consequently, Mayor Tursi sent a letter to Mr. Gluck dated 7/27/2021 suspending the permission to erect poles until compliance to conditions specified in the letter.
-Trustee O'Blenis requested the matter be placed on the 9/14/2021 meeting Agenda, in order to discuss the holes that had been excavated and left unfilled by Monsey Eruv Co. "When no action to fill in the holes, she filled in the holes; however, she feels there should be a penalty imposed, as someone could have been injured". She also stated her concern regarding poles being installed on Village streets, as it is her understanding that permission was only granted for areas on Route 17.
-DPW Supt. Conklin was requested to survey the Village for any more holes that were dug and left unfilled. Supt. Conklin stated he will check out each location that was previously marked out.
Matter will be placed on the 10/12/2021 Village Board meeting agenda, and Mr. Gluck will be notified.

**Satori Energy – Electricity Contract Renewal (Effective 12/2021)** – Tabled.

**$125,000 BAN – Dated 1/14/2021 (DPW Vehicle, DPW Pre-Fab Garage & Misc. Office Equipment)**
-A Financial Report at 8/31/2021 was supplied.

**2021 Assessment Roll** - No report.

**Personnel Manual** – Manual is to be updated to include COVID-19 protocol.

**Insurance**
Selective Insurance - RE:  Commercial Package Policies (April 2021-April 2022) – Account Balance Due:  $19,977.00 – Due Date:  9/15/2021.  **Approved by Village Board.**
                                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                                         Noes:   None

-NYSIF - Paid Family Leave (PFL) – Attorney Rice requested information regarding the PFL Policy for review.
-Comp Alliance – On-Site inspection of Village-owned buildings will be held on 10/15/2021 at 10:00AM.

**NYS Retirement System – 2022 Estimated Contribution** – Prepayment Amount Due 12/15/2021:  $69,085.00. **Approved by Village Board.**
                                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                                         Noes:   None

**Various Capital Improvements (In accordance with 9/1/16 BAN)**
-A Financial Report at 8/31/2021 was supplied.
-Nelson Pope Voorhis - 8/20/2021 Claim (Inv. #2873) – Zoning Local Law - Review/Comment:  $105.00.  **Approved by Village Board.**
                                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                                         Noes:   None

**2016 Master Plan Committee – Comprehensive Plan & Related Zoning – Adopted 1/14/2020**
Introductory Local Law No. 5, 2021 - Proposed Revisions to Zoning Law – Public Hearing held earlier in meeting. (to continue 9/28/2021)

**General Code Publishers**
-Proposal/Estimate for Updating Village Code Book - Between $6,985.00 and $7,630.00.  (Tabled at 8/18/20 meeting until proposed revisions are made to Zoning Code).  Tabled
-Proposal for Laser fiche – Tabled.

**Village Website Update** – 8/2/2021 Proposal - equaTek Interactive: Website Development Services – Retainer: $1,500.00; Hosting Services – Monthly Fee:  $69.95
    A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis to accept the proposal from equaTek Interactive, subject to the Village Attorney's review and approval of the Agreement.
                                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                                         Noes:   None

**Zoning Board of Appeals** –
4/23/2021 Application filed by Jay Kim – Continuation of Public Hearing will be continued on 9/28/2021 at 6:00PM.

**Planning Board** – Meeting held on 9/8/2021 - Agenda Item:  Review of Proposed Revisions to the Zoning Local Law.

**Building/Fire Inspector's Report** – Building/Fire Inspector Gordon not present.
-The Village Board acknowledged receipt of copies of correspondence from the Bldg/Fire Insp. & Asst. Bldg Insp.

**Senior Citizens** – President Diana DeGroat reported:
-NYS Senior Farmers Market Nutrition Program (SFMNP) – Coupon Books were distributed to 43 people.
-The Hillburn Seniors collected and donated a large amount of pop-tops to the Mecca Division of Shriners Children's Hospital on 8/28/2021 (picture of boxes and containers of pop-tops was supplied).  The start time of 4:00PM will remain in effect and will be reevaluated in January 2022.  Upcoming Dates:  Oct. 11th & 25th, Nov. 8th & 22nd, Dec. 13 & 27th.
-The Seniors meetings will now be held on the 2nd and 4th Mondays of each month. The start time of 4:00PM will remain in effect and will be reevaluated in January 2022.  Upcoming Dates:  Oct. 11th & 25th, Nov. 8th & 22nd, Dec. 13 & 27th.
-The Senior Clubs of Ramapo met recently to share info and invited the Hillburn Seniors to participate in upcoming trips.
-Penny Mann, Town of Ramapo Constituent Services Assistant, attended a recent seniors meeting and provided information regarding possible FEMA assistance with storm damage caused by Hurricane Ida.
-Community Room – A new bulb is needed in the light fixture near the Seniors' closet (DPW Supt. following up on same)
-Request for New Senior Citizens Org. Sign for outside of Community Room – (DPW Supt. to follow up on same)
-9/20/2021 Senior Citizens Picnic – Picnic will be held outside behind the Community Room (weather permitting) and will include catered food, a "Fun Craft Auction" of handmade items, and music.  The Village Board will be attending. (The DPW will assist in set-up.  Mayor Tursi stated that the Village's pop-up tents could be used)

Board Meeting                              September 14, 2021                              continued

**Recreation –**
2021-2022 After School Program – Registration was held on 9/8 & 9/2021. Only 4 children were registered. A meeting was held with the Recreation Aides Angela Flanagan and Marcella Perrano and it was determined that, due to the lack of sufficient enrollment, it was not feasible to move forward with the 2021-2022 After School Program. Formal notification of the cancellation of the program will be provided to the three appointed Recreation Aides.
-9/10/2021 CPR Class attended by Angela Flanagan and Marcella Perrano – Reimbursement to Angela Flanagan for Fee Paid: $64.00 ($32.00 each) - **Approved by Village Board**
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

**Escrow** – The Status of Escrow Accounts Report @ 9/01/2021 was supplied.
-Jay Kim – 4/23/2021 ZBA Application –
-Claim - Brooker Engineering (Inv. #160755):  $356.00 – As approved at the 9/13/2021 meeting, the ZBA submitted a memo to the Village Board recommending payment of the claim, subject to the applicant posting additional escrow, in the amount of $1,200.00.  **Approved by Village Board**
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

-Noved Building Mgmt – 4/4//2019 Planning Board Application
-8/6/2021 Statement – Nelson Pope Voorhis (Invoice #20848 & 211542:  $340.00 – Payment remains pending) Additional escrow to be filed by Noved Building Mgmt.

**Public Comments – None.**

**Auditor's Report – Auditor Berard & Associates CPA's P.C.**
RE:  Village of Hillburn Financial Report – FYE 5/31/2021 – Review of Auditor's Report will be placed on the 9/28/2021 meeting Agenda.

RE:  Village of Hillburn Justice Court Financial Report – FYE 5/31/2021
The following RESOLUTION was offered by Trustee Tarantino and seconded by Trustee O'Blenis who moved its adoption:

    **WHEREAS,** the Hillburn Village Justice Court was audited by the Village's independent auditor, Berard & Associates, CPS'S, P.C.,  for year ending 5/31/21; and

    **WHEREAS,** the report has been filed by Berard & Associates, CPS'S, P.C.,

    **THEREFORE, BE IT RESOLVED** that the Hillburn Village Board hereby acknowledges receipt of the Auditor's Report for year ending 5/31/21 for the Village Justice Court, as prepared by Berard & Associates, CPS'S, P.C., and

    **FURTHER BE IT RESOLVED,** the Village Justice Court Audit Report is hereby accepted and approved.

                         Ayes:   Joseph P. Tursi, Mayor
                                 Bernadette Tarantino, Trustee
                                 Bonnie R. O'Blenis, Trustee
                         Noes:   None

**RESOLUTION** was unanimously adopted.

-**Danziger & Markhoff LLP** – Invoice #144986 – GASB #75 Actuarial Services  - FYE 5/31/2021:  $3,325.00 (paid 9/8/2021) **Ratified by Village Board**
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

**Requests for Use of Community Room**
-Y. Van Dunk – Ladies Aux – 9/26/2021 / 11AM - 2PM – Receive Candy: Halloween Egg Hunt – **Approved by Board**
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

**American Rescue Plan Act (ARPA)** – A direct deposit was received on 8/30/201, in the amount of $204.98, representing 50% of a reallocation payment (funds not requested/declined by local governments).

**Correspondence** - The Village Board acknowledged receipt of correspondence, regular and email, including:
-Town of Ramapo – Notice of Public Hearing – Comprehensive Plan Amendment and Updates:  9/13/2021 at 7:00PM (Village Attorney stated that the proposed amendments have no direct impact on Hillburn).
-ReadyRefresh – Notice of Delivery Fee increase effective 10/1/2021:  From $6.95to $7.49.
-RC Human Rights Commission – Invitation to Unveiling of "Thurgood Marshall Monument" – 9/23/2021 from 12:00noon to 1:30PM – New City, NY.
-NYCLASS – 2021 Annual Report.
-NYCOM – Advocacy Update

**Voucher Claims and Budgetary Transfers to Cover Approved Expenditures** - **Approved by Board.**
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

**Upcoming Village Board Meetings**: Tuesdays - 9/28/2021 and 10/12/2021 - 7:00PM

    MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino to adjourn the meeting at 8:23PM.
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 68 of 167

STATE OF NEW YORK )
                           ) ss:

COUNTY OF ROCKLAND )

I, Robin G. Miele, Clerk of the Village of Hillburn, State of New York

**DO HEREBY CERTIFY:**

That the foregoing minutes of Hillburn Village Board of Trustees' meetings duly called and held on September 14, 2021 have been compared by me with the original minutes as officially recorded in my office, and do hereby affirm that the same is a true and correct copy of said original minutes so far as the same relates to the subject matters referred to in said extract.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the seal of said Village of Hillburn, this 20th day of April, 2022.

Robin G. Miele,
Hillburn Village Clerk-Treasurer



**VILLAGE OF HILLBURN**
**Board of Trustees Meeting**
**Tuesday, September 28, 2021 – 7:00PM**

**MINUTES OF THE BOARD OF TRUSTEES MEETING** held on Tuesday, September 28, 2021, in the Municipal Meeting Room, 31 Mountain Avenue, Hillburn, New York 10931, via GoToMeeting.com and Facebook Live, commencing at 7:00PM.

**PRESENT:**
Joseph P. Tursi, Mayor
Bernadette Tarantino, Trustee
Bonnie O'Blenis, Trustee
Terry Rice, Village Attorney (via GoToMeeting.com) (left meeting early)
Bonnie Franson, Nelson Pope Voorhis, Village Planner (Portion of meeting)
Eve Mancuso, Village Engineer
Thomas Conklin, DPW Superintendent

**RECORDER OF MINUTES:** Robin G. Miele, Clerk-Treasurer

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Hon. Mayor Joseph P. Tursi called meeting to order. Asst. Clerk-Treasurer Mary Boone led in the Salute to the Flag.

**Assemblyman Mike Lawler - Presentation of New York Assembly Citation to Asst. Clerk-Treasurer Mary M. Boone**
Assemblyman Lawler addressed the Village Board and the public, and reading it aloud, presented Assistant Clerk-Treasurer Mary M. Boone with a New York State Assembly Citation honoring her many years of service and commitment to the Village of Hillburn. The Citation recognized the capacities in which she served and prior honors received, including:

**Clerk-Treasurer**
(Appointed by 5 Mayors: Lester Lepori, Brian L. Miele, Dennis Connington, James R. Brown and Craig Flanagan, Jr.)
May 1975 - May 2006   (31 Years)  Retired
April 2013 - April 2018 ( 5 Years)

**Registrar of Vital Statistics**
May 1975 – January 2006

**Asst. Clerk-Treasurer**
(Appointed by Mayor Joseph Tursi)
April 2018 – present    ( 3 Years)

**Current Member of the Hillburn Senior Citizens Organization**
Served as President from 2007-2011

**Named 2006 Citizen of the Year**

-Mary Boone expressed heartfelt appreciation to Assemblyman Lawler for honoring her with such a prestigious Citation.

Assemblyman Lawler left the meeting.

**Auditor's Report – FYE 5/31/21 – Auditor Berard & Associates CPA's P.C.**
Representative of Berard & Assoc. Present: Donalee Berard, Partner

The Village Board was in receipt of copies of the Auditor's Report for FYE 5/31/21, along with a summary of the audit, reflecting key points of the audit.
Ms. Berard summarized the report:
-The Statements of Revenues and Expenditures reflect positive balances.
-The Village of Hillburn is in sound financial shape, in accordance with the Y/E 5/31/21 Audit.
-A discussion was held regarding the Water Fund and the status of the Village's water system. Although rates had been increased, water loss from water main breaks had an adverse effect on the Water Fund.
Mayor Tursi stated that recent repairs to water mains have drastically reduced expenditures for the purchase of water.
-The Village Board thanked Ms. Berard and the staff from Berard & Assoc. for the preparation and presentation of the Audit for FYE 5/31/2021.

A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis to suspend the regular meeting in order to continue the Public Hearing regarding Introductory Local Law No. 5 of 2021.
Ayes: Mayor Tursi, Trustees Tarantino & O'Blenis
Noes: None

**7:15PM – Continuation of 9/14/2021 Public Hearing – Introductory Local Law No. 5 of 2021 –**
**A local law amending Chapter 250 of the Code of the Village of Hillburn**
**(Adjourned on 9/14/2021 to allow time for receipt of GML Review from the RC Dept. of Planning)**

RC Planning Dept. -- GML Review Received 9/20/2021 (supplied to the Village Board, Village Attorney, Village Engineer, Village Planner, Planning Board and Zoning Board Members)

-Village Planner, Bonnie Franson of Nelson Pope Voorhis, reviewed the comments mentioned in the GML Review with the Board and public:

1.    Sections 1-3 of proposed local law – Definitions – Wrong Section shown in proposed local law. *(Section will be corrected from Section 250-3 to Section 250-7)*
2.    Place of Worship, neighborhood – Recommend to amend zoning code to stipulate a safe means of walking to the place of worship (i.e. sidewalks/crosswalks) *(Suggests overriding due to low intensity street usage. The Planning Board may require sidewalks as a condition of Site Plan approvals)*
3. & 4.  Parking requirements for places of worship and schools. *(Parking requirements will be clarified)*

Page 1 of 4

**Board Meeting**                    September 28, 2021                    continued

5.  Parking in LS Zone. *(Amendment to Code to allow automotive garages in a specific area that were made non-conforming due to the re-zoning to LS. Parking at Planning Board's discretion)*
6.  Typographical correction. *(Correction from Section 250.19(j) will be corrected to Section 250-20D(2)(j).*
7.  Definition of Schools. *(Definition will be clarified)*
8.  Adding Automotive Garages to Table of General Use Regulations. *(Amendment to Code to allow automotive garages in a specific area that were made non-conforming due to the re-zoning to LS)*
9.  Codification of Zoning Law. *(Codification of Zoning Law, adopted 1/14/2020, was postponed until the required revisions included in Introductory Local Law No. 5 of 2021 are adopted)*

Hearing was opened for Public Comments. None

A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino that the Public Hearing be adjourned to 10/12/2021, at 7:30PM, to allow the Village Attorney and Village Planner to address the comments stated in the RC Planning Dept.'s GML Review.
                    Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:  None

-Attorney Rice stated that SEQR Determination will be made at the 10/12/2021 meeting.

A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis to re-open the regular Board of Trustees meeting.
                    Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:  None

**Village Attorney's Report –**
Hillburn vs. Noved/Nicholas Cianciaruso, et. al – 12/1/20 Decision and Order signed by Judge Eisenpress
-Remediation of Site - Mr. Getchell of Weston and Sampson (Engineering firm selected to do the soil sampling) has submitted a written synopsis of his report (filed November 2020) regarding the needed remediation and Attorney Rice reported he will be filing same with Judge Eisenpress.

-NYSIF - Paid Family Leave (PFL) – Attorney Rice acknowledged receipt of information regarding the PFL Policy and he will report on same at the 10/12/2021 meeting.

Attorney Rice was excused from meeting.

**Minutes of the 9/14/2021 Meeting** - Approved by Village Board.
                    Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:  None

**Street & Water Commissioners' Reports** – Approved by Village Board.
                    Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:  None

**Police Commissioner's Report**
Mayor Tursi reported Ramapo Police Lieut. Blaine Howell has proposed installing four License Plate Readers throughout the Village, as part of a town-wide program. The Village Board approved the installation.

**Village Water System**
-Testing of Meter by SUEZ Water New York - Pending.
-Northeast Leak Detection – Pending: Report for West Side of Rte 17 & Invoice. (DPW Supt. to follow up on same)

**DPW Report - DPW Supt. Conklin**
Flushing of Hydrants – Scheduled for 10/5, 6 & 7/2021, from 9:00AM to 2:00PM. Notice will be placed on Village sign and on website.
Garbage Truck – The truck is back in service as of today; however, of the three kits ordered by Sanitation Equipment Corporation, one kit received was incorrect (injector seal). When received, the truck will be taken back for repair.
-Appreciation was extended to the Village of Suffern for allowing the Hillburn DPW to utilize its garbage truck.

-Request for New Senior Citizens Org. Sign for outside of Community Room – DPW Supt. is looking into a signage to be placed on the windows of the Community Room, rather than a sign on the building.

**DPW Trucks**
New steps are needed for the 2008 and 2016 trucks. Quotes are being obtained. Request for approval of expenditure not to exceed $450.00. Approved by Village Board.
                    Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:  None

Storm Drains – Sloatsburg DPW will be in the Village tomorrow, 9/29/2021, with their truck to clean out storm drains. (The Village Board approved providing breakfast/lunch to the Sloatsburg DPW)

Tropical Storm Isaias 2020 – Public Assistance - NYS Dept. of Homeland Security & Emer. Services (DHSES) – Paperwork for reimbursement of Clerical Work (Category Z Project for Management Cost) is being processed.

**H.F.D. Report – HFD Chief Starr reported:**
UTV - Emergency Lights - Chief Starr will be taking UTV to East Coast Emergency Lighting, Inc. for light installation.
Firehouse Bays
-Flat roof is leaking and water is going to the downstairs area. (DPW Supt. Conklin will obtain a quote)
-There is a gap between the wall and floor in the Quad bay. (DPW Supt. Conklin will look into a sealant)
-The drain in the CFR bay is not working. (DPW Supt. Conklin will follow up on same)

**Board Meeting**                    **September 28, 2021**                    continued

-New HFD Member – Johnathan DeGraw – Mr. DeGraw has fulfilled the requirement of obtaining a physical.
   A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis to ratify Mayor Tursi's approval of Johnathan DeGraw as a member of the Hillburn Fire Department, and
   FURTHER, the Village Board approved Johnathan DeGraw as a driver in the HFD, subject to submittal of required motor vehicle documents and approval of same by the Village's insurance carrier.
                                       Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                                       Noes:   None

**SAM Capital Funding Grant Applications**
-SAM Grant - Sponsored by Assemblyman Lawler's Office – Revised Funding Application:  Pre-Fab Building and Back Hoe – Submitted – No further information received.

-SAM Grant – Sponsored by Senator Elijah Reichlin-Melnick's Office – 6/30/2021 Letter Request for Funding – Proposed Project Application:  Veterans Memorial Park Pond Restoration –
September 24, 2021 Correspondence from NYS Senator Elijah Reichlin-Melnick

The following RESOLUTION was offered by Trustee Tarantino and seconded by Trustee O'Blenis who moved its adoption:

   **WHEREAS,** the Village of Hillburn has been nominated for a State and Municipal Capital Grant (SAM) through the office of NYS Senator Reichlin-Melnick in the amount of $75,000.00; and

   **WHEREAS,** the Village of Hillburn's project for this grant will be "Veterans Memorial Park Pond Restoration"; and

   **WHEREAS,** the amount of funding being requested through the SAM Grant is $75,000.00 representing 50% of the estimated cost of $150,000.00 for this project; and

   **WHEREAS,** the Village of Hillburn is committed to and has the funding to cover the reimbursement-based grant as well as the project costs that are not covered by the Grant;

   **THEREFORE, BE IT RESOLVED,** that the Village of Hillburn hereby approves the filing of the application for the SAM Grant.

                        Ayes:   Joseph P. Tursi, Mayor
                                Bernadette Tarantino, Trustee
                                Bonnie O'Blenis, Trustee
                        Noes:   None

RESOLUTION was unanimously adopted.

**Resolution Declaring the Board of Trustees to be Lead Agency for Restoration of the Existing Pond in Veterans Memorial Park and Classifying the Action as a Type II Action Pursuant to SEQRA**

   **BE IT ENACTED** by the Board of Trustees of the Village of Hillburn as follows:

   **WHEREAS,** the depth of the pond in Veterans Memorial Park has been reduced over time, thereby creating a shallow environment conducive to an overgrowth of vegetation; and

   **WHEREAS,** annual maintenance by the Village has proven to be insufficient; and

   **WHEREAS,** the Village intends to excavate the pond in order to restore the depth of the pond; and

   **WHEREAS,** a grant has been made available to the Village through the State and Municipal Facilities Capital Program ("SAM"); and

   **WHEREAS,** the Village is applying for such grant in order to undertake the foregoing restoration of the pond.

   **NOW, THEREFORE, BE IT RESOLVED** by the Board of Trustees of the Village of Hillburn that the Board of Trustees declares itself lead agency for the purposes of applying for the SAM grant and restoration of Veterans Memorial Park; and

   **BE IT RESOLVED,** that the foregoing is a Type II action pursuant to 6 NYCRR § 617.5(c)(1).

                        AYES:   Joseph P. Tursi, Mayor
                                Bernadette Tarantino, Trustee
                                Bonnie O'Blenis, Trustee
                        NOES:   None

RESOLUTION was unanimously adopted.

**Village Engineer's Report** – Engineer Mancuso reported:

**2021 Repavement Project** – Funding:  CHIPs Program – Proposed Areas:  5th St (from Mountain Ave. to Hickory Ave.), Hickory Avenue (from 5th St. to 6th St.), 6th St. (from Hickory Ave. to Rockland Ave.)
-Engineer Mancuso reported that Cavaliere Industries had advised the milling is planned for late October 2021.
-DPW Supt. Conklin stated riser caps will be needed.  Engineer Mancuso stated she had forwarded the email from O & R Utilities regarding the availability of extender rings.

**Satori Energy – Electricity Contract Renewal (Eff 12/2021)** – Quotes for electric and gas suppliers are being requested.

**$125,000 BAN – Dated 1/14/2021 (DPW Vehicle, DPW Pre-Fab Garage & Misc. Office Equipment)**
-A Financial Report at 9/28/2021 was supplied.

**2021 Assessment Roll** - No report.

**Personnel Manual** – Manual is to be updated to include COVID-19 protocol.

**Board Meeting**                    September 28, 2021                    continued

**Insurance**
NYS Insurance Fund – 9/21/2021 Notice of $101.40 Premium Award credit being applied toward Village's account balance, reflecting timely submission of annual payroll and favorable claims results for policy period ending 7/1/2020.
-Comp Alliance – 9/19/2021 Notice that the Village has qualified for the Comp Alliance Safe Workplace Award for its performance during policy year 2020. Amount of Award: $3,436.00 (Check #0265297 enclosed).

**Various Capital Improvements (In accordance with 9/1/16 BAN)**
-A Financial Report at 9/28/2021 was supplied.

**2016 Master Plan Committee – Comprehensive Plan & Related Zoning – Adopted 1/14/2020**
Introductory Local Law No. 5, 2021 - Proposed Revisions to Zoning Law – Public Hearing held earlier in meeting. (to continue on 10/12/2021)

**General Code Publishers**
-Proposal/Estimate for Updating Village Code Book - Between $6,985.00 and $7,630.00. (Tabled at 8/18/20 meeting until proposed revisions are made to Zoning Code). Tabled
-Proposal for Laser fiche – Tabled.

**Village Website Update** – As recommended by Attorney Rice, an email was sent to equaTek requesting the following amendment to the Agreement – RE: Client Acceptance–Terms and Conditions–Remove "This contract will automatically renew at the then applicable rate, unless written notice is received 30 days prior to termination. In the event that the contract is terminated prior to its maturity date, a 90 day early termination fee (3 times the monthly fee) will be accessed)." No response at this date. Mayor Tursi will reach out to equaTek.

**Zoning Board of Appeals –**
4/23/2021 Application filed by Jay Kim – Public Hearing will be continued on 10/12/2021 at 6:00PM.

**Planning Board** – No report.

**Building/Fire Inspector's Report** – Building/Fire Inspector Gordon not present.
-The Village Board acknowledged receipt of copies of correspondence from the Bldg/Fire Insp. & Asst. Bldg Insp.

**Senior Citizens** – 9/20/2021 Picnic – The Village Board attended the Picnic and stated it was a very nice affair.

**Recreation** – 2021-2022 After School Program – Program cancelled due to the lack of sufficient enrollment.

**Public Comments**
Dolores Hunter (16 Fox Hollow Road) questioned why the 2021-2022 After School Program was cancelled, as she sees so many children playing outside in the Village.
-Mayor Tursi stated that two registrations were held on 9/8 & 9/2021 and only 4 children were registered. Parents may have found alternate programs for their children.

**Escrow** – The Status of Escrow Accounts Report @ 9/28/2021 was supplied.

**Requests for Use of Village Property**
-Regina Scott - Shining Lights Helping Hands – Request for Use of Community Room and Veterans Memorial Park –
Date: Sat., 10/9/2021 (Rain Date: 10/10/2021) / Time: 8:00AM – 6:00PM – Hillburn Community Wide Yard Sale
**Approved by Village Board: Fee Waived, Insurance Required.**
                                   Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                                   Noes:  None

-Y. Van Dunk – Ladies Auxiliary – Request for Use of Community Room
Date: Tues., 9/28/2021 / Time: 7:00PM – Meeting of the Auxiliary Officers. **Approved by Board**
                                   Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                                   Noes:  None

RC Human Rights Commission – 9/23/2021 Unveiling of "Thurgood Marshall Monument" – Mayor Tursi stated he had attended the event and displayed the 9/24/2021 newspaper article including a picture of the monument located near the Court House in New City, NY.

**Correspondence** - The Village Board acknowledged receipt of correspondence, regular and email, including:
-Rogers Garey (Property Owner) – Mayor Tursi read aloud the 9/24/2021 letter thanking the Village Office staff for their assistance. A donation of $50.00 was included.
-Senator Elijah Reichlin-Melnick – Notice - Grand Opening of Rockland District Office.

**8/31/2021 Letter Proposal from Berg Equities – Cultivation of Cannabis in the Village of Hillburn**
Mayor Tursi read the letter proposal to purchase 10 acres of land from the Village of Hillburn to create an indoor cannabis farming operation. Incentives for the Village include funding assistance for repairs/maintenance of Veterans Memorial Park Pond and services for youth and seniors, including development of a residence complex for seniors and veterans.
The Village Board was responsive to further review of the proposal.
-Dolores Hunter questioned if it would increase traffic. Mayor Tursi replied no – it would not be a dispensary.

**Voucher Claims and Budgetary Transfers to Cover Approved Expenditures - Approved by Board.**
                                   Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                                   Noes:  None

**Upcoming Village Board Meetings:** Tuesdays - 10/12/2021 and 10/26/2021 - 7:00PM

      MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino to adjourn the meeting at 8:10PM.
                                   Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                                   Noes:  None

                                                                    Page 4 of 4

STATE OF NEW YORK        )
                         )  ss:
COUNTY OF ROCKLAND       )

I, Robin G. Miele, Clerk of the Village of Hillburn, State of New York

**DO HEREBY CERTIFY:**

That the foregoing minutes of Hillburn Village Board of Trustees' meetings duly called and held on September 28, 2021 have been compared by me with the original minutes as officially recorded in my office, and do hereby affirm that the same is a true and correct copy of said original minutes so far as the same relates to the subject matters referred to in said extract.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the seal of said Village of Hillburn, this 20th day of April, 2022.

Robin G. Miele
Hillburn Village Clerk-Treasurer



**VILLAGE OF HILLBURN**
**Board of Trustees Meeting**
**Tuesday, October 12, 2021 – 7:00PM**

**MINUTES OF THE BOARD OF TRUSTEES MEETING** held on Tuesday, October 12, 2021, in the Municipal Meeting Room, 31 Mountain Avenue, Hillburn, New York 10931, via GoToMeeting.com and Facebook Live, commencing at 7:00PM.

**PRESENT:**
**Joseph P. Tursi, Mayor**
**Bernadette Tarantino, Trustee**
**Bonnie O'Blenis, Trustee**
**Terry Rice, Village Attorney (via GoToMeeting.com)**
**Eve Mancuso, Village Engineer (via GoToMeeting.com)**
**Thomas Conklin, DPW Superintendent**

**RECORDER OF MINUTES:  Robin G. Miele, Clerk-Treasurer**
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Hon. Mayor Joseph P. Tursi called meeting to order.   Deputy Mayor-Trustee Tarantino led in the Salute to the Flag.

**Minutes of the 9/28/2021 Meeting** - Approved by Village Board.
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

**Street & Water Commissioners' Reports** – Approved by Village Board.
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

**Police Commissioner's Report**
-Mayor Tursi reported he has not received any additional information from Ramapo Police Lieut. Blaine Howell regarding the installation of License Plate Readers in the Village.
-Trustee O'Blenis stated she had reported an incident to the Ramapo Police whereby she had witnessed an unfamiliar truck idling near children waiting for the school bus.  When asked, the children stated that they did not know the driver.

**Village Water System**
-SUEZ Water New York – Bill of 10/6/2021:  $10,609.57 - Approved by Village Board.
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

-Testing of Meter by SUEZ Water New York - Pending.
-Northeast Leak Detection – Report for West Side of Rte 17 & Invoice #103257 Received on 10/6/2021:  $575.00. Approved by Village Board.
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

**DPW Report - DPW Supt. Conklin**
Signage on Community Room – As approved by Mayor Tursi, Supt. Conklin reported lettering was placed on the windows of the Community Room "Village of Hillburn Community Center" by Creative Car Crafts at the cost of $250.00. Ratified by Village Board.
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

2021 Ford F-550 DPW Truck (1/11/2021 PO #2044) – Supt. Conklin reported he had received notification last week from Genesee Valley Ford that the truck body was being painted and delivery may be in the next week or so.
-RE:  Purchase of Related Equipment:  Plow & Spreader – Supt. Conklin submitted a 10/6/2021 Estimate from Traffic Safety Direct for purchase and installation of a 9' Plow and a Spreader at the total cost of $14,755.06.
     A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino to accept the 10/6/021 estimate
     and to issue a Purchase Order to Traffic Safety Direct for the purchase and installation of a 9' plow and spreader
     for the 2021 F-550 Truck, at the cost of $14,755.06, and
     FURTHER, funding will be out of the 1/14/2021 BAN (DPW Truck & Related Equipment)
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

-Supt. Conklin stated that when delivered, the new truck will be taken to Traffic Safety Direct for installation of plow and spreader.

-Garbage Truck – There is an issue with the seal that was installed by Sanitation Equipment Corporation.  This issue will be addressed when the truck is taken back for installation of the injector seal.
-Firehouse Roof – Supt. Conklin will reach out to Wilke Williams for an estimate.
-Flushing of Hydrants – As reported, the hydrant flushing was performed on 10/5, 6 & 7/2021.
-Highway Superintendents Association – Notice of 10/21/2021 meeting – Marcello's Restaurant.
-Hudson Valley Water Works Conference – Supt. Conklin reported that an upcoming meeting will be held on 11/4/2021.
-NYS DOT – 10/6/2021 Notice – RE:  CHIPS, PAVE-NY and EWR funding.

Tropical Storm Issias 2020 – Public Assistance - NYS Dept. of Homeland Security & Emer. Services (DHSES) – Paperwork for reimbursement of Clerical Work (Category Z Project for Management Cost) is being processed.

**H.F.D. Report – HFD Chief Starr reported:**
The HFD had responded to several calls and automatic alarms since the last Board Meeting:
9/30/2021 - Car fire and Mutual Aid in Mahwah for a structure fire.  An issue was detected with the air brakes system on the CFR and Chief Starr reported he had contact NJEV for repair.

**Board Meeting**                                    October 12, 2021                                    continued

10/2/2021 - Mutual Aid in Mahwah for a Tractor Trailer Fire. Chief Starr reported that an order was placed with MES for 35gallons of foam to replace what was used during the HFD's response. Mahwah FD will be reimbursing the Village for the foam. **Ratified by Village Board.**

> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

10/8/2021:  Rescue in Woods (responded with UTV) and a vehicle fire.

-The HFD and Ladies Auxiliary will be holding the Annual Halloween Parade at 7:00PM on 10/31/2021.

<u>UTV</u> - Chief Starr reported the emergency lights were installed –East Coast Emergency Lighting, Inc. - Invoice #28412: $1,771.08.  **Approved by Village Board.**

> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

### SAM Capital Funding Grant Applications

-SAM Grant - Sponsored by Assemblyman Lawler's Office – Revised Funding Application:  Pre-Fab Building and Back Hoe – Submitted – Mayor Tursi advised that Assembly Lawler's office had inquired if the Village had received any further correspondence regarding the SAM Grant. Mayor Tursi replied no.

-SAM Grant – Sponsored by Senator Elijah Reichlin-Melnick's Office – 6/30/2021 Letter Request for Funding - Proposed Project Application:  Veterans Memorial Park Pond Restoration – The Application, as approved on 10/12/2021, has been duly filed.

### Village Engineer's Report – Engineer Mancuso reported:

2021 Repavement Project – Funding:  CHIPs Program - Proposed Areas:  5th St (from Mountain Ave. to Hickory Ave.), Hickory Avenue (from 5th St. to 6th St.), 6th St. (from Hickory Ave. to Rockland Ave.)
-RE:  Milling – Engineer Mancuso reported that Cavaliere Industries has advised that the start-up date may be in November, as he is working in another location.   As discussed with Mayor Tursi, Tilcon was requested to submit a proposal for milling. Tilcon's Proposal: $20,323.98. Cavaliere's Contract Price: $11,088.85.
-Engineer Mancuso also noted that Cavaliere was not awarded the Rockland County Bid for next year.
Attorney Rice stated that it would seem that Cavaliere would be obligated to complete the project under the terms of this contract, as the contract does not indicate a date for the work to be completed.
-The Village Board concurred that if the project does not commence by 11/30/2021 (weather permitting), it will be postponed until spring 2022.

RE:  Installation of Eruvs in the Village
Mayor Tursi explained the purpose of eruvs:  An eruv is a boundary made with fishing line attached to utility poles (or other poles, if necessary) that create an area within which observant Jews can carry or push, among other things, house keys, tissues, medication, or babies with them, and to use strollers and canes on the Sabbath (which lasts from sunset on Friday to sunset on Saturday), without violating a Jewish law that prohibits carrying anything except within the home.
-Mayor Tursi gave an overview of the current situation whereby the Village Board authorized the installation of several additional poles for the placement of eruvs along Route 17 and Sixth Street, in addition to on utility poles. The project was suspended by the Village Board when Mayor Tursi and Trustee O'Blenis observed that work was being done outside of the perimeters of the authorization, including failure to coordinate the installation of poles with the DPW Supt., excavating holes and leaving them unfilled creating a safety hazard, marking or erecting poles on private property without obtaining the authorization of the property owner, failure to provide a certificate of insurance in an adequate amount, including Workers Compensation coverage and naming the Village as additional named insured, and failure to obtain authorization from O & R Utilities.
-As of this date, the project remains suspended.
-Mayor Tursi stated that public comments will be heard later in meeting.

### Village Attorney's Report –

Hillburn vs. Noved/Nicholas Cianciaruso, et. al – 12/1/20 Decision and Order signed by Judge Eisenpress
-Remediation of Site – Attorney Rice reported that he has received the written report from Mr. Getchell of Weston and Sampson (Engineering firm selected to do the soil sampling) and will be submitting it to Judge Eisenpress to obtain an Order for Remediation.  He has been in touch with the DEC's Counsel who advised that he has been waiting for approx. 5 months for Mr. Cianciaruso to provide a remediation plan.  After Attorney Rice sends the correspondence to Judge Eisenpress, he would like to set up a virtual meeting with federal and state representatives, as well as the EPA, DEC and the representatives of the State of New Jersey to discuss various ways to remedy this situation.
-Engineer Mancuso stated she had advised a DEC representative of this matter during a recent MS4 Audit and will provide the Village Attorney with her contact information.

> A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis to suspend the regular meeting in order to continue the Public Hearing regarding Introductory Local Law No. 5 of 2021.
> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

### 7:30PM – Continuation of 9/14/2021 Public Hearing – Introductory Local Law No. 5 of 2021 –
**A local law amending Chapter 250 of the Code of the Village of Hillburn**
**(Adjourned on 9/14/2021 to allow time for receipt of GML Review from the RC Dept. of Planning)**

Mayor Tursi read the Notice of Public Hearing, that was duly posted, published on 9/01/2021

**FILED: ROCKLAND COUNTY CLERK 04/23/2023 02:57 PM**
INDEX NO. 030307/2023
NYSCEF DOC. NO. 26
RECEIVED NYSCEF: 04/23/2023

Case 7:25-cv-00342-KMK   Document 1   Filed 01/14/25   Page 76 of 167

Board Meeting                    October 12, 2021                    continued

-Mayor Tursi stated that a Planning Committee, comprised of Village residents, Village Board, Village Attorney and Village Planner, provided an updated Master Plan and Zoning Local Law that was adopted on 1/14/2020. It was later determined that several additions/revisions were necessary, as detailed in Introductory Local Law No. 5 of 2021 that has been posted online and available for review at the Village office. (attached).

Hearing was opened for Public Comments.   (Attachment)

A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino that the Public Hearing be adjourned to 10/26/2021, at 7:30PM, to allow the Village Attorney and Village Planner to address the comments stated in the RC Planning Dept.'s GML Review as discussed at the 9/28/2021 meeting.
Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
Noes:  None

**8:36PM**
A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis to re-open the regular Board of Trustees meeting.
Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
Noes:  None

-**NYSIF - Paid Family Leave (PFL)** – Attorney Rice reported he is reviewing the information regarding the PFL Policy. Attorney Rice was excused from meeting.

**Warrant to Rockland County of Unpaid 2021 Village Taxes**
A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis authorizing the Village Clerk-Treasurer to prepare and submit the Warrant of Unpaid 2021 Village Taxes at 11/01/21, including penalty, to the County of Rockland.
Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
Noes:  None

**Satori Energy – Electricity Contract Renewal (Eff 12/2021)** – Quotes for electric and gas suppliers are being requested.

**$125,000 BAN – Dated 1/14/2021 (DPW Vehicle, DPW Pre-Fab Garage & Misc. Office Equipment)**
-No change to Financial Report dated 9/28/2021.

**2021 Assessment Roll** - No report.

**Personnel Manual** – Manual is to be updated to include COVID-19 protocol.

**Insurance** – No report.

**Various Capital Improvements (In accordance with 9/1/16 BAN)**
-A Financial Report at 9/28/2021 was supplied.

**2016 Master Plan Committee – Comprehensive Plan & Related Zoning – Adopted 1/14/2020**
Introductory Local Law No. 5, 2021 - Proposed Revisions to Zoning Law – Public Hearing held earlier in meeting. (to continue on 10/26/2021)

**General Code Publishers**
-Proposal/Estimate for Updating Village Code Book - Between $6,985.00 and $7,630.00.  (Tabled at 8/18/20 meeting until proposed revisions are made to Zoning Code).  Tabled
-Proposal for Laser fiche – Tabled.

**Village Website Update** – Response from equaTek pertaining to amendment to Agreement, as recommended by Attorney Rice, is pending. Mayor Tursi will reach out to equaTek.

**Zoning Board of Appeals** –
4/23/21 Application filed by Jay Kim – Public Hearing continued on 10/12/2021 at 6:00PM.  (ZBA Approved Application)

**Planning Board** – No report.

**Building/Fire Inspector's Report** – Building/Fire Inspector Gordon not present.
-The Village Board acknowledged receipt of copies of correspondence from the Bldg/Fire Insp. & Asst. Bldg Insp.
-RE:  Email Correspondence regarding RC Multi-Jurisdictional Natural Hazard Mitigation Plan – Progress Report – Referred to Building/Fire Inspector for completion.

**Senior Citizens** – No report.

**Recreation** – 2021-2022 After School Program – Program cancelled due to the lack of sufficient enrollment.

**2021 Interfaith Thanksgiving Service**
A planning meeting will be scheduled.

**Public Comments** – None

**Escrow** – No change to the Status of Escrow Accounts Report dated 9/28/2021.

**Requests for Use of Village Property**

-**Y. Van Dunk – Ladies Auxiliary – Request for Use of Community Room**
Date:  Sun., 10/31/2021 / Time:  6:00-9:00PM – Halloween Refreshments for Kids.  **Approved by Board**
Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
Noes:  None

Board Meeting                              October 12, 2021                              continued

-Kevin Clark, Jr. – Request for Use of Hillburn Youth Center
Dates:  Saturdays, 1/8, 3/5, 6/26 and Sunday, 9/17/2022 – 3:00PM – Purpose:  Pro Wrestling TV Taping
**Approved by Village Board:  Fee:  $150 Per Event, Insurance Required:  Coverage Limit of Liability: $1,000,000.**
                              Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                              Noes:  None

**Action Form**
RE:  31 Rockland Avenue – Tree Root from Village-owned tree is lifting the sidewalk on private property.   Root requires removal to level sidewalk.  Is a permit needed?  Matter to be referred to the Village Attorney.

**Correspondence** - The Village Board acknowledged receipt of correspondence, regular and email, including:
-Brook Church – Flier – Halloween Party Scavenger Hunt – 10/25/2021.
-RC Board of Elections –  11/2/2021 General Election – Access to Community Room on Election Day and Voting Machine and Ballot Marking Device delivery/pick.  (Forwarded to DPW Supt.)
-ReadyRefresh – 9/27/202 Notice (Rec'd 10/12/2021)
-Increase of price of cups to $1.00, effective 9/27/2021.
-NYS Dept. of Public Service – Request to complete online survey – RE:  Internet Access.

Berard & Assoc. - Invoice #5031 – Professional Services Rendered - Audit for FYE 5/31/2021:  **$24,400.00  Approved by Village Board.**
                              Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                              Noes:  None

**Voucher Claims and Budgetary Transfers to Cover Approved Expenditures - Approved by Board.**
                              Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                              Noes:  None

**Upcoming Village Board Meetings**: Tuesdays - 10/26/2021 & 11/16/2021 -  7:00PM

    MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis to adjourn the meeting at 8:55PM.
                              Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                              Noes:  None

**Attachment to 10/12/2021 Village Board Meeting Minutes**
   **7:30PM – Continuation of 9/14/2021 Public Hearing – Introductory Local Law No. 5 of 2021**
   **A local law amending Chapter 250 of the Code of the Village of Hillburn**
   **(Adjourned on 9/14/2021 to allow time for receipt of GML Review from the RC Dept. of Planning)**

Mayor Tursi read the Notice of Public Hearing.

-A Committee was convened by the previous Board to update the Master Plan and Zoning Local Law and same was adopted in January of 2020. Shortly after, it was determined that several items were omitted from the Zoning Law thereby requiring amendment.

Dwaine Perry (16 Boulder Avenue) questioned if there is an excerpt of the amendments.

Mayor Tursi advised that the Introductory Local Law has been on the Village's website and at the Village Office for review.

Alexandra Bowens (125 Sixth Street) stated that she saw the amendment and believes it talks about the use of schools within the Village which is something new to the Village, so it would be nice to speak about that amendment.

-Ms. Bowens also stated that her sister served on the Master Plan Committee and that schools were not part of it.

-Dwaine Perry stated he would like to know who amended the Zoning Local Law without a Public Hearing. Mayor Tursi advised Mr. Perry that this is the Public Hearing.

-Attorney Rice stated that since the 1950's, NYS Case Law has been clear that both religious and educational uses by their nature are considered to be in the overall public welfare. As a result, the case law clearly says that schools cannot be excluded from a municipality and that a place has to be made for them at some location. Attorney Rice cited a Court of Appeals case that says you cannot have a blanket prohibition of schools in a municipality, but instead make schools a Special Permit use whereby any potential adverse impacts could be weighed against the presumptive beneficial effect on the community. By going through a Special Permit process, it can be determined if there are deleterious impacts that cannot be mitigated that warrant denial of the application, otherwise conditions could be imposed to accommodate a school and ensure that it does not disturb the neighborhood.

Mr. Perry questioned if that is a residential school (boarding school)?

Attorney Rice stated it is not necessarily a school with dorms, which is an open question.

Rogers Garey (17 Hickory Avenue) questioned if the amendment is open-ended regarding location and size of schools.

-Mayor Tursi stated that there is not a lot of property available in the Village; however, there are residential properties right now that could possibly comply with requirements such as parking, etc.

Alexandria Bowens stated there is an existing school already in the Village (275 Route 17). It was clarified that the respective location is not approved as a school.

Mr. Perry stated there are sacred sites between 6th Street and the reservoir and behind. We would be offended spiritually if people were to move in and put swastikas up on telephone poles so I think it needs to be addressed with respect to the entire community.

-Mayor Tursi questioned what he meant by "swastikas".

-Mr. Perry stated that if you put those things on telephone poles, that is not a problem, but when people start looking at you like what are you doing on your own property.

-Mayor Tursi stated that that is not what we are talking about right now. This is a Public Hearing about the amendments to the Zoning Code. That matter can be discussed under Public Comments.

Patricia Osterhoudt (159 Sixth Street) confirmed that to be approved for a house of worship, 75% of the congregation must reside in the Village; and that the existing houses of worship, including Brook Church were considered "grandfathered" and exempt from this provision.

Attorney Rice stated the provision was to ensure that the house of worship would be in walking distance.

In regards to school, Attorney Rice stated that the law is restrictive in that schools are only permitted in the LS and GC zones.

-Alexandra Bowens stated that the language of the provision defines what type of schools would be allowed. Many students travel 10-15 miles to attend private/religious schools. It seems that this provision favors the Jewish community.

-Patricia Osterhoudt stated that the provision is for houses of worship, not schools.

-Alexandra Bowens stated that many people travel a distance to attend a church also.

Mayor Tursi stated that the Jewish community does not drive on Saturdays and must walk to their houses of worship. That is how they practice their religion.

-Ms. Bowens questioned why the Village is putting in provisions specifically for the Jewish community? Other religions travel to church. 75% of the Brook Presbyterian Church congregants do not live within the Village.

-Patricia Osterhoudt stated that Brook Presbyterian Church is grandfathered.

-Alexandra Bowens stated that if a new Presbyterian Church were to be built, it would not be able to comply. The provision is saying that only new Jewish houses of worship would be allowed.

-Patricia Osterhoudt stated she did not read it that way.

Mayor Tursi read aloud the portion of Introductory Local Law No. 5 that defines Place of Worship/Neighborhood:

> PLACE OF WORSHIP, NEIGHBORHOOD - A portion of a one-family detached residence used exclusively for the conduct of organized religious services. No school or outside catering is permitted. At least 75% of the membership must live within a three-quarter (3/4) mile radius of the neighborhood place of worship. The bulk requirements shall be the use group for the one-family detached residence in which the neighborhood place of worship is located. No more than one neighborhood place of worship per parcel shall be permitted.

Delores Hunter (16 Fox Hollow Road) questioned this particular provision, as it sounds very accommodating to the Jewish community.

Attorney Rice stated that it is restrictive. There is case law in other jurisdictions that says that people can meet in private homes for various reasons; for example, Sunday evening for bible readings, or Friday night services. The provision to require participants to live in walking distance would limit the impacts created by larger houses of worship.

Mayor Tursi stated that his provision does not pertain to building a new house of worship, it pertains to utilizing a portion of a residential home as a place of worship.

**Dwaine Perry (13 Boulder Ave)** questioned if a tax exemption would apply if a single family dwelling is use for religious purposes.
-Attorney Rice stated that tax exemption is not relevant with respect to the zoning issue; however, there would most likely be a partial tax exemption.

**Mr. Perry** questioned if all residents would be entitled. Mayor Tursi replied yes.

Dolores Hunter (16 Fox Hollow Road) asked if a homeowner changed their house to a house of worship, would it be tax- exempt. Terry Rice responded yes, a partial exemption.

Romney Van Dunk (26 Boulder Avenue) questioned who introduced these revisions to the Zoning. Mayor Tursi stated that it was input from the Village Board, Village Attorney, Bonnie Franson, Planner from Nelson, Pope & Voorhis, and the Fire/Building Inspector. Mayor Tursi added this is not the only provision, there are more. The Comprehensive Plan committee submitted a draft plan that was adopted in January 2020, and now amendments are being proposed. The Comprehensive Plan Committee is not signing the amendments, the Village Board would be, but before the decision is made, the Village of Hillburn is having this public hearing. This is the third continuation of the Public Hearing. No one has been here until tonight.

Patricia Osterhoudt (159 Sixth Street) said that this is a good thing- referring to the numerous people present. Patricia Osterhoudt said that the Mayor's face was of every other Mayor who had come into this room, not expecting the people here. His reaction may be why people are being rubbed the wrong way. Because when the meeting is being stopped to address that, many people are in the room, that gives people a bad feeling. Please understand that when anything changes within the village expect a room full of people and be happy on those days when there are not.

Trustee Tarantino, said people have to come to more Board meetings, to be better informed.

Rodney Van Dunk (26 Boulder Avenue) stated, I've noticed this for years, the residents don't come out to show appreciation, nor do they come to represent themselves in any way. Many houses could become tax-exempt and that is why it is important that people stand up now. Mayor Tursi stated if the neighbor sells their house. I cannot stop them from selling it to whomever they want. Mr. Van Dunk said that people need to stand up; because this is Hillburn, best kept secret.

Question: Does Terry Rice have any prior relationships with the Jewish community? Mayor Tursi, I don't understand the relevance to this public hearing. I am sure that he has since he is a Rockland County attorney. He currently represents the Village of Hillburn.

Chevy Torres (54 Fifth Street) questioned if there were any limits on how many houses of worship the village could have, could the village possibly result in having about ten. Terry replied that the law would not allow it to be limited, but each application filed would be reviewed, to prevent deleterious impact, such as traffic, etc.

Dwaine Perry (13 Boulder Avenue) questioned if Terry approved the new amendments. Mayor Tursi responded that Terry Rice does not have any voting power within the village.

Patricia Osterhoudt (159 Sixth Street) questioned if it was a full board approval to revise the amendments. Mayor Tursi said that the amendments have not been voted on. The Village Board approved the Comprehensive Plan that was submitted on January 2020.

Patricia Osterhoudt (159 Sixth Street), asked if there was any other stipulation, aside from 75% of the membership that must live within the village, to turn a residential house into a house to worship. Terry Rice replied, yes, the normal Bulk Requirements, such as parking. Mayor Tursi added going through the Planning Board, proper egress, and for emergencies, water sprinkler. Terry Rice agreed that Under the NYS code; it would also require water sprinklers, site approval, and a special permit from the Planning Board. Patricia Osterhoudt questioned if the requirements are different for a partial exemption. Mayor Tursi clarified that a part of a residential home such as a basement or living room would be a partial exemption, which is different from a wholly exempt church.

Susan Murphy (45 Sixth Street) stated that with such a small village where people have lived for hundreds of years and people have equality and respect for their properties, is this being added to the plans.

Mayor Tursi asked how many people attend Brook Church and if anyone here is being stopped from practicing their faith.

Patricia Osterhoudt stated that the Eruv is not religious. It was a concept they developed over time that is not religious but cultural. Society has not kept up with what they want to do so they change society and that makes them normal. This is not religious but cultural. If a religious law states that I am not supposed to work on Sunday, but if I have to feed my family, I will work on Sunday because God allows that. Therefore, if they want to walk while pushing a stroller then do it on Friday and Saturday nights. I do not need anyone telling me where I can walk.

Mayor Tursi asked Terry Rice if he knew anything else regarding the eruv. Terry Rice responded that federal law cases were lost against the installation of the eruv. The eruv were considered a minor accommodation to stay constitutional.

Conaway: Economical question: Does the new code requirements favor wealthy developers vs long-time residents that don't have the same resources to build their homes up to code to have it tax-exempt. Terry Rice stated that he was uncertain of the question but the amendments would allow anyone of any denomination to have a house of

worship. Furthermore, these amendments are restrictive and needed to avoid that Hillburn does not result in the same situation as Airmont, which has had various litigations. These amendments in regards to the partial house of worship will help maintain the single character homes throughout the village and will not disturb the neighborhood.

Dwaine Perry (13 Boulder Avenue) said that the Native American community has suffered through genocide, but with the help of the Mayor and others trying to rebuild unity, save sacred slates and lands. Putting this in our faces is a racist approach, will anyone protect our spiritual paths from these fish lines.

Dolores Hunter (16 Fox Hollow Road) questioned if a partial house of worship is legal. Mayor Tursi explained that a partial house of worship could happen without the approval of the Village Board because it is a federal

law. Patricia Osterhoudts said that sometimes at least ten people gathered at Carla's or her house for bible studies that should not result in getting a partial exemption.

Conaway questioned if many neighbors; houses got tax exempted but it could take someone else longer, how would the Village give the community an equal access to help make these changes. Terry Rice stated that he does not understand his question again, but by changing the codes, the community is not changing but instead, safeguarded. In the absence of a provision like this, the village is fair game for Federal action or Federal prosecution by a justice department that when it goes to the US Attorney's Office, will say do this or be sued. The code proposed is restrictive.

Patricia Osterhoudt stated that the Village of Hillburn accepts everyone and things are not changed for anyone else. Mayor Tursi stated that the Village of Hillburn is very inclusive but these comments don't sound inclusive. Patricia Osterhoudt added that it seems that people are always afraid of being sued and this is what causes all these changes. Terry Rice responded that the Village of Airmont had made changes to exclude different communities, added very restrictive religious uses, and aside from different applications they lost, there were a few laws that passed that were considered discriminatory, which is one of the laws that the village recently rescinded. The village cannot exclude schools, but instead have a special permit, to allow the applications to be evaluated and determined if there are any adverse impacts.

Cindy Fountain said that this community stood up for rights and justice and our people were not scared.

Rodney Van Dunk said that what used to be a motel (275 RT 17) has threatened us with lawsuits, in the past. Mayor Tursi remembered when they were brought up on building code violations. In the discussion, it was clarified, that it is a dormitory and not a school. Terry Rice added that amendments are to improve code enforcement.

Conaway asked the meaning of the E. Grandfathering of certain pre-existing and HC nonresidential uses within the LS Local Shopping zoning district. Mayor Tursi explained that the units were changed to Local Shopping; this amendment will allow the units to continue the same uses as pre-existing.

Susan Murphy stated I have been in the village a couple of years. She questioned how many homes can be bought to be tax exempted. How can a small village allow this? The quality of life will change. I previously lived in Chestnut Ridge and fear what happened in Chestnut Ridge could happen here. Terry Rice stated that schools are only allowed the LS, GC, and not on residential homes.

Rogers Garey, as a partial exemption, how much tax would be exempt? Terry Rice said that Scott Shedler will be asked. Mayor Tursi added that Scott Shedler is our Assessor, who works in the Town of Ramapo.

Susan Murphy the homes that are owned by the rabbi in this community, especially the property next to me, there have been three different families, none of them have taken pride in caring for the property. Are there any laws on the length of time the property owner can rent their property? So many different people are coming and going in the property, such as transients. Mayor Tursi said he would ask the Fire/Building Inspector to look into it.

Dwaine Perry asked what constitutes a house of worship. Terry Rice replied holding services.

Chris, 40 Atlantic Avenue, asked how small can the congregation be. Terry Rice stated that there is no limit. Chris-What criteria is needed to be recognized as a house a worship, would it require a clergy, such as minister, priest, reverend, pastor, rabbi? Terry Rice replied no, but proof that it is a house of worship.

Terry Rice stated that at this time, the Village has addressed what the zoning amendments are, Bonnie Franson is going to come up with additional language to address the Rockland County GML comments and once those are received then the village can proceed.

Chevy Torres asked if the houses of worship would be considered commercial. Mayor Tursi responded no. Ms. Torres asked if it would be subject to violation laws. Mayor Tursi replied yes.

Rodney Van Dunk thanked the Board for listening and he understands that there are laws that the Village must comply with.

Dwaine Perry asked if it would be possible to get legal advice from another attorney.

Mayor Tursi stated that the Comprehensive Plan had a public hearing and this is a public hearing, but not until now has anyone shown up. Dwaine Perry added that everyone has had a great amount of faith in the Village Board, and that is why people do not show up. They know you are taking care of things.

Mayor Tursi responded that the Comprehensive Plan and the revision amendments are available online. Mayor Tursi said to Dwaine, you stated that you didn't know about the Comprehensive Plan, but you brought David Johnson here for his ecologist review to preserve Split Rock and its environs.

Motioned to adjourn: to October 26, 7:30 By Trustees Bonnie O'Blenis and Bernadette Tarantino

FILED: ROCKLAND COUNTY CLERK 04/23/2022 02:57 PM
NYSCEF DOC. NO. 26

INDEX NO. 030207/2022
RECEIVED NYSCEF: 04/23/2022

Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 83 of 167

STATE OF NEW YORK    )
                                  ) ss:

COUNTY OF ROCKLAND   )

l, Robin G. Miele, Clerk of the Village of Hillburn, State of New York

**DO HEREBY CERTIFY:**

That the foregoing minutes of the Hillburn Village Board of Trustees' meeting duly called and held on October 12, 2021 have been compared by me with the original minutes as officially recorded in my office, and do hereby affirm that the same is a true and correct copy of said original minutes so far as the same relates to the subject matters referred to in said extract.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the seal of said Village of Hillburn, this 21st day of April, 2022.

Robin G. Miele,
Hillburn Village Clerk-Treasurer



**VILLAGE OF HILLBURN**
**Board of Trustees Meeting**
**Tuesday, October 26, 2021 – 7:00PM**

MINUTES OF THE BOARD OF TRUSTEES MEETING held on Tuesday, October 26, 2021, in the Municipal
Meeting Room, 31 Mountain Avenue, Hillburn, New York 10931, via GoToMeeting.com and Facebook Live,
commencing at 7:00PM.

| PRESENT: | ABSENT: |
|---|---|
| Joseph P. Tursi, Mayor | Bonnie O'Blenis, Trustee |
| Bernadette Tarantino, Trustee | |
| Terry Rice, Village Attorney (via GoToMeeting.com) | |
| Eve Mancuso, Village Engineer (via GoToMeeting.com) | |
| Thomas Conklin, DPW Superintendent | |

**RECORDER OF MINUTES:** Robin G. Miele, Clerk-Treasurer
**■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■**

The Hon. Mayor Joseph P. Tursi called meeting to order.  Deputy Mayor-Trustee Tarantino led in the Salute to the Flag.

**Minutes of the 10/12/2021 Meeting** - Approved by Village Board.
          Ayes:   Mayor Tursi & Trustee Tarantino
          Noes:   None

**Street & Water Commissioners' Reports** – Approved by Village Board.
          Ayes:   Mayor Tursi & Trustee Tarantino
          Noes:   None

**Police Commissioner's Report** - No report.

**Village Water System**
-Testing of Meter by SUEZ Water New York – 10/25/2021 Notice from SUEZ – RE:  Field Test/Change of Water Meter
by National Metering Services.  DPW Supt. Conklin will follow up on scheduling an appointment.

**DPW Report - DPW Supt. Conklin reported:**
2021 Ford F-550 DPW Truck (1/11/2021 PO #2044) – The new truck was delivered on 10/22/2021.  Upon noticing a
defect on the grill, Supt. Conklin contacted Genesee Valley who stated that a new grill would be ordered and delivered to
Hillburn.   On 10/25/2021, the truck was taken to Traffic Safety Direct and the spreader was installed; however, the
installation of the plow is delayed because it is out of stock.

-A W9 Form was submitted by the dealership via email reflecting a name change from Genesee Valley Motors to Genesee
Valley Ford Avon, along with Invoice #G1829 in the amount of $54,730.00.
    A MOTION was made by Trustee Tarantino and seconded by Mayor Tursi authorizing payment of Invoice
#G1829 to Genesee Valley Ford Avon, in the amount of $54,730.00, upon receipt of the replacement grill, and
FURTHER, funding will be out of the 1/14/2021 BAN (DPW Truck & Related Equipment).
          Ayes:   Mayor Tursi & Trustee Tarantino
          Noes:   None

-Garbage Truck – Supt. Conklin reported the truck will be taken to Sanitation Equipment Corporation for installation of
the injector seal.
-E-Waste Collection – Scheduled for Saturday, 11/6/2021 from 8:00AM to 12:00noon.
-Trees – Veterans Memorial Park – Supt. Conklin reported there are a total of 6 trees that need removal (1 large pine, 1
maple and 4 small trees).  Perfect Cut is scheduled to make an inspection on 11/8/2021 to provide a quote.
-Firehouse Roof – Wilke Williams made an inspection; however, the roof was not leaking at the time. He is scheduled to
re-inspect tomorrow.
-Hudson Valley Water Works Conference – 11/4/2021 Conference:  $40.00 – (Supt. Conklin will provide registration
info)  **Approved by Village Board.**
          Ayes:   Mayor Tursi & Trustee Tarantino
          Noes:   None

**H.F.D. Report** – HFD Chief Starr not present.
RBC Wealth Management Correspondence:  10/21/2021 email - LOSAP Update, Prospectuses at 10/11/2021 and
Portfolio Review (period ending 9/30/2021)

**SAM Capital Funding Grant Applications**
-SAM Grant - Sponsored by Assemblyman Lawler's Office – Revised Funding Application:  Pre-Fab Building and Back
Hoe – Submitted – No further response.

-SAM Grant – Sponsored by Senator Elijah Reichlin-Melnick's Office – 6/30/2021 Letter Request for Funding - Proposed
Project Application:  Veterans Memorial Park Pond Restoration – Application has been filed.

**Village Engineer's Report** – Engineer Mancuso reported:

2021 Repavement Project – Funding:  CHIPs Program - Proposed Areas:  5th St (from Mountain Ave. to Hickory Ave.),
Hickory Avenue (from 5th St. to 6th St.), 6th St. (from Hickory Ave. to Rockland Ave.)
-RE:  Milling - Engineer Mancuso reported she is anticipating the start-up of the project next week.

Sixth Street Culvert (area of Boulder Avenue) – Engineer Mancuso reported that Brian Brooker of Brooker Engineering,
along with another engineer from their office, inspected the culvert and determined there is damage to the wing wall, head
wall and the top of the culvert is cracked.  Repair/replacement is required.  An engineering report is forthcoming.

**Board Meeting**                    **October 26, 2021**                    **continued**

**Village Attorney's Report** –

-NYSIF - Paid Family Leave (PFL) – Attorney Rice reported he has reviewed the information regarding the PFL Policy and it seems to be in order. Further review will be made as to the Village employees' ability to withdraw from the program, in whole or individually.

-Action Form filed 10/12/2021 – RE: 31 Rockland Avenue – RE: Lifting of Sidewalk on Private Residence (Possibly from roots of Village tree) – Property owner is arranging to remove section of sidewalk for inspection by DPW Supt. to determine cause.

**Verizon – Franchise Renewal (Dated 5/20/2019 – Expire 5/20/2024)** – The Village Board and Village Attorney acknowledged receipt of the 10/8/2021 correspondence from Verizon – RE: Franchise Renewal Notice Requesting Commencement of Formal Renewal Proceedings under Section 626 of the Communications Act.

**Satori Energy – Electricity Contract Renewal (Eff 12/2021)** – Quote Rec'd 10/26/2021 (Valid Until 5PM-10/27/2021)
    A MOTION was made by Trustee Tarantino and seconded by Mayor Tursi to enter into a one year Electricity Contract Agreement with Constellation NewEnergy, Inc., at the rate of $0.08795 per kWh)
                              Ayes:   Mayor Tursi & Trustee Tarantino
                              Noes:   None

**$125,000 BAN – Dated 1/14/2021 (DPW Vehicle, DPW Pre-Fab Garage & Misc. Office Equipment)**
-A Financial Report at 10/20/2021 was supplied.
-A discussion was held on moving forward with plans for the DPW Pre-Fab Garage.

**2021 Assessment Roll** - No report.

**Personnel Manual** – Manual is to be updated to include COVID-19 protocol.

**Insurance** –
Comp Alliance – Recommendations based on 10/15/2021 Inspection of Village-owned Buildings:
- Affix chairs in the meeting room together – Village Board Determination: N/A
- Replace Slide Bolt Entry Lock System with an Exit Panic Device on Exit Door in Downstairs Area of Community Room (Firehouse) – Village Board Determination: Refer to Hillburn Fire Department for follow up.
- Implement a Policy regarding the maximum weight limit load for residential garbage pick-up – Village Board Determination – Referred to Village Attorney and DPW Supt.

New York State Volunteer Firefighter Cancer Benefit Program (1/1/2019 – 1/1/2022)
-10/19/2021 Email from The Hartford, the Village's current provider – RE: Updates and renewal information. The email was forwarded to the Village's insurance agent, Seeley & Durland, who advised that he is looking into VFIS (Volunteer Fire Insurance Services) who also provides this coverage and has a program more competitive than The Hartford's.

Selective Insurance – RE: Commercial Policy – 10/7/2021 Endorsement Notice – Additional Driver.

**7:30PM**

    A MOTION was made by Trustee Tarantino and seconded by Mayor Tursi to suspend the regular meeting in order to continue the Public Hearing regarding Introductory Local Law No. 5 of 2021.
                              Ayes:   Mayor Tursi & Trustee Tarantino
                              Noes:   None

**7:30PM – Continuation of 9/14/2021 Public Hearing – Introductory Local Law No. 5 of 2021 –**
**A local law amending Chapter 250 of the Code of the Village of Hillburn**
**(Adjourned on 9/14/20 to 9/28/2021 allow time for receipt of GML Review from the RC Dept. of Planning; adjourned on 9/28/2021 to 10/12/2021; adjourned on 10/12/2021 to 10/26/2021 to allow response to the recommendations on the GML Review)**

Mayor Tursi expressed his exasperation at learning of false accusations being circulated alleging that this Village Board is "selling out" to the Jewish community. The Board has been fully transparent in all areas and that he fights for the interests of all residents, including working diligently to insure that the Split Rock property, containing historical and sacred artifacts and rock formations from the Ramapough Mountain Indians, is protected for any future land development. Further, he stated that he is thoroughly affronted at the disrespect shown at the 10/12/2021 Public Hearing. Specifically, the accusation that he is "committing genocide" and that he is racist; and questioning the integrity and competency of Village Attorney Terry Rice. Mayor Tursi listed many towns and villages represented by Attorney Rice and stated that he is one of the best Land Use Attorneys in New York State, if not the country.

Public Comments – attached

Attorney Rice stated that the Village Planner is still addressing the comments stated in the RC Planning Dept.'s GML Review as discussed at the 9/28/2021 meeting.

    A MOTION was made by Trustee Tarantino and seconded by Mayor Tursi that the Public Hearing be adjourned to 11/16/2021, at 7:30PM, in the Hillburn Community Room, 37 5th Street,
                              Ayes:   Mayor Tursi & Trustee Tarantino
                              Noes:   None

**7:50PM**

    A MOTION was made by Trustee Tarantino and seconded by Mayor Tursi to re-open the regular Board of Trustees meeting.
                              Ayes:   Mayor Tursi & Trustee Tarantino
                              Noes:   None

Board Meeting                  October 26, 2021                    continued

**Various Capital Improvements (In accordance with 9/1/16 BAN)**
-A Financial Report at 10/20/2021 was supplied.

**General Code Publishers**
-Proposal/Estimate for Updating Village Code Book - Between $6,985.00 and $7,630.00. (Tabled at 8/18/20 meeting until proposed revisions are made to Zoning Code). Tabled
-Proposal for Laser fiche – A representative of General Code Publishers has been scheduled to provide a demonstration of the Laserfiche program on 11/16/2021.

**Village Website Update** – As recommended by Attorney Rice, a revised Agreement was provided by equaTek and has been signed and returned. A fully executed Agreement is pending.
-Mayor Tursi reported he has been in contact with a representative of equaTek regarding proposed updates to the website.

**Zoning Board of Appeals** – No report.

**Planning Board** – No report.

**Building/Fire Inspector's Report** – Building/Fire Inspector Gordon not present.
-The Village Board acknowledged receipt of copies of correspondence from the Bldg/Fire Insp. & Asst. Bldg Insp.

**Senior Citizens** -- No report.

**Recreation** – No report.

**2022 Village Election – 3/15/2022**
The following **RESOLUTION** was offered by Trustee Tarantino and seconded by Mayor Tursi who moved its adoption:

    **WHEREAS**, the next general election for officers will be held on Tuesday, March 15, 2022, and

    **WHEREAS**, the Board of Trustees must designate by resolution and publish the office(s) which are to be filled in such election and the term(s) therefore.

    **NOW, THEREFORE, BE IT RESOLVED:**

    Section 1.  That the Board of Trustees designates the following office(s) as vacant at the end of the current year, and to be filled at the Village Election to be held on Tuesday, March 15, 2022 for the following term:

              OFFICE OF TRUSTEE        two year term

              OFFICE OF VILLAGE JUSTICE    four year term

    Section 2.  The Village Clerk is hereby directed to publish this resolution in the Journal News.

    Section 3.  This resolution shall take effect immediately.

              Ayes:  Joseph P. Tursi, Mayor
                       Bernadette Tarantino, Trustee

              Noes:  None

              Absent:  Bonnie O'Bienis, Trustee

**RESOLUTION** was unanimously adopted.

**Rockland Community Power** – Peggy Kurtz
Peggy Kurtz made a PowerPoint presentation explaining the collaborative municipal clean energy program.
-Mayor Tursi questioned what happens when new residents move to the village. Ms. Kurtz stated that a "refresh" is done twice each year.
-Rogers Garey asked if the benefits are based on the number of people in the program. Ms. Kurtz replied there is no minimum.

The Village Board thanked Ms. Kurtz for her presentation.

**2021 Halloween Event** – The HFD and Ladies Auxiliary are making preparations for the parade and refreshments.

**2021 Interfaith Thanksgiving Service**
A planning meeting will be held on 10/27/2021 at 4:00PM.

**Escrow** – No change to the Status of Escrow Accounts Report dated 9/28/2021.
-Thomas Scott – Building Permit #091220 (Issued 9/03/2020) – Single Family Dwelling
-Claim - Brooker Engineering (Inv. #161237): $89.00. Approved by Village Board

**Public Comments** –
Chevron Torres (54 5th St) questioned the weight limit for garbage cans; as she purchased a large can to deter wildlife and reduce the number of cans at curbside.
-Mayor Tursi stated that weight limits are necessary, as lifting overweight receptacles can cause injury to DPW employees.

**Invoices Needing Approval**
-Town of Ramapo – RE:  Dog Control Services – Inv. #DOGH000040 (July-October 2021):  $1,050.00.  Approved by Village Board.

              Ayes:  Mayor Tursi & Trustee Tarantino
              Noes:  None

Board Meeting                          October 26, 2021                          continued

-Williamson Law Book Co. – RE:  Water/Sewer Billing Software - Inv. #188538 (11/1/2021 – 10/31/2022):  $1,007.00.
**Approved by Village Board.**

                              Ayes:   Mayor Tursi & Trustee Tarantino
                              Noes:   None

-NYS Association of City and Village Clerks – RE:  2021-2022 Annual Membership Dues:  $50.00.  **Approved by**
**Village Board.**

                              Ayes:   Mayor Tursi & Trustee Tarantino
                              Noes:   None

### Request for Use of Community Room

-Y. Van Dunk – Ladies Auxiliary – Date: 10/28/2021 / Time: 7:00-9:00PM – Executive Meeting  **Approved by Board**

                              Ayes:   Mayor Tursi & Trustee Tarantino
                              Noes:   None

**Correspondence** - The Village Board acknowledged receipt of correspondence, regular and email, including:
-NYCOM – 10/26/2021 Advocacy Update – US Senate Passes Bill to Expand Flexibility in Use of ARPA Funds.
-Camanelli & Assoc. – 10/12/2021 Letter – RE:  The 5-G Rollout – Controlling the Siting of Wireless Facilities within the
Village of Hillburn.
-County of Rockland – Flyers:  Early Voting and Volunteers Needed for Get Fresh Food Distribution.
-Verizon Public Sector Sr. Analyst – RE:  Review to optimize accounts.

**Voucher Claims and Budgetary Transfers to Cover Approved Expenditures** - **Approved by Board.**

                              Ayes:   Mayor Tursi & Trustee Tarantino
                              Noes:   None

**Upcoming Village Board Meetings**: Tuesday - 11/16/2021 -  7:00PM  (to be held in the Community Room)

    MOTION was made by Trustee Tarantino and seconded by Mayor Tursi to adjourn the meeting at 8:26PM.

                              Ayes:   Mayor Tursi & Trustee Tarantino
                              Noes:   None

Case 7:25-cv-00342-KMK    Document 1 ·  Filed 01/14/25    Page 88 of 167

STATE OF NEW YORK      )
                              ) ss:

COUNTY OF ROCKLAND    )

I, Robin G. Miele, Clerk of the Village of Hillburn, State of New York

**DO HEREBY CERTIFY:**

That the foregoing minutes of the Hillburn Village Board of Trustees' meeting duly called and held on October 26, 2021 have been compared by me with the original minutes as officially recorded in my office, and do hereby affirm that the same is a true and correct copy of said original minutes so far as the same relates to the subject matters referred to in said extract.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the seal of said Village of Hillburn, this 21st day of April, 2022.

Robin G. Miele,
Hillburn Village Clerk-Treasurer



**VILLAGE OF HILLBURN**
**Board of Trustees Meeting**
**Tuesday, November 16, 2021 – 7:00PM**

**MINUTES OF THE BOARD OF TRUSTEES MEETING** held on Tuesday, November 16, 2021, in the Hillburn Community Room, 37 Fifth Street, Hillburn, New York 10931, via GoToMeeting.com, commencing at 7:00PM.

| PRESENT: | ABSENT: |
|---|---|
| Joseph P. Tursi, Mayor | Eve Mancuso, Village Engineer |
| Bernadette Tarantino, Trustee | |
| Bonnie O'Blenis, Trustee | |
| Terry Rice, Village Attorney (via GoToMeeting.com) Periodically Left Meeting | |
| Thomas Conklin, DPW Superintendent | |

**RECORDER OF MINUTES:  Robin G. Miele, Clerk-Treasurer**
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

The Hon. Mayor Joseph P. Tursi called meeting to order.  Asst. Clerk-Treasurer Mary Boone led in the Salute to the Flag.

**Minutes of the 10/26/2021 Meeting** - Approved by Village Board.
          Ayes:     Mayor Tursi & Trustee Tarantino
          Noes:    None
         Abstention:   Trustee O'Blenis (not present at meeting)

**Street & Water Commissioners' Reports** – Approved by Village Board.
          Ayes:     Mayor Tursi, Trustees Tarantino & O'Blenis
          Noes:    None

**Police Commissioner's Report** – Mayor Tursi reported the Ramapo Police Department will be installing License Plate Readers in the Village soon.
-NYS DOT – RE:  Project to install traffic signals generator transfer switches at various intersections in RC.  Location in Hillburn:  Intersection of Route 17, Brook St. & Sixth Street.  Project to be constructed in the summer of 2022.

**DPW Report - DPW Supt. Conklin reported:**
Recreation Equip.–East Hillburn – Replacement Parts were received from GameTime and will be installed.
Highway Superintendents Assoc. of Rockland County – Upcoming Meeting: 11/18/2021
2008 Ford F-350 – 11/9/21 Emergency Repair by Suffern Auto Ser.–Inv #1333:  $705.06.  **Approved by Village Board.**
          Ayes:     Mayor Tursi, Trustees Tarantino & O'Blenis
          Noes:    None

**Trees – Veterans Memorial Park** – 11/8/2021 Estimate from Perfect Cut:  $3,500.00 (Remove one spruce, one maple and four sassafras)  **Approved by Village Board.**
          Ayes:     Mayor Tursi, Trustees Tarantino & O'Blenis
          Noes:    None

2021 Ford F-550 DPW Truck (1/11/2021 PO #2044) – Delivered 10/22/2021
-The replacement grill for truck has not been received as of this date.
-Supt. Conklin will go to the DMV to register the new truck.
-Lettering of the truck has been complete.  A proposal for lights will be provided by the next meeting.

**Village Water System**
-Testing of Meter by SUEZ Water New York – RE:  Field Test/Change of Water Meter by National Metering Services. DPW Supt. Conklin reported the inspection was made by National Metering Services today and it was determined that it was functioning properly – meter not changed.
-SUEZ Water New York – Bill of 11/08/2021:  $13,256.05 - Approved by Village Board.
          Ayes:     Mayor Tursi, Trustees Tarantino & O'Blenis
          Noes:    None

-Customer Rebate Program – The Village Clerk reported that SUEZ was contacted to determine if Hillburn residents qualify.  SUEZ advised that Hillburn residents are ineligible to receive the Customer Rebate, as they are billed by the Village of Hillburn.  However, they advise that the matter will be looked into further.

**H.F.D. Report** – HFD Chief Starr not present.
-Membership – The HFD approved the membership of Thomas Chamberlain.  Authorization is needed for the required physical at Mahwah Medical.  **Approved by Village Board.**
          Ayes:     Mayor Tursi, Trustees Tarantino & O'Blenis
          Noes:    None

-MES - 11/1/2021 Correspondence – RE:  Required testing of Scott Air-Paks.  (copy supplied to HFD Chief).
-RBC Wealth Management Correspondence:  Portfolio Focus Account Statement – October 31, 2021.
-10/2/21 HFD Mutual Aide to Mahwah FD – An 11/8/2021 letter was sent requesting reimbursement for foam ($686.84)

**Penflex – LOSAP - Service Fee Agreement** – 11/1/2021 – 10/31/22
    A MOTION was made by Trustee O'Tarantino and seconded by Trustee O'Blenis authorizing the Mayor to sign the 2021-2022 Service Fee Agreement as follows:

| | |
|---|---|
| Base Fee: | $3,550.00 ($0 change from 2020) |
| Preparation of Financial Statement Disclosures: | |
|     NYS LOSAP Audit Package | 495.00 ($0 change from 2020) |
|     GASB 73 Package | 950.00 ($0 change from 2020) |
| | $4,995.00 |

          Ayes:     Mayor Tursi, Trustees Tarantino & O'Blenis
          Noes:    None

**Board Meeting**                          November 16, 2021                          **continued**

**SAM Capital Funding Grant Applications**
-SAM Grant - Sponsored by Assemblyman Lawler's Office – Revised Funding Application: Pre-Fab Building and Back Hoe – Submitted – No further response.

-SAM Grant – Sponsored by Senator Elijah Reichlin-Melnick's Office – 6/30/2021 Letter Request for Funding - Proposed Project Application: Veterans Memorial Park Pond Restoration – Sen. Reichlin-Melnick's office advised that the Village's application had been forwarded to DASNY (Dormitory Authority of the State of New York).
-DASNY has requested the filing of various documents. Request is being followed up on.

**Village Engineer's Report** – Engineer Mancuso not present.
Sixth St. Culvert (area of Boulder Ave) – A report detailing required repairs to culvert was submitted by Brooker Engineering on 10/28/2021. Due to the scope/cost of work, plans and specifications will be needed for a public bid.
-Brooker Eng. - Inv. #161617 dated 11/10/2021 – Inspection of Culvert: $1,207.00. **Approved by Village Board.**
                          Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                          Noes:   None

**2021 Repavement Project – Funding: CHIPs Program** - Project Areas: 5th St (from Mountain Ave. to Hickory Ave.), Hickory Avenue (from 5th St. to 6th St.), 6th St. (from Hickory Ave. to Rockland Ave.)
Cavaliere Industries completed milling on 10/30/2021– Invoice #17762 dated 11/09/2021:        $11,988.85
     A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis authorizing payment of Invoice #17762 to Cavaliere Industries, subject to approval by the Village Engineer,
                          Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                          Noes:   None

Tilcon New York, Inc. completed paving on 11/3/2021  – Invoice #N2111007 dated 11/8/2021: $44,268.72
     A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino authorizing payment of Invoice #N2111007 to Tilcon New York, Inc., subject to approval by the Village Engineer,
                          Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                          Noes:   None

**Village Attorney's Report** – Village Attorney Terry Rice reported:
-NYSIF - Paid Family Leave (PFL) – Attorney Rice reported he has reviewed the information regarding the PFL Policy and individual employees may only opt out under limited circumstances.   He will review the requirements for the Village to opt out entirely.
-NYCOM Conferences – Attorney Rice stated he would like to attend two webinars at the cost of $30.00 each – Subjects: Regulating Cannabis Operations (12/7/2021) and Fair Housing Considerations for Municipalities (12/16/2021) **Approved by Village Board.**
                          Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                          Noes:   None

**Town of Ramapo – 2022 Fire District Agreements (District #1 and District #5)**
Mayor Tursi reported he had spoken with Ramapo Supervisor Specht who advised that the Town had held a Public Hearing on its 2022 Budget and confirmed that the Village will receive the same fee amounts for each district as last year Agreements will be supplied to the Village Board by 12/9/2021.

**Verizon – Franchise Renewal (Dated 5/20/2019 – Expires 5/20/2024)** – No additional information. (Village Attorney stated that this item can be removed from the Agenda)

**$125,000 BAN – Dated 1/14/2021 (DPW Vehicle, DPW Pre-Fab Garage & Misc. Office Equipment)**
-An updated Financial Report will be supplied to the Village Board tomorrow, 11/17/2021.

**Personnel Manual** – Manual is to be updated to include COVID-19 protocol.

**Insurance** –
New York State Volunteer Firefighter Cancer Benefit Program (1/1/2019–1/1/2022) (Current Policy is with The Hartford) The Village's insurance agent, Garrett Durland of Seeley & Durland, provided a proposal from VFIS to replace the coverage with Hartford and recommended the Board accept same.
     A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino to accept the proposal from VFIS to provide the New York State Volunteer Firefighter Cancer Benefit Program as of 1/1/2022.
                          Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                          Noes:   None

Comp Alliance – Recommendations based on 10/15/2021 Inspection of Village-owned Buildings:
     -Affix chairs in the meeting room together – Village Board Determination: N/A
     -Replace Slide Bolt Entry Lock System with an Exit Panic Device on Exit Door in Downstairs Area of Community Room (Firehouse): Hillburn Fire Department is following up on installing the new door.
     -Implement a Policy regarding the maximum weight limit load for residential garbage pick-up – DPW Supt. is to provide the Village Attorney with a maximum weight to amend §184-8 of the Hillburn Code.

**Various Capital Improvements (In accordance with 9/1/16 BAN)**
-An updated Financial Report will be supplied tomorrow, 11/17/2021.

**General Code** –
-Proposal for Laserfiche – A webex meeting was held this afternoon with a representative of General Code, who will be providing proposals with options to purchase Laserfiche.

**Village Website**
A fully executed Agreement has been received from equaTek.
Mayor Tursi reported he is working with a representative of equaTek in the development of an updated Village website.

Board Meeting                                November 16, 2021                                continued

**Zoning Board of Appeals** – No report.

**Planning Board** – No report.

**Building/Fire Inspector's Report** – Building/Fire Inspector Gordon not present.
-The Village Board acknowledged receipt of copies of correspondence from the Bldg/Fire Insp. & Asst. Bldg Insp.

**Escrow** – A Status of Escrow Accounts Report dated 10/26/2021 was supplied.
**Thomas Scott – Building Permit #091220 (Issued 9/03/2020) – Single Family Dwelling**
-Claim - Brooker Engineering (Inv. #161616):    $178.00.    **Approved by Village Board**
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

**Jay Kim – ZBA Application filed 4/23/2021 (Action taken on 10/12/2021)**
-10/26/2021 Claim – Terry Rice, Esq.: $1,372.50.    **Approved by Village Board**
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

**-Noved Building Mgmt – 4/4//2019 Planning Board Application**
-8/6/2021 Statement – Nelson Pope Voorhis (Invoice #20848 & 211542:    $340.00 – Payment remains pending)
Additional escrow to be filed by Noved Building Mgmt.

**Senior Citizens**
2021 Christmas Party – Town of Ramapo Community Center - 12/11/2021 at 1:00PM - $15.00 per person.

**Recreation** – No report.

**2022 Village Election – 3/15/2022**

**2022 Assessment Roll** – Taxable Status Date: 1/1/2022.

**2021 Interfaith Thanksgiving Service** – Mayor Tursi reminded, all in attendance, of the Interfaith Service that will be held on Tuesday, 11/23/2021, 7:00PM – Lighthouse Worship Center.

**2021 Christmas Tree Lighting Celebration** – Sunday, 12/5/2021, 6:00PM – Veterans Memorial Park.
-Memorial Ornaments are available at the Village Office.

**7:30PM**
       A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino to suspend the regular meeting
       in order to continue the Public Hearing regarding Introductory Local Law No. 5 of 2021.
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

**7:30PM – Continuation of 9/14/2021 Public Hearing – Introductory Local Law No. 5 of 2021 –**
**A local law amending Chapter 250 of the Code of the Village of Hillburn**
**(Adjourned on 9/14/21 to 9/28/2021 allow time for receipt of GML Review from the RC Dept. of Planning;**
**adjourned on 9/28/2021 to 10/12/2021; adjourned on 10/12/2021 to 10/26/2021 to allow response to the**
**recommendations on the GML Review)**

-Mayor Tursi stated that a Planning Committee, comprised of Village residents, Village Board, Village Attorney and
Village Planner, provided an updated Master Plan and Zoning Local Law that was adopted on 1/14/2020. It was later
determined that several additions/revisions were necessary, as detailed in Introductory Local Law No. 5 of 2021 that has
been posted online and available for review at the Village Office.

Public Comments – attached

**8:05PM**
       A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis that the Public Hearing be
       adjourned to 12/14/2021, at 7:30PM, in the Hillburn Municipal Meeting Room.
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

**8:06PM**
       A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino to re-open the regular Board of
       Trustees meeting.
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

**Silverberg Zalantis, LLC - 11/10/2021 Proposal for Add'l Legal Services – RE: Intro. Local Law No. 5 of 2021**
Attorney Rice stated that in order to address the skepticism voiced by the public, a proposal was submitted by Silverberg
Zalantis, LLC for legal services to review and comment on the veracity of the proposed amendments outlined in
Introductory Local Law No. 5 of 2021 at the cost of $325.00 per hour.
       A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino to accept the 11/10/2021
       proposal from Silverberg Zalantis, LLC for additional legal services pertaining to Introductory Local Law No. 5
       of 2021, at the cost of $325.00 per hour.
                    Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:   None

Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 92 of 167

**Board Meeting**                     **November 16, 2021**                     continued

10/25/2021 Claim – Nelson Pope Voorhis – RE: Zoning Amendments (8/30/2021-9/28/2021): $595.00 – No action.

**Public Comments –**
**Tony Powell (121 Sixth St)** stated that during Hurricane Ida, rocks and debris were washed down into the brook.
-Mayor Tursi stated he will contact the RC Drainage Agency to have the brook dredged.

**Chevron Torres (54 5th St)** stated her appreciation to the Village for the bench that was installed on the Recreation Field, near the tree in memory of Olivia Lee. She also stated that she had placed a wrap around the tree to deter the deer.

**Action Forms Filed:**
-10/12/2021 – RE: 31 Rockland Avenue – RE: Lifting of Walkway on Private Residence (Allegedly from roots of Village tree) – On 10/29/2021, DPW Supt. Conklin was present when the paver was raised and it was confirmed that there were no tree roots causing the issue.
-11/09/2021 – RE: Vehicle & Traffic issue (police matter)
-11/15/2021 – RE: Maintenance of Property at 65 Mountain Avenue (Food/Garbage strewn on property) – Matter referred to Building/Fire Inspector.

**Requests for Use of Community Room**
-FEMA – Dates: 11/17-18/2021 – 8:30AM – 4:30PM – Hurricane Ida Mobile Disaster Recovery Center   **Approved by Board**
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

-Y. Van Dunk – Ladies Auxiliary – Dates: 12/7-11/2021 / Time: 6:00 – Christmas Caroling/Workshops   **Approved by Board**
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

**Request for Use of Youth Center**
-Y. Garcia – Dates: 12/8, 15, 22/2021 and 1/5, 12, 19, 26/2022 / 3:30-5:30PM – Indoor Soccer   **Approved by Board subject to receipt of $150.00 Fee and Insurance Documents**
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

**Correspondence** - The Village Board acknowledged receipt of correspondence, regular and email, including:
-O & R – Notification of increase in gas and electric bills (posted and placed on website)
-Peggy Kurtz – Rockland Community Power – Email thanking Village Board for the opportunity to make a presentation on 10/26/2021.
-Meals on Wheels – Request for volunteers to deliver Thanksgiving meals.
-Rockland County – Request for volunteers for food distribution. (posted)
-NYS Dept. of Public Service – Virtual Public Statement Hearing on 11/17/2021 – RE: Veolia's Environment S.A.'s acquisition of a majority or all of the outstanding shares of SUEZ.
-NYS Empire Plan – October 2021 Report.
-Bank of Greene County – Availability of banking services.

**Personnel**
11/16/2021 Letter of Resignation Submitted by Shane Starr
     A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino to accept, with regret, the resignation of Shane Starr from the position of Asst. DPW Supt., effective 11/30/2021.
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

**Invoice Requiring Approval**
Office of Real Property Tax Services – Inv. #RP 21-147 – RPS Annual Licensing - Fiscal Year 2021-22: $750.00 **Approved by Board**
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

**Voucher Claims and Budgetary Transfers to Cover Approved Expenditures** - **Approved by Board.**
                         Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                         Noes:   None

**Upcoming Village Board Meetings:** Tuesday - 12/14/2021 - 7:00PM  (to be held in the Municipal Meeting Room)

Meeting was adjourned at 8:30PM.

FILED: ROCKLAND COUNTY CLERK 04/23/2025 02:57 PM
NYSCEF DOC. NO. 26
Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 93 of 167

INDEX NO. 030307/2022
RECEIVED NYSCEF: 04/23/2022

<u>Public Comments for November 16, 2021</u>

Mayor Tursi said that this is to continue the public hearing of LL5. As you may or may not know, the village updated the code regarding the Master Plan & Zoning issues within the village. This was put together by a committee that was created by Mayor Flanagan.

When we took office, it was still going on. That committee submitted its plan to the village, at the end of 2019.

January 2020, it was approved, but some items were left out or that should have been put in, to protect the village from development in areas that didn't see fit to be, such as a school.

Right now, a school can be put anywhere. The idea is to keep it out of reside'ntial and have it on route 17. Otis

Mann- 151 Sixth Street, we don't need any more schools in Hillburn.

Mayor Tursi added as it stands right now, a school can be placed anywhere in this village and the same for a house of worship. We are trying to restrict it a little bit more by putting them in areas that are not in residential areas. That's the whole idea of changing the premise in this and updating it. I'm opening up to public comments, don't want any wild comments, we are going to keep it civil.

-Patricia Osterhoudt- 159 Sixth Street- stated that when the Village started the Master Plan, she remembered that she sat in a couple of those meetings because it was open to the public. The committee was selected from Hillburn. The village took out a BOND to pay the people, who developed the Master Plan with the committee. They had conversations about schools and religious buildings. They had conversations that took a couple of years. Were those people that were hired to develop the Master Plan and the committee requested to come back to ask if it needs to be changed. The Master Plan was developed, paid for, and discussed, but now it is being changed.

-Mayor Tursi responded that the committee submitted their ideas and plans, and it was approved. At the time, there was a different law firm representing the village.

-Patricia Osterhoudt added that the Master Plan had a completely different law firm separate from the village. The village paid extra for those people for their expertise, to come in and do this for the village. Why isn't the Village going back to those people to ask what those conversations were? Why aren't they fixing it for us instead of going by a Rockland County lawyer, who says that this needs to be in there, and is not an expert on the Master Plan and maybe has a conflict of interest being he's a Rockland County lawyer. It isn't against him, but it's just the way it works in such a small county. Has the Master Plan committee been reached, some are sitting here tonight?

-Mayor Tursi responded, no.

-Patricia Osterhoudt, asked if before this is put in and approved, why aren't the people hired and the committee being revisited, otherwise, it would be a waste of money to pay somebody else to do this, our lawyer when it was paid for.

-Attorney Rice said First, I'm not being paid anything additional, for doing this. Second, my specialty has been zoning for 45 years. I'm a professor at Fordham University School of Law, and zoning is my bread and butter, so I know this stuff. Also, the fact that I'm a Rockland County law, doesn't mean anything. I give objective advice, and I've done that throughout my whole career. But, because the issue was raised, the Mayor is going to bring it up shortly. We have a proposal from Silverberg Zalantis, LLC, who is also a land-use attorney. They can review what is proposed, and give an opinion to the board, whether or not they concur with my opinion. I don't think this is necessary, but to give the public a comfort level, that's what is being proposed. Further to the fact, there was a committee that was involved. The people hired to develop the Master Plan took the ideas of the committee that worked very hard, but some issues were not addressed or were addressed in a way that did not comport with New York state laws. Again, the Mayor will bring up that another law firm will take a look at this because the issue has been raised, and we'll see what they have to say.

-Patricia Osterhoudt asked are you going to call back that committee?

-Mayor Tursi responded no.

-Patricia Osterhoudt asked are you going to ask the people that prepared this, why this is not correct?

-Mayor Tursi questioned why would we have them come back.

-Patricia Osterhoudt said because something was prepared incorrectly.

-Mayor Tursi added the people hired took the recommendation of the committee and a survey that went out, but only a few people responded to the survey.

-Patricia Osterhoudt questioned if we know what was discussed at the beginning regarding these issues.

-Mayor Tursi responded No, I was not there, I was not involved at that point, it was 2019 and the Master Plan was already in process.

-Patricia Osterhoudt asked why they weren't calling back the committee to find out.

-Mayor Tursi responded it doesn't matter what they talked about then because it doesn't apply to what we have to do now. We came into the office and found out it wasn't properly done, this is to protect the village. We aren't selling the village out. The committee submitted their plan and now some things need to be amended.

-(A person) said: the Master Plan is getting amendments and the people aren't getting what was said before 2019, maybe there was a reason.

-Patricia Osterhoudt added that maybe those reasons will affect those amendments you want to include.

-Mayor Tursi said that according to the land-use attorney that was hired, with years of experience and Nelson Pope & Voorhis, provisions should be added to keep schools in a certain area. If left out, a school could go everywhere in the village. This is to protect the village.

-Patricia Osterhoudt said if the amendment allows a school on Route 17, then the illegal school that has been there for years would be grandfathered. How is that going to affect that non-school there?

-Robin Miele, Clerk-Treasurer, clarified that it's a dormitory.

-Dwaine Perry, 13 Boulder Avenue, stated that he has concerns about the many sacred spots that could be destroyed. He added that his grandmother stood up for everybody, such as blacks, natives, women, etc. His father helped liberate the case of medics.

He carries a picture to remind him of the pain and horror. He has been having ceremonies in his house for years. Also, have others here, if that is going to be allowed by one group, he respectfully requests that the Board allow each Ramapough Indians' home as a sacred place of worship. We have been praying as refugees, in our homeland. The RLUPA, please make sure that whatever group, this is assigned to, that the same rights are given to the Ramapough people. It's best to be consistent. This is our land. If it wasn't for Ramapough's past, and his ancestors, there wouldn't have been a successful outcome to the revolution. The Ramapoughs past is

technically, the back door to the new meaning of providence. Without the Ramapoughs' past, the British would not have reinforced their troops. The Ramapough were the first to have been enslaved in this country.

Currently, the Ramapoughs are suffering to stand on their own two feet. He thanked Mayor Tursi, for his efforts in what he did previously. (Referring to the preservation of Split Rock)

He added that he is terrified that what is left of the mountains would be destroyed. Also, make sure to include the Ramapough in everything that is being added. He had wondered for years why he hadn't received a tax break.

-Mayor Tursi responded it states an entity or congregation, such as Jewish, Catholics, Muslim, it could be any religion, Ramapough Nation.

-Dwaine Perry requested that he be notified when the law passes and that it be posted by the fountain and everywhere else.

-Robin Miele, Clerk-Treasurer, stated that notices are duly posted.

-Dwaine Perry, said that the point is that the majority of the people in this village are senior citizens and don't go online to find out what is happening, or walk by the village door to see what is posted there. Maybe the Village Board could take a step back and tell people around town so that they aren't in the dark.

-Mayor Tursi responded that the Village Board meets twice a month.

-Dwaine Perry added that the village already has a school there, where would another school be allowed.

-Mayor Tursi said that right now schools could be put anywhere.

-Dwaine Perry questioned who prompted this, Terry did you? Weirdly, no one prompts it and you are doing this.

-Mayor Tursi stated that at this time a school could go anywhere in the village, including next to anybody's house, if these laws aren't added.

-Village Attorney Rice added that as he had said in one of the previous meetings, the New York State court of appeal has made it very clear that schools cannot be excluded. In addition to not excluding schools, it can be a special permit use, to evaluate whether, or not it would have any deleterious impact on public safety or health. Then it can be denied, or alternately impose conditions to delegate the use. No attorney who studies land use will say it differently. In Federal court, it would be a losing battle.

-Dwaine Perry asked about all the taxes lost in the tax base. How could the village be sued, on layaway?

*Attorney Rice leaves meeting at 7:45PM*
-Susan Shapiro stated that she is representing Chief Dwaine Perry and the Ramapough Nation. This is very confusing, this law is being enacted because a school can be placed anywhere right now. The law that is being proposed allows it in every single zone. A school can be in R6, R9, R60; this is what this

document says. Then Mr. Rice says that the court of appeal says that it's best to require a use permit, but this law doesn't say that, it says it is done by right. Mr. Rice is trying to protect you from RLUPA, but you don't need it because it's already in your laws. The new law is going to allow schools only on Route 17, but that isn't what this law says. This law says it's allowed in every residential district. You say one thing, Mr. Rice says another thing and this document says another. Almost every village, for example, the Town of Ramapo, Sloatsburg, Stony Point, and many more have adopted a special use permit for religious school and the house of worship.

Why is this village doing it differently? Why not by a special permit use. What are the benefits to this community to not have any oversight of a religious school?

What happens if a religious school comes in, and there's not enough parking, buffers requirements for the noise, lighting?

-Mayor Tursi responded that they have to go to the Planning Board.

-Susan Shapiro said no, they don't because it is as right and not a special use. This is how Mr. Rice wrote it, despite what he said. So apparently, you don't know what it says. There should be set back, buffing requirements even the GML states there should be parking requirements. Also, the village code 250-52 special permit, and 250-53 Special permit requirements, explains the reasons that there should be oversight for the public safety and welfare, buffering for the noise, but why isn't there a special use permit.

-Susan Shapiro asked why is the definition for the floor area being changed to allow people to live in the basement and attics. When basements and attics are used for livable space, a fatality occurs repeatedly. Why would this village want to take on that liability and endanger the people who live here and the neighbor, the firefighters, it is dangerous.

-Mayor Tursi responded that's Chapter 250-3 FLOOR AREA OF BUILDING, GROSS for basement and attics are if they have egresses. It doesn't have to say it because it's a NYS fire code.

-Susan Shapiro asked why people aren't required to have water sprinklers.

-Mayor Tursi stated that people don't have to have water sprinklers in their homes. As long as it's NYS fire code approved and goes through the Planning process. If they have two egresses, it's legal. I'm not going to require people to install an automatic sprinkler in their own homes.

-Susan Shapiro read aloud the portion of Introductory Local Law No. 5 that defines Place of Worship/Neighborhood:

PLACE OF WORSHIP, NEIGHBORHOOD - A portion of a one-family detached residence used exclusively for the conduct of organized religious services. No school or outside catering is permitted. At least 75% of the membership must live within a three-quarter (3/4) mile radius of the neighborhood place of worship. The bulk requirements shall be the use group for the one-family detached residence in which

the neighborhood place of worship is located. No more than one neighborhood place of worship per parcel shall be permitted.

She stated that this is an irrational standard. Will the Village be inspecting it to make sure that each house of worship is having 75% membership; people can move away? And this law doesn't provide any parking requirement.

-Mayor Tursi responded it has to go through the planning processes.

-Susan Shapiro added the way it's being approved as a right. Not the planning process.

-Mayor Tursi asked her where does it say that?

-Susan Shapiro said that when it doesn't say special use permit, it's as right. Why isn't the village doing it as a special use permit? The bulk requirements should be higher for religious uses than they are for residential because a house of worship will have more people using the place than a single family home, but it doesn't have any additional bulk requirements. Mr. Rice has the same bulk requirements as a single family home. The county's GML says that the village is not requiring any educational religious certification. Does the Village of Hillburn want a bunch of unqualified religious uses or schools? A nursing school requires education from NewYork State.

-Mayor Tursi said he is only concerned with Hillburn. Airmont was sued three times, New York State requires it, and not the village.

-Susan Shapiro said that in the village code it says that it needs to be New York State approved for the education department. Why wouldn't every education require the same certification?

-Mayor Tursi added that it would go in front of the planning board.

-Susan Shapiro stated that the village shouldn't adopt this because it is 250-3, but that's not the proper section it would be 250-7.

-Robin Miele, Clerk-Treasurer, explained that The GML stated that it needed to be changed which has been corrected.

-Mayor Tursi said that Susan Shapiro was looking at an old copy. The new copies were received yesterday.

-(Someone) said: that the group that is moving in here should try to be part of the community and not change the community. This doesn't fit well, because they are trying to change the community. You are only considering what the attorney says.

-Mayor Tursi said that another law firm is being contracted to review it.

-Eleanor De Graw, 10a Park Avenue, stated that she was part of the committee that worked on the Master Plan for two years. The members listened to two different attorneys, along with Bonnie Franson, that were involved with the committee. The committee took their opinions and the facts as what was best for the village. Now all of the sudden the village wants to change something that the committee worked on for so long. Especially all the people that came out to so many Saturdays meetings and spent hours. The committee asked for input from everybody, but only a handful of questionnaires were returned. There were Public Hearings, but nobody came out. Now, two attorneys' words weren't good enough and it has to be changed.

Why wasn't it done that way, to begin with?

-Robin Miele, Clerk-Treasurer stated that there are copies here available and they are simply to address the GML

-(Someone) stated: that they just learned that on Route 17, is not a school, have they received a fine or anything?

-Mayor Tursi responded that in 2002 he believes that it was.

- Robin Miele, Clerk-Treasurer added that they were brought to court and fined.

-Mayor Tursi said that certain things were done without a permit. They are dormitories and a portion is a synagogue.

-Someone asked if health inspections or any other inspections are made?

-Robin Miele, Clerk-Treasurer: health inspections are made by the County of Rockland and the fire/building inspector performs yearly fire inspections. They are tax-exempted under the non-profits entity. Annual renewal applications are required for approval.

-Smith stated that he is staying in Chief Perry's house, his grandfather. He heard that evrus were being put up and could have banners.

-Mayor Tursi responded yes, but that has nothing to do with this public hearing. Mayor Tursi stated that recently, the village has had an inquiry about putting a school in a residential area; this is what we are trying to avoid.

*Attorney Rice returns to the meeting at 8:20PM*

**Motion** to adjourn the public hearing to December 16, by Trustee Tarantino **and Trustee O'Blenis**

STATE OF NEW YORK )
) ss:
COUNTY OF ROCKLAND )

I, Robin G. Miele, Clerk of the Village of Hillburn, State of New York

**DO HEREBY CERTIFY:**

That the foregoing minutes of the Hillburn Village Board of Trustees' meeting duly called and held on November 16, 2021 have been compared by me with the original minutes as officially recorded in my office, and do hereby affirm that the same is a true and correct copy of said original minutes so far as the same relates to the subject matters referred to in said extract.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the seal of said Village of Hillburn, this 21st day of April, 2022.

Robin G. Miele,
Hillburn Village Clerk-Treasurer



**VILLAGE OF HILLBURN**
**Board of Trustees Meeting**
**Tuesday, December 14, 2021 – 7:00PM**

**MINUTES OF THE BOARD OF TRUSTEES MEETING held on Tuesday, December 14, 2021, in the Municipal Meeting Room, 31 Mountain Avenue, Hillburn, New York 10931, via GoToMeeting.com, commencing at 7:00PM.**

**PRESENT:**                                      **ALSO PRESENT:**
Joseph P. Tursi, Mayor                            Cathy Zalantis, Attorney (Silverberg Zalantis, LLC)
Bernadette Tarantino, Trustee                     Bonnie Franson (Nelson Pope Voorhis)
Bonnie O'Blenis, Trustee
Terry Rice, Village Attorney
Eve Mancuso, Village Engineer
Thomas Conklin, DPW Superintendent

**RECORDER OF MINUTES:  Robin G. Miele, Clerk-Treasurer**
**======================================================**

The Hon. Mayor Joseph P. Tursi called meeting to order.   Village Attorney Terry Rice led in the Salute to the Flag.

<u>**Minutes of the 11/16/2021 Meeting**</u> **- Approved by Village Board.**
                        Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                        Noes:   None

<u>**Minutes of the 11/23/2021 Special Meeting**</u> **- Approved by Village Board.**
                        Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                        Noes:   None

<u>**Street & Water Commissioners' Reports**</u> **– Approved by Village Board.**
                        Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                        Noes:   None

<u>**Police Commissioner's Report**</u> –
Ramapo Police Department – Installation of License Plate Readers – No further report.

<u>**Village Water System**</u>
<u>-SUEZ Water New York – Bill of 12/06/2021:  $9,697.14</u> **- Approved by Village Board.**
                        Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                        Noes:   None

<u>-4-Month Water Summary Report</u> – The Village Board acknowledged receipt of the Summary for the 4-month period ending 11/30/2021.
-NYS Dept. of Public Service – Low Income Household Water Assistance Program – Information has been posted.

<u>**DPW Report - DPW Supt. Conklin reported:**</u>
<u>Back-Hoe</u> –Emergency Repair by Suffern Auto Service - Invoice #1419:  $650.00.   **Approved by Village Board.**
                        Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                        Noes:   None

<u>2016 F-550</u> – At Mahwah Ford – RE:  11/2021 Recall (Diesel Particulate Filter).
<u>Purchase of Handheld Plow Control</u> – Traffic Safety & Equip. Co. – Inv. #223732:  $412.89 **Ratified by Village Board**
                        Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                        Noes:   None

<u>2008 Truck</u> – Will be taken to Suffern Auto Service – "U" Joint in front end is locking up steering.
<u>2021 Ford F-550 DPW Truck</u>
-Supt. Conklin reported the truck has been registered.
-Supt. Conklin stated that he is waiting for a second proposal for lights.
-The plow was installed by Traffic Safety & Equip. Co. on 11/24/2021.
-The replacement grill for truck has not been received as of this date.
-Lettering of the truck has been complete:  Cost $100.00 (2 @ $50.00) – Invoice to be supplied by DPW Supt. Conklin.
**Approved by Village Board.**
                        Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                        Noes:   None

RE:  Garbage Receptacles – Recommendation by Comp. Alliance to Implement Maximum Weight Limit Load – Supt. Conklin reported that the Village of Suffern imposes a 50lb weight limit.  This allows the DPW to pick up and dump the trash, rather than reaching into the trash can.
Attorney Rice stated that Local Law No. 4 of 2021 provides jurisdiction to the DPW Supt. to set rules and regulations regarding garbage, refuse and recyclables.  Therefore, he recommended revocation of the existing code provision and allowing Supt. Conklin to implement the 50lb weight limit.  Attorney Rice will follow up on matter.
-A discussion was held on establishing a Violation Notice to be issued directly by the DPW Supt. to the property owner upon witnessing a violation.  Attorney Rice will review.
Fence in Parking Lot (Municipal Building) – DPW Supt. will obtain quotes.
Rockland Green – Tipping Fees

<u>**H.F.D. Report**</u> – HFD Chief Starr not present.
-Purchase of (4) Helmets/Shields – 12/9/2021 Quote - Witmer Public Safety Group:  $3,410.00.   **Approved by Village Board.**
                        Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                        Noes:   None

**Board Meeting**                    **December 14, 2021**                    continued

-5-CFR – 10/1/2021 Repair by NJEV – Invoice #0078963-IN:  $1,140.35.  **Approved by Village Board.**
                    Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:  None

-MES - 11/1/2021 Correspondence – RE:  Required testing of Scott Air-Paks.  (Response from HFD Chief pending).
-Request for Use of CFR and UTV – 12/4/2021 Suffern Christmas Parade and 12/11/2021 Orangeburg Christmas Parade.
**Ratified by Village Board.**
                    Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:  None

**Penflex, Inc. – Service Award Program – Data Request Package** (Deadline Date for Filing:  3/31/2022) – Original
package to the HFD Chief for completion.

**SAM Capital Funding Grant Applications**
-SAM Grant - Sponsored by Assemblyman Lawler's Office – Revised Funding Application:  Pre-Fab Building and Back
Hoe – Submitted.

**Resolution Declaring the Funding and Construction of a Replacement DPW Garage and Equipment to be a Type**
**II Action Pursuant to SEQRA**

BE IT ENACTED by the Board of Trustees of the Village of Hillburn as follows:

WHEREAS, the DPW Garage located at 40 5th Street in the Village of Hillburn was declared to be unsafe and
demolished in 2015; and

WHEREAS, a grant has been made available to the Village through the DASNY; and

WHEREAS, the Village is applying for such grant in order to replace the DPW garage in kind and purchase
associated equipment; and

WHEREAS, the DPW Garage will be approximately the same dimensions as the garage it is replacing and
there will be no increase in impervious surface or intensity of use.

NOW, THEREFORE, BE IT RESOLVED by the Board of Trustees of the Village of Hillburn that the Board
of Trustees declares itself lead agency for the purposes of applying for the DASNY grant and replacement in
kind of the DPW Garage; and

BE IT RESOLVED, that the foregoing is a Type II action pursuant to 6 NYCRR §617.5(c)(2).

                    AYES:    JOSEPH P. TURSI, MAYOR
                             BERNADETTE TARANTINO, TRUSTEE
                             BONNIE O'BLENIS, TRUSTEE

                    NOES:    NONE

-Required documentation, including the above Resolution, will be provided to the Grants Administration of DASNY on
12/15/2021.

-SAM Grant – Sponsored by Senator Elijah Reichlin-Melnick's Office – 6/30/2021 Letter Request for Funding - Proposed
Project Application:  Veterans Memorial Park Pond Restoration – Sen. Reichlin-Melnick's office advised that the
Village's application had been forwarded to DASNY (Dormitory Authority of the State of New York).
-Required documentation was provided to the Grants Administration of DASNY on 11/19/2021
-An email was received from DASNY on 12/13/2021 requesting additional details (drawings, specs, etc.).  Engineer
Mancuso stated that she will provide a Concept Plan to DASNY.

**Village Engineer's Report** – Engineer Mancuso reported:
-RE:  Pre-Fab Building – Quote from Steel Master:  25x70 Steel Structure only delivered to site (Excludes:  construction
of building and concrete foundation slab, doors, electric):  $56,323.  As of 1/1/2022, the mills will be increasing their
prices by 20%.
-Mayor Tursi requested Engineer Mancuso to obtain quotes for a wooden structure.

Sixth St. Culvert (area of Boulder Ave) – A preliminary cost estimate was provided by Brooker Engineering, PLLC in the
amount of $471,315.00.
-An application was filed with FEMA on 11/19/2021 for funding to assist with the cost of this project.

MS-4 Stormwater Mapping Grant
-12/6/2021 Claim – Brooker Engineering, PLLC – Inv. #161787:  $1,010.00  **Approved by Village Board.**
                    Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:  None

**2021 Repavement Project – Funding:  CHIPs Program** - Project Areas:  5th St (from Mountain Ave. to Hickory Ave.),
Hickory Avenue (from 5th St. to 6th St.), 6th St. (from Hickory Ave. to Rockland Ave.) - Project is complete.

**Budget Amendment – RE:  CHIPS**
    A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis to amend the 2021-2022 Budget
as follows:

    Estimated Revenue:    A3501 – Consolidated Highway Aid (CHIPS)    Increase from $50,000 to $57,000
    Appropriations:       A51122 - Permanent Improvements (CHIPS)     Increase from $50,000 to $57,000
                    Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
                    Noes:  None

Board Meeting                                December 14, 2021                                continued

**Village Attorney's Report** – Village Attorney Terry Rice reported:
-NYSIF - Paid Family Leave (PFL) – Attorney Rice reported he has reviewed the PFL Policy and, although individual employees may only opt out under limited circumstances, the Village cannot opt out entirely.

**Town of Ramapo – 2022 Fire District Agreements (District #1 and District #5)**
Agreement has not been received at this date. Mayor Tursi will reach out to Ramapo Supervisor Specht.

**$125,000 BAN – Dated 1/14/2021 (DPW Vehicle, DPW Pre-Fab Garage & Misc. Office Equipment)**
-A Financial Report at 12/14/2021 was supplied.

**1/14/2022 Maturity of $125,000 BAN**
> A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino authorizing the Village Attorney to seek interest bids for a $100,000 BAN to renew, in part, the $125,000 BAN; and
> FURTHER, interest bids are to be submitted by 12:00noon on 1/7/2022.
> 
> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

**Personnel Manual** – Manual is to be updated to include COVID-19 protocol.

**Insurance** –
**VFIS (CHUBB/American Insurance Company)**
New York State Volunteer Firefighter Cancer Benefit Program (1/1/2022–1/1/2023) – Annual Premium: $2,041.00
-Invoice #1402 – Seely & Durland (on behalf of VFIS) – Policy #PTPNI139315 – Premium: $2,041.00.  Approved by **Village Board.**
> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

**NYS Municipal Workers' Compensation Alliance**
-Policy #VHILL – 3 Year Renewal: 1/1/22-12/31/24 - Annual Premium: $24,999.00
Quarterly Contribution due 1/1/2022: $6,249.75     **Approved by Village Board.**
> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

-Policy #VHVFD – 3 Year Renewal: 1/1/22-12/31/24 – Annual Premium: $9,870.00
Quarterly Contribution due 1/1/2022: $2,467.50     **Approved by Village Board.**
> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

**Selective Insurance**
-11/24/2021 Bill – RE:  Premium for 2021 Ford F-550 DPW Truck - $1,030.00 (Paid on 12/8/2021).  **Ratified by Village Board.**
> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

**7:30PM**
> A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino to suspend the regular meeting in order to continue the Public Hearing regarding Introductory Local Law No. 5 of 2021.
> 
> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

**7:30PM – Continuation of 9/14/2021 Public Hearing – Introductory Local Law No. 5 of 2021 –**
**A local law amending Chapter 250 of the Code of the Village of Hillburn**
**(Adjourned on 9/14/21 to 9/28/2021 allow time for receipt of GML Review from the RC Dept. of Planning; adjourned on 9/28/2021 to 10/12/2021; adjourned on 10/12/2021 to 10/26/2021; adjourned on 10/26/2021 to 11/16/2021; adjourned on11/16/2021 to 12/14/2021)**

-Village Attorney Rice stated that the purpose of Introductory Local Law No. 5, 2021 was to amend the Zoning Local Law adopted on 1/14/2020.  The Public Hearing has been continued on several dates, during which there has been innuendos from the public as to his integrity.  Subsequently, an outside law firm, Silverberg & Zalantis, LLC, was contracted to review the introductory local law and offer an opinion on its veracity.  Attorney Cathy Zalantis addressed the Village Board and the public and gave a summary of the findings outlined in the 12/13/2021 Memorandum submitted by Silverberg Zalantis, LLC:

Public Comments – attached

**7:54PM**
> A MOTION was made by Trustee Tarantino and seconded by Trustee O'Blenis to CLOSE the Public Hearing on Introductory Local Law No. 5 of 2021.
> 
> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

**7:55PM**
> A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino to re-open the regular Board of Trustees meeting.
> 
> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

-11/24/2021 Claim – Silverberg Zalantis, LLC – Inv. #0019475 – RE:  Professional Service – Review of Introductory Local No. 5, 2021 (Zoning Amendments): $130.00.  **Approved by Village Board.**
> Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
> Noes:  None

Board Meeting                          December 14, 2021

-10/25/2021 Claim – Nelson Pope Voorhis – Inv. #25391 - RE: Zoning Amendments (8/30/2021-9/28/2021): $595.00
**Approved by Village Board.**
                              Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                              Noes:   None

<u>**Various Capital Improvements (In accordance with 9/1/16 BAN)**</u>
-A Financial Report at 12/14/2021 was supplied.

<u>**General Code**</u>
-Proposal for Laserfiche – Two proposals were submitted by General Code:

* Laserfiche Cloud SaaS Starter System Solution – 4 Named Users:      Year 1: $7,056.00 Year 2:     $2,856.00
* Laserfiche Enterprise Cloud SaaS System Solution – Up to 100 Users: Year 1: $9,200.00 Years 2 & 3: $5,000.00
    Both proposals include: Storage: 100 GB per User  /  Overages: $30 for 10 GB Annually
                         Installation, Training & Project Coordination

   A MOTION was made by Trustee O'Blenis and seconded by Trustee Tarantino to accept the proposal from
   General Code for the Laserfiche Cloud SaaS Starter System Solution, at cost of $7,056.00, and
   FURTHER, the funding will be out of the 1/14/2021 BAN – Office Equipment.
                              Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                              Noes:   None

<u>**2022 Assessment Roll**</u> – Taxable Status Date: 1/1/2022

<u>**Village Website**</u>
Mayor Tursi reported he is working with a representative of equaTek in the development of an updated Village website.
Projected to be ready by the end of the year.

<u>**Zoning Board of Appeals**</u> – No report.

<u>**Planning Board**</u> – No report.

<u>**Building/Fire Inspector's Report**</u> – Building/Fire Inspector Gordon not present.
-The Village Board acknowledged receipt of copies of correspondence from the Bldg/Fire Insp. & Asst. Bldg Insp.

<u>**Escrow**</u> – A Status of Escrow Accounts Report dated 12/14/2021 was supplied.
-<u>Noved Building Mgmt – 4/4//2019 Planning Board Application</u>
-8/6/2021 Statement – Nelson Pope Voorhis (Invoice #20848 & 211542:  $340.00 – Payment remains pending)
Additional escrow to be filed by Noved Building Mgmt.

<u>**Senior Citizens**</u> – No report.

<u>**Recreation**</u> – No report.

<u>**2022 Village Election – 3/15/2022**</u>
-RC Board of Elections - 12/9/2021 Correspondence – RE: Notice of Unavailability of the following Voting Equipment
for the 2022 Election: Stanchions, Handicap Equipment and Signs.

<u>**Public Comments**</u>
**Dwaine Perry (13 Boulder Avenue)** stated that the RC Office of the Aging had mentioned to him that they are interested
in utilizing the Community Room on 1/6/2022.
-Tanya Cirincionne, President of the Hillburn Ladies Auxiliary, stated that the Ladies Auxiliary will be meeting in the
Community Room on 1/6/2022.
-Mr. Perry was directed to have the RC Office of the Aging file an application to use the Community Room on a different
date.

<u>**Requests for Use of Village Equipment**</u>
-Y. Van Dunk – Location: 23 Mountain Avenue - 6 Chairs - Date: 12/12/2021 – 11:00AM-4:00PM **Ratified by Board**
                              Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                              Noes:   None

<u>**Correspondence**</u> - The Village Board acknowledged receipt of correspondence, regular and email, including:
-Williamson Lawbook Co. – Notice of 15% increase in the 2022-2023 Annual Support.
-Township of Mahwah – Notice of 10/21/2021 Public Hearing – Ordinance – RE: Cannabis
-Town of Clarkstown – Notice of 12/14/2021 Continuation of Public Hearing – Amending Town Code Exception for
Emergency Service Organizations to the Prohibition of Electronic Reader Boards.
-Ramapough Lenape Tribal Center – Flyer (hand-delivered) – RE: 12/17/2021 - Free COVID-19 Vaccines
-Shining Lights Helping Hands – Flyer (hand-delivered) – RE: Registration for 12/18/2021 Christmas Toy Give Away.

<u>**Voucher Claims and Budgetary Transfers to Cover Approved Expenditures**</u> - **Approved by Board.**
                              Ayes:   Mayor Tursi, Trustees Tarantino & O'Blenis
                              Noes:   None

<u>**Holiday Closings**</u>: Friday, December 24, 2021 and Friday, December 31, 2021.

<u>**Upcoming Village Board Meetings**</u>: Tuesday – January 11, 2022 & Tuesday, January 25, 2022 - 7:00PM

Meeting was adjourned at 8:10PM.

Public Comments for December 14, 2021

Mayor Tursi said that this is to continue the public hearing of Introductory Local Law No. 5 of 2021 - A local law amending Chapter 250 of the Code of the Village of Hillburn

-Village Attorney Terry Rice said that the Village has gone through several hearings on these proposed amendments. As discussed in the past, the Building Inspector thought these amendments were appropriate because having worked with the zoning law for some time; he noticed some things needed adjustments.

The two other items are schools and neighborhood houses of worship. Attorney Rice believed these items were required in the zoning law, and in the absence of those provisions, the Village is not following up with land uses, and it would be unconstitutional. If schools are not included, it goes against the New York State case laws.

In addition, not having any regulations could have someone open those facilities without any oversight by the village. Rather than deal with the laws or substance some people have questioned his representation of other people and other municipalities and regarding the Mayor. Therefore, the Village Board considered it appropriate to have an outside law firm assess those two particular issues to bring comfort that the law requires what the village is doing.

Cathy Zalantis from Silverberg Zalantis LLC, which is a law firm in Tarrytown, New York that primarily represents municipalities. She has prepared a Memorandum, and she would like to present her findings on those issues to the Board. When she is finished, Village Attorney Rice added that the Board intends to close the Public Hearing.

Many suggestions were made by the public, some of which had merits to look at. Under the court of appeal of the Cornell University v Bagnardi case law, the court recommends a special permit procedure for these types of uses. Consequently, the Planner is going to go back and make these special permit uses and she is going to look at other municipalities and see if any other suggestions might be appropriate for the Village of Hillburn's amendments. He asked Cathy to address the Board.

-Cathy Zalantis- said Good evening, and stated that her name is Cathy Zalantis from Silverberg Zalantis, LLC. She explained that her firm was retained for analysis on religious use and educational uses. She has also prepared a Memorandum on December 13, 2021. She brought the Memorandum in case anyone would like to read it. She added that the village cannot preclude religious or educational uses. Religious and educational uses are not exempt from zoning but under the law, the regulations cannot be too burdensome that they disappear with the exercise of religious or educational use, and those uses are afforded more flexibility under the law.

New York State courts have upheld that a village could enact permits, regulations, or variance or they can require those type uses to go through the normal procedures of the land use Boards and the application process. Currently, the Village of Hillburn's code does not have anything in the code that regulates having a residential structure for worshipping purposes, and other than Nursing Uses, there is nothing in the codes that can regulate educational uses. These uses can be undertaken right now at any time. This means that somebody can come and build a school without any municipal oversight because there is nothing in the codes to regulate it. The usual regulations would include parking, setbacks, etc. Someone can argue that the silence is a blanket preclusion and therefore it violates RLUIPA. Other municipalities have been targeted for not having it in the codes. The claimer states that this violates RLUIPA.

The RLUIPA claims can cost municipalities thousands of dollars in attorney fees and damages. For example, the Village of Pomona litigations have been going on since 2007. It has had to pay millions of dollars in its cost and the plaintiff's legal fees and damages. The village can enact the permits that the law allows. The village can implement a zoning resolution that ensures that residential structures are regulated in the village. They can operate safely with municipal oversight, and restrictions in place, parking regulations, setbacks, and this would prevent a RLUIPA claim.

-Trustee O'Blenis questioned if someone wants to have a school in Hillburn, would the applicant have to go to the zoning to get all the particulars of what they have to do.

-Cathy Zalantis responded that right now there's no zoning in place to regulate it. The Village would be amending the zoning code to incorporate the regulations in place for it, and the fees that the applicant would submit with the application. Also the Planning Board's approval for it, along with Planning Board and municipal oversight for it. At this time, there's nothing in place to regulate those types of uses. It's bad for two reasons, the applicant can come in and say that they are putting it in a location and the village can't stop them, because there's nothing that prohibits it in the code or allows it. Another reason is that the applicant can say

that because the code is silent about it, it violates RLUIPA, and the village is precluding that type of use, therefore, bring an RLUIPA claim and settle in Federal court.

-Trustee Tarantino stated that at this time they can put it anywhere in the village or open it wherever they want.

-Cathy Zalantis replied that other than Nursing School which is in the code. Those other uses are not in the code and it is important to require them to have site plan reviews and regulations by the Planning Board. Especially a school, it needs more parking spaces because it generates more vehicles.

-Trustee Tarantino asked if schools could be zoned outside of the residential areas.

-Attorney Rice said that with the new proposal, the school is zoned outside of the residential area and it would be located on Route 17. Currently, the village does not have regulations on schools. Both Cathy Zalantis and Attorney Rice said before that it is contrary to New York State case law, and if it's left out, it leaves the village unprotected.

-Trustee O'Blenis questioned if, in Hillburn, there's no zoning for a school?

-Attorney Rice stated that in Hillburn there's nothing in place for a school. The Village does not allow any schools in Hillburn, which is contrary to the state. Case law says the localities cannot exclude schools.

-Cathy Zalantis added the village cannot exclude schools out of the community. Hillburn cannot say that schools are not allowed here or religious uses because that violates state law and Federal law. Right now, there's nothing there and someone can take the position that because there's nothing there that the code is silent and it violates those laws.

-Attorney Rice said that this is contrary to the law and without anything in place, it leaves the village unprotected. He understands the public's concerns but these laws are protecting the village. Attorney Rice suggested that since Bonnie Franson is going to come back and modify the local law amending Chapter 250 of the Code of the Village of Hillburn, which will then go to the County Rockland Planning Department for their review and go through the whole process again. It would be appropriate to close the public hearing and then the village can revisit this in a few months after Bonnie has prepared a new draft local law.

-Mayor Tursi said that he would take a few questions but not allow it to be a long discussion.

-Timothy Gulick said that he would like to comment. He said he was on the committee and worked on the zoning codes. Many entities advised the members, including the village's former attorney. Now you are saying that nothing was put in there for either schools or religious uses in the revised code that was adopted.

-Attorney Rice responded that is correct. The village has houses of worship but not neighborhood houses of worship or schools and that is an issue.

-Dwaine Perry said that he would like to request that it be on record that the proposed amendments, as far as RLUPA is concerned, that everyone is granted the same statute. He said that if people are allowed some tax exemption from their dwellings that it be extended to the entire village. He stated that he has spoken to many people in the village and not one person he spoke to knew that there were going to be amendments. He suggested that the village needs to make a better outreach.

-Robin Miele, Clerk-Treasurer stated that for the record, every public hearing is very much advertised. It is posted on all designated (seven) telephone poles. Notices are posted on the village's website and the village's Facebook, in the Post Office, on the municipal building's door. Those things are taken seriously.

-Dwaine Perry responded that they are not on the seven telephone poles.

-Robin Miele, Clerk-Treasurer stated that yes, they are. Also, she has confirmation that they are published on the Journal News.

-Mayor Tursi said that it is going on the record, that it is duly published.

-Attorney Rice advised to close the public hearing, after Bonnie has a draft for the Local Law, it would be publicized and start the process again.

-Daniel Harpaz stated that he is the president of the 301 route 17, and owner of five of the ten units. He wanted to thank the board for realizing that Local Shopping needs to be amended. It is impossible to put Local Shopping in his commercial space. There is not enough parking, however, he would like to ask Attorney Rice to reword section, E. Grandfathering of certain pre-existing and HC Non Residential uses

within the LS Local Shopping Zoning District, better. The sentence is convoluted because it states that for all circumstances allowed under the revisions, the building inspector or code enforcer has to refer it to the Planning Board.

-Attorney Rice said that this statement is an improvement because before everyone, who had lost their nonconforming use had to obtain a use variance. This provision will allow the continuation of the nonconforming use in that zoning district, with a visit to the Planning Board. This is not grandfathered, but a nonconforming use. It's a change of use. For example, the Zoning Board of Appeal had an application for a warehouse of operation for nuts and then they wanted to operate an automotive use. The Building Inspector said that they had lost their nonconforming use, which would require a use variance. It is being proposed that, if it is a change of use it would go to the Planning Board for review, to address any issues. This means that a use variance is not needed, because it can be recognized as a permissible use.

-Mayor Tursi added that one step is being removed, those uses are going to the Planning Board, and no need to file with the Zoning Board of Appeal

-Attorney Rice said it would be a minor review by the Planning Board.

-Daniel Harpaz said that this unit was automotive for many many years, but then the Nut company came in and at the same time the village rezoned his property.

-Attorney Rice said that now the village is trying to rectify it.

-Robin Miele added that every commercial property, if they have a new use, has to go to the Planning Board.

-Attorney Rice said that for commercial use, every change of use would have to visit the Planning Board.

-Daniel Harpaz said that he has owned the property for 18 years. This section says that for an existent use, it would have to go to the Planning Board, for all conditions.

-Attorney Rice said if it is the same use it probably won't have to go to the Planning Board, but the language in this section will be looked at.

-Dwaine Perry wants to be included on the committee.

-Mayor Tursi responded that there's no committee.

-Attorney Rice said that the Planner will amend the Local Law, in a few months. Then the Board of Trustees will review it and then when it's ready for public hearing the process would start again.

-Daniel Harpaz stated that he filed for nonresidential occupancy use.

-Robin Miele responded that the Building Inspector is reviewing it and will determine if it's the same use, then they can use the same Planning Board use given at that time, but if it is different it must return to the Planning Board for approval.

-Carla Alexander asked, since this takes several months, does that mean that anybody can put a school anywhere.

-Mayor Tursi responded that yes they can. The Village Board wanted to handle this months ago.

-Bonnie Franson said that she believes that there is a clause that prohibits certain uses.

-Mayor Tursi introduced Bonnie Franson from Nelson, Pope, and Voorhis, the village planner.

Motioned to close the Public Hearing.

Ayes:  Mayor Tursi, Trustees Tarantino & O'Blenis
Noes:  None

STATE OF NEW YORK    )

                      ) ss:

COUNTY OF ROCKLAND    )

I, Robin G. Miele, Clerk of the Village of Hillburn, State of New York

**DO HEREBY CERTIFY:**

That the foregoing minutes of the Hillburn Village Board of Trustees' meeting duly called and held on December 14, 2021 have been compared by me with the original minutes as officially recorded in my office, and do hereby affirm that the same is a true and correct copy of said original minutes so far as the same relates to the subject matters referred to in said extract.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the seal of said Village of Hillburn, this 21st day of April, 2022.

Robin G. Miele,

Hillburn Village Clerk-Treasurer



Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 106 of 167

Exhibit "C"

**October 26, 2021 Public Hearing**

Mayor Tursi stated that it has come to his attention that a rumor has been circulating around town that this Village Board is selling out to the Jewish community nothing is farther from the truth than that. No background deals are going on here. This village board has been nothing but transparent with this village. I find it insulting that that is even out there. And at the last meeting, this board was accused of committing genocide, called racists, and quite other insulting things. The village attorney was insulted as well. I have a list of towns he has represented, such as Suffern, Lake Placid, Scarsdale, etc. I can go on. This is one of the best land use attorney in the state, if not the country. Attorney Rice also represented in New Mexico, Pennsylvania, Tennessee. Not just the county. So to be insulted like that in this meeting, I can't accept it and won't accept it. To be told that having a community steal your land, well let me tell you something the Split Rock property up there, who do you think brought that up to the Sewer Commissioner? I did, I helped preserve that land, I took it to the county executive, I took it to the county legislators, and we got it saved but that wasn't mentioned though, was it. That's stealing land?  (Dwaine Perry (13 Boulder Avenue), raised his hand) Mayor Tursi said this is not open for public comments, Dwaine. I'm talking right now. I'm talking, Dwaine.

Dwaine Perry (13 Boulder Ave) stated: that's an incorrect statement

Mayor Tursi asked what incorrect statement am I making, Dwaine.

Am I committing genocide?

-Trustee Tarantino indicated it's not public comments, he is speaking-(referring to Mayor Tursi talking).

-Mayor Tursi requested Dwaine Perry to explain himself.

-Dwaine Perry said that those things could be viewed as, not that Mayor Tursi was a racist.

-Mayor Tursi responded that he could show Dwaine Perry the video that will confirm that he indeed said that Mayor Tursi was a racist.

-Dwaine Perry added that those policies could be viewed as racist.

-Mayor Tursi said that for the record, Dwaine Perry's request on having an outside counselor to review everything will be arranged.

-Dwaine Perry stated that Mayor Tursi should do what is generally done- referring to holding an open meeting in the Community Room, where the whole community could attend to hear the issues.

-Mayor Tursi said that this is a Public Hearing.  All Public Hearings are publicized on the Journal News, Internet, Village of Hillburn's website, posted on the Post Office, Facebook Page, etc.

-Dwaine Perry said that was being disingenuous because of how many senior citizens don't have access to it.

- Cathy Tursi (28 Terrace Avenue) asked what would be the difference between having a public hearing here or across the street. Isn't it the same thing?

-Dwaine Perry responded we could have the whole community there.

-Trustee Tarantino asked where was the whole community tonight. We are doing another Public Hearing.

-Dwaine Perry responded wouldn't you want the involvement of everyone?

- Mayor Tursi stated this is the third or fourth public hearing.

-Dwaine Perry said that the Community Room would hold 50 to 100 people.  This is something that affects the whole community.  They may be 100 percent supportive of what you are doing, or they may not. People can ask questions.

-Mayor Tursi stated that Public Hearings are always held here (Mary Boone's s Meeting), and not until the last meeting has anyone been here.

-Cathy Tursi questioned if the Village Board does anything different from any other Mayor

-Trustee Tarantino stated the Village Board does more than it is required.

-Attorney Rice asked if he could interject, and stated since people are questioning whether, or not this is necessary and the County suggested various changes that the Planner is making.  People are aware of this and it's not a secret, my suggestion is to adjourn the hearing to the next village board meeting.  In the meantime, to have a level of comfort, the Village Board can contract another attorney to review this. Bonnie Franson is making amendments that are minor technical things that the County Department of

Planning suggested. Once her revised revisions and opinions from another attorney, it would be more fruitful to continue with the public hearing, than debating whether people knew about it.

-Dwaine Perry questioned if an independent attorney can take a look at it?
-Mayor Tursi said that is what is being suggested, by Attorney Rice, getting an outside firm.
Attorney Rice said adjourned to a month so everything needed is in.
-Rogers Garey (17 Hickory Avenue) questioned what would be the percent tax-exempt of a partial house of worship.
-Mayor Tursi responded it would be on the square footage of a house.
-Attorney Rice answered that this has no bearing on the zone, but Scott Shedler would have a better idea, although he believed it would be dependent on the footage of the house.
-Mayor Tursi added that if 20% percent of the house is being used as a house of worship, then that percentage would be tax-exempt, leave your information, and you will be contacted.
-Rogers Garey said this is required by Federal law, that if one room is used for a religious room, that is already in the law.
-Mayor Tursi replied it cannot be stopped by the village.
-Rogers Garey said what we are doing is setting up some boundaries and restrictions on that use because otherwise if they do it and you take them to court to prove that they have exceeded the restrictions that aren't in place, if you don't pass these laws (Local Law 5 of 2021).

Mayor Tursi said that the churches, such as Brook Church, Lighthouse Worship, were grandfathered and received a whole exemption because they are pre-existing and a house of worship. What is being done in this case is that, a portion of a one-family detached residence used exclusively for the conduct of organized religious services. No school or outside catering is permitted. At least 75% of the membership must live within a three-quarter (3/4) mile radius of the neighborhood place of worship.

Mayor Tursi read aloud the portion of Introductory Local Law No. 5, Section 3. Section 250-3 of the Code of the Village of Hillburn that defines School of General or Religious Instruction, and he also read School of Special Instruction.

SCHOOL OF GENERAL OR RELIGIOUS INSTRUCTION - Any secular or religious public or private educational institution offering courses in general or religious instruction at least five days per week and seven months per year. Specifically excluded from this definition is a school of special instruction.

SCHOOL OF SPECIAL INSTRUCTION - Any private, for-profit educational institution, which is neither a school of general or religious instruction, offering a regularly scheduled curriculum teaching technical skills, trades, arts or other similar specialized or vocational study, such as a driving school or a cosmetology school.

Mayor Tursi said that the mentioned above would require Planning Board approval and be limited to a certain area. Mayor Tursi added that anybody can come and legally put a house of worship open to the public and a school because there are no restrictions on it right now. We are trying to designate an area to have it, but instead, we are being told, that we are selling out.

Motioned to adjourn: to the Community Room November 16, 7:30 By Bernadette Tarantino

Exhibit "D"

## Public Comments for November 16, 2021

Mayor Tursi said that this is to continue the public hearing of LL5. As you may or may not know, the village updated the code regarding the Master Plan & Zoning issues within the village. This was put together by a committee that was created by Mayor Flanagan.

When we took office, it was still going on. That committee submitted its plan to the village, at the end of 2019.

January 2020, it was approved, but some items were left out or that should have been put in, to protect the village from development in areas that didn't see fit to be, such as a school.

Right now, a school can be put anywhere. The idea is to keep it out of reside'ntial and have it on route 17.

Otis Mann- 151 Sixth Street, we don't need any more schools in Hillburn.

Mayor Tursi added as it stands right now, a school can be placed anywhere in this village and the same for a house of worship. We are trying to restrict it a little bit more by putting them in areas that are not in residential areas. That's the whole idea of changing the premise in this and updating it. I'm opening up to public comments, don't want any wild comments, we are going to keep it civil.

-Patricia Osterhoudt- 159 Sixth Street- stated that when the Village started the Master Plan, she remembered that she sat in a couple of those meetings because it was open to the public. The committee was selected from Hillburn. The village took out a BOND to pay the people, who developed the Master Plan with the committee. They had conversations about schools and religious buildings. They had conversations that took a couple of years. Were those people that were hired to develop the Master Plan and the committee requested to come back to ask if it needs to be changed. The Master Plan was developed, paid for, and discussed, but now it is being changed.

-Mayor Tursi responded that the committee submitted their ideas and plans, and it was approved. At the time, there was a different law firm representing the village.

-Patricia Osterhoudt added that the Master Plan had a completely different law firm separate from the village. The village paid extra for those people for their expertise, to come in and do this for the village. Why isn't the Village going back to those people to ask what those conversations were? Why aren't they fixing it for us instead of going by a Rockland County lawyer, who says that this needs to be in there, and is not an expert on the Master Plan and maybe has a conflict of interest being he's a Rockland County lawyer. It isn't against him, but it's just the way it works in such a small county. Has the Master Plan committee been reached, some are sitting here tonight?

-Mayor Tursi responded, no.

-Patricia Osterhoudt, asked if before this is put in and approved, why aren't the people hired and the committee being revisited, otherwise, it would be a waste of money to pay somebody else to do this, our lawyer when it was paid for.

-Attorney Rice said First, I'm not being paid anything additional, for doing this. Second, my specialty has been zoning for 45 years. I'm a professor at Fordham University School of Law, and zoning is my bread and butter, so I know this stuff. Also, the fact that I'm a Rockland County law, doesn't mean anything. I give objective advice, and I've done that throughout my whole career. But, because the issue was raised, the Mayor is going to bring it up shortly. We have a proposal from Silverberg Zalantis, LLC, who is also a land-use attorney. They can review what is proposed, and give an opinion to the board, whether or not they concur with my opinion. I don't think this is necessary, but to give the public a comfort level, that's what is being proposed. Further to the fact, there was a committee that was involved. The people hired to develop the Master Plan took the ideas of the committee that worked very hard, but some issues were not addressed or were addressed in a way that did not comport with New York state laws. Again, the Mayor will bring up that another law firm will take a look at this because the issue has been raised, and we'll see what they have to say.

-Patricia Osterhoudt asked are you going to call back that committee?

-Mayor Tursi responded no.

-Patricia Osterhoudt asked are you going to ask the people that prepared this, why this is not correct?

-Mayor Tursi questioned why would we have them come back.

-Patricia Osterhoudt said because something was prepared incorrectly.

-Mayor Tursi added the people hired took the recommendation of the committee and a survey that went out, but only a few people responded to the survey.

-Patricia Osterhoudt questioned if we know what was discussed at the beginning regarding these issues.

-Mayor Tursi responded No, I was not there, I was not involved at that point, it was 2019 and the Master Plan was already in process.

-Patricia Osterhoudt asked why they weren't calling back the committee to find out.

-Mayor Tursi responded it doesn't matter what they talked about then because it doesn't apply to what we have to do now. We came into the office and found out it wasn't properly done, this is to protect the village. We aren't selling the village out. The committee submitted their plan and now some things need to be amended.

-(A person) said: the Master Plan is getting amendments and the people aren't getting what was said before 2019, maybe there was a reason.

-Patricia Osterhoudt added that maybe those reasons will affect those amendments you want to include.

-Mayor Tursi said that according to the land-use attorney that was hired, with years of experience and Nelson Pope & Voorhis, provisions should be added to keep schools in a certain area. If left out, a school could go everywhere in the village. This is to protect the village.

-Patricia Osterhoudt said if the amendment allows a school on Route 17, then the illegal school that has been there for years would be grandfathered. How is that going to affect that non-school there?

-Robin Miele, Clerk-Treasurer, clarified that it's a dormitory.

-Dwaine Perry, 13 Boulder Avenue, stated that he has concerns about the many sacred spots that could be destroyed. He added that his grandmother stood up for everybody, such as blacks, natives, women, etc. His father helped liberate the case of medics.

He carries a picture to remind him of the pain and horror. He has been having ceremonies in his house for years. Also, have others here, if that is going to be allowed by one group, he respectfully requests that the Board allow each Ramapough Indians' home as a sacred place of worship. We have been praying as refugees, in our homeland. The RLUPA, please make sure that whatever group, this is assigned to, that the same rights are given to the Ramapough people. It's best to be consistent. This is our land. If it wasn't for Ramapough's past, and his ancestors, there wouldn't have been a successful outcome to the revolution. The Ramapoughs past is technically, the back door to the new meaning of providence. Without the Ramapoughs' past, the British would not have reinforced their troops. The Ramapough were the first to have been enslaved in this country.

Currently, the Ramapoughs are suffering to stand on their own two feet. He thanked Mayor Tursi, for his efforts in what he did previously. (Referring to the preservation of Split Rock)

He added that he is terrified that what is left of the mountains would be destroyed. Also, make sure to include the Ramapough in everything that is being added. He had wondered for years why he hadn't received a tax break.

-Mayor Tursi responded it states an entity or congregation, such as Jewish, Catholics, Muslim, it could be any religion, Ramapough Nation.

-Dwaine Perry requested that he be notified when the law passes and that it be posted by the fountain and everywhere else.

-Robin Miele, Clerk-Treasurer, stated that notices are duly posted.

-Dwaine Perry, said that the point is that the majority of the people in this village are senior citizens and don't go online to find out what is happening, or walk by the village door to see what is posted there. Maybe the Village Board could take a step back and tell people around town so that they aren't in the dark.

-Mayor Tursi responded that the Village Board meets twice a month.

-Dwaine Perry added that the village already has a school there, where would another school be allowed.

-Mayor Tursi said that right now schools could be put anywhere.

-Dwaine Perry questioned who prompted this, Terry did you? Weirdly, no one prompts it and you are doing this.

-Mayor Tursi stated that at this time a school could go anywhere in the village, including next to anybody's house, if these laws aren't added.

-Village Attorney Rice added that as he had said in one of the previous meetings, the New York State court of appeal has made it very clear that schools cannot be excluded. In addition to not excluding schools, it can be a special permit use, to evaluate whether, or not it would have any deleterious impact on public safety or health. Then it can be denied, or alternately impose conditions to delegate the use. No attorney who studies land use will say it differently. In Federal court, it would be a losing battle.

-Dwaine Perry asked about all the taxes lost in the tax base. How could the village be sued, on layaway?

*Attorney Rice leaves meeting at 7:45PM*

-Susan Shapiro stated that she is representing Chief Dwaine Perry and the Ramapough Nation. This is very confusing, this law is being enacted because a school can be placed anywhere right now. The law that is being proposed allows it in every single zone. A school can be in R6, R9, R60; this is what this document says. Then Mr. Rice says that the court of appeal says that it's best to require a use permit, but this law doesn't say that, it says it is done by right. Mr. Rice is trying to protect you from RLUPA, but you don't need it because it's already in your laws. The new law is going to allow schools only on Route 17, but that isn't what this law says. This law says it's allowed in every residential district. You say one thing, Mr. Rice says another thing and this document says another. Almost every village, for example, the Town of Ramapo, Sloatsburg, Stony Point, and many more have adopted a special use permit for religious school and the house of worship. Why is this village doing it differently? Why not by a special permit use. What are the benefits to this community to not have any oversight of a religious school?

What happens if a religious school comes in, and there's not enough parking, buffers requirements for the noise, lighting?

-Mayor Tursi responded that they have to go to the Planning Board.

-Susan Shapiro said no, they don't because it is as right and not a special use permit. This is how Mr. Rice wrote it, despite what he said. So apparently, you don't know what it says. There should be set back, buffing requirements even the GML states there should be parking requirements. Also, the village code 250-52 special permit, and 250-53 Special permit requirements, explains the reasons that there should be oversight for the public safety and welfare, buffering for the noise, but why isn't there a special use permit.

-Susan Shapiro asked why is the definition for the floor area being changed to allow people to live in the basement and attics. When basements and attics are used for livable space, a fatality occurs repeatedly. Why would this village want to take on that liability and endanger the people who live here and the neighbor, the firefighters, it is dangerous.

-Mayor Tursi responded that's Chapter 250-3 FLOOR AREA OF BUILDING, GROSS for basement and attics are if they have egresses. It doesn't have to say it because it's a NYS fire code.

-Susan Shapiro said that people aren't being required to have water sprinklers.

-Mayor Tursi stated that people don't have to have water sprinklers in their homes. As long as it's NYS fire code approved and goes through the Planning process. If they have two egresses, it's legal. I'm not going to require people to install an automatic sprinkler in their own homes.

-Susan Shapiro read aloud the portion of Introductory Local Law No. 5 that defines Place of Worship/Neighborhood:

PLACE OF WORSHIP, NEIGHBORHOOD - A portion of a one-family detached residence used exclusively for the conduct of organized religious services. No school or outside catering is permitted. At least 75% of the membership must live within a three-quarter (3/4) mile radius of the neighborhood place of worship. The bulk requirements shall be the use group for the one-family detached residence in which the neighborhood place of worship is located. No more than one neighborhood place of worship per parcel shall be permitted.

She stated that this is an irrational standard. Will the Village be inspecting it to make sure that each house of worship is having 75% membership; people can move away? And this law doesn't provide any parking requirement.

-Mayor Tursi responded it has to go through the planning processes.

-Susan Shapiro added the way it's being approved as a right. Not the planning process.

-Mayor Tursi asked her where does it say that?

-Susan Shapiro said that when it doesn't say special use permit, it's as right. Why isn't the village doing it as a special use permit? The bulk requirements should be higher for religious uses than they are for residential because a house of worship will have more people using the place than a single family home, but it doesn't have any additional bulk requirements. Mr. Rice has the same bulk requirements as a single family home. The county's GML says that the village is not requiring any educational religious certification. Does the village of

Hillburn want a bunch of unqualified religious uses or schools? A nursing school requires education from New York State.

-Mayor Tursi said he is only concerned with Hillburn. Airmont was sued three times, New York State requires it, and not the village.
-Susan Shapiro said that in the village code it says that it needs to be New York State approved for the education department. Why wouldn't every education require the same certification?
-Mayor Tursi added that it would go in front of the planning board.
-Susan Shapiro stated that the village shouldn't adopt this because it is 250-3, but that's not the proper section it would be 250-7.
-Robin Miele, Clerk-Treasurer, explained that The GML stated that it needed to be changed which has been corrected.
-Mayor Tursi said that Susan Shapiro was looking at an old copy. The new copies were received yesterday.

-(Someone) said: that the group that is moving in here should try to be part of the community and not change the community. This doesn't fit well, because they are trying to change the community. You are only considering what the attorney says.
-Mayor Tursi said that another law firm is being contracted to review it.

-Eleanor De Graw, 10a Park Avenue, stated that she was part of the committee that worked on the Master Plan for two years. The members listened to two different attorneys, along with Bonnie Franson, that were involved with the committee. The committee took their opinions and the facts as what was best for the village. Now all of the sudden the village wants to change something that the committee worked on for so long. Especially all the people that came out to so many Saturdays meetings and spent hours. The committee asked for input from everybody, but only a handful of questionnaires were returned. There were Public Hearings, but nobody came out. Now, two attorneys' words weren't good enough and it has to be changed.
Why wasn't it done that way, to begin with?

-Robin Miele, Clerk-Treasurer stated that there are copies here available and they are simply to address the GML

-(Someone) stated: that they just learned that on Route 17, is not a school, have they received a fine or anything?
-Mayor Tursi responded that in 2002 he believes that it was.
- Robin Miele, Clerk-Treasurer added that they were brought to court and fined.
-Mayor Tursi said that certain things were done without a permit. They are dormitories and a portion is a synagogue.
-Someone asked if health inspections or any other inspections are made?
-Robin Miele, Clerk-Treasurer: health inspections are made by the County of Rockland and the fire/building inspector performs yearly fire inspections. They are tax-exempted under the non-profits entity. Annual renewal applications are required for approval.

-Smith stated that he is staying in Chief Perry's house, his grandfather. He heard that evrus were being put up and could have banners.
-Mayor Tursi responded yes, but that has nothing to do with this public hearing. Mayor Tursi stated that recently, the village has had an inquiry about putting a school in a residential area; this is what we are trying to avoid.
*Attorney Rice returns to the meeting at 8:20PM*

Motion to adjourn the public hearing to December 16, by Trustee Tarantino and Trustee O'Blenis

Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 114 of 167

Exhibit "E"

**VILLAGE OF HILLBURN**
**Board of Trustees Meeting**
**Tuesday, April 25, 2023 – 7:00PM**

**MINUTES OF THE BOARD OF TRUSTEES MEETING held on Tuesday, April 25, 2023, in the Municipal Meeting Room, 31 Mountain Avenue, Hillburn, New York 10931, commencing at 7:00PM.**

<u>PRESENT:</u>     **Joseph P. Tursi, Mayor**
               **Bernadette Tarantino, Trustee**
               **David H. McNally, Trustee**
               **Terry Rice, Village Attorney (online)**
               **Eve Mancuso, Village Engineer**
               **Thomas Conklin, DPW Superintendent**

**RECORDER OF MINUTES:   Robin G. Miele, Clerk-Treasurer**

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The Hon. Mayor Joseph P. Tursi called meeting to order.  Trustee McNally led in the Salute to the Flag.

<u>Minutes of the 4/11/2023 Meeting</u> **- Approved by Village Board.**
                                   Ayes:  Mayor Tursi, Trustees Tarantino & McNally
                                   Noes:  None

<u>Street & Water Commissioners' Reports</u> – **Approved by Village Board.**
                                   Ayes:  Mayor Tursi, Trustees Tarantino & McNally
                                   Noes:  None

<u>Police Commissioner's Report</u> – Police Commissioner, Mayor Tursi, acknowledged the presence of Ramapo Police Officer Small and Officer Dodrill.
-Mayor Tursi stated he had left a message with Captain Hyman regarding an issue at the top of Sixth Street, pass the gate.
-DPW Supt. Conklin stated that vehicles are bypassing the gate and congregating at the top of Sixth Street, leaving trash behind.  He had spoken to a Ramapo Police Detective who advised that if the Village provided the Ramapo Police with a key to the gate, the sector car would patrol the area.  Officer Small stated he would follow up on same.
<u>RE:  Dog Control Officer</u> – Mayor Tursi questioned if a Dog Control Officer had been appointed by the Town.
-Officer Small replied yes – a gentleman named Dan was appointed approx. 5-6 months ago.

<u>Village Engineer's Report</u> – Engineer Mancuso reported:
-5th Street DPW Garage – An updated quote was received from ClearSpan that includes materials, delivery and installation of a pole building:  $193,497.90. Concrete slab and electric are separate.  Funding mechanism to be determined.
-<u>Upper Sixth Street Paving Project</u> – Bid documents prepared.  Bid date pending receipt of CHIPs Funding.
-<u>Veterans Memorial Park Pond</u> – Quotes are being obtained for the installation of second shallow well.
-6th Street Culvert – NYS DEC has responded – project application has been received and is being reviewed.

**7:15PM**
      A MOTION was made by Trustee Tarantino and seconded by Trustee McNally to suspend the regular meeting in order to hold the duly scheduled Public Hearing.
                                   Ayes:  Mayor Tursi, Trustees Tarantino & McNally
                                   Noes:  None

<u>**Public Hearing – Introductory Local Law 2 of 2023 – Rental Properties**</u>
The Village Clerk read the duly posted and published Notice of Public Hearing.
Attorney Rice summarized the purpose of the local law inasmuch as requiring the owner of a rental property to register with the Village and obtain a permit that requires inspection.
-Attorney Rice stated he still has not received Trustee McNally's comments.

Hearing was opened for public comments.  There were none.

      A MOTION was made by Trustee McNally and seconded by Trustee Tarantino to adjourn the public hearing to allow time for review of Trustee McNally's comments regarding the introductory local law, and to continue the public hearing on May 9, 2023 at 7:15PM.
                                   Ayes:  Mayor Tursi, Trustees Tarantino & McNally
                                   Noes:  None

**7:30PM**

<u>**Public Hearing – Introductory Local Law 3 of 2023 – Truck Parking on Streets within the Village Limits**</u>
The Village Clerk read the Notice of Public Hearing that was duly posted and published.

Mayor Tursi summarized the introductory local law. The recent parking of large trucks along streets in the Village, in some instances impeding traffic, has necessitated this regulation.
-Although the introductory local law reflects a weight limit of 10 tons, it was determined that the weight should be decreased to 5 tons.

Hearing was opened for public comments.  There were none.

      A MOTION was made by Trustee Tarantino and seconded by Trustee McNally to close the Public Hearing.
                                   Ayes:  Mayor Tursi, Trustees Tarantino & McNally
                                   Noes:  None

The following Resolution was offered by Trustee McNally and seconded by Trustee Tarantino who moved its adoption:

**WHEREAS**, a duly noticed public hearing was held on April 25, 2023 regarding Introductory Local Law No. 3 of 2023, a Local Law Amending Section 230-7 of the Code of the Village of Hillburn to Prohibit the Parking of Trucks  with a Gross Weight of 10 Tons or more on Streets in the Village of Hillburn

**Page 1 of 3**

**WHEREAS,** the Village Board determined that the introductory local law be amended to prohibit trucks with a gross weight of 5 Tons or more from parking on streets in the Village of Hillburn; and

**WHEREAS,** the Village Board determined that the adoption of this local law is a Type II action and no further environmental review is required;

**NOW THEREFORE, BE IT RESOLVED** that the Village Board of Trustees hereby adopts Introductory Local Law No. 3 of 2023 as Local Law No. 2 of 2023, as amended.  Said Local Law will take effect immediately upon filing with the Secretary of State.

|  |  |
|---|---|
| **Ayes:** | **Joseph P. Tursi, Mayor** |
| | **Bernadette Tarantino, Trustee** |
| | **David McNally, Trustee** |
| **Noes:** | None |

Resolution was unanimously adopted.

-Purchase of No Parking Signs – RE:  Trucks – Traffic Safety & Equip. Co., Inc. – 4 Signs at $70.00 = $280.00.  **Approved by Village Board.**

|  |  |
|---|---|
| Ayes: | Mayor Tursi, Trustees Tarantino & McNally |
| Noes: | None |

-Attorney Rice confirmed that signs should not be posted until the Secretary of State confirms filing of the Local Law.

**Village Water System –**
-RE:  Two High Water Bills for the Billing Period Ending 3/31/2023 – Letters were sent to the two respective property owners offering the opportunity to pay the bills within a 6 month period, without penalty or relevy.  At this date, one property owner has requested to meet with the Mayor to discuss the bill.
-Testing of Meter (Route 17 Back-Up Meter) – Testing by National Meter still pending.

**DPW Report - DPW Supt. Conklin**
Hydrant Flushing – 90% complete.
Purchase of New Mower – Supt. Conklin reported he notified Pomona Power Equip. regarding a slight oil leak in mower.
Annual Purchase of American Flags – Quotes are being obtained.
Trees - Veterans Memorial Park – SiteOne Landscape Sup. – Supt. Conklin to follow up on obtaining trees, at quoted price.
Backhoe – Supt. Conklin had contacted HO Penn – RE: high water level in the backhoe.  Fuel was drained and two filters were replaced.  System still reads high water level; however, the backhoe is working.  No harm to motor.

**H.F.D. Report – Asst. Chief Nelson Scott was present.  Written report submitted.**
Request to Purchase Equipment

| | | | |
|---|---|---|---|
| • (1) Battery for Chiefs Vehicle – Portable High Band Radio | - Cost:  $  51.00 | Vendor:  Amazon |
| • Work Gloves 2 Boxes of 3 Pairs (Size XXL & LG) | - Cost:  $  79.96 (39.98/box) | Vendor:  Amazon |
| • (1) 14" Wood Blade for Demo Saw | - Cost:  $  60.50 | Vendor:  Amazon |
| • (2) Cases of 2 Stroke Fuel for Equipment | - Cost:  $167.52 ($83.76/case) | Vendor:  Home Depot |

**Approved by Village Board**

|  |  |
|---|---|
| Ayes: | Mayor Tursi, Trustees Tarantino & McNally |
| Noes: | None |

-On 4/14/2023, the HFD responded to a fire along the train tracks in Haverstraw and Congers.  A 4/24/2023 email was received from RC Fire Coordinator Christopher Kear stating the possibility of reimbursement by CSX and recommending the responding fire departments document their response.
-Asst. Chief Scott advised that one chain saw was damaged at the fire; however, it was replaced by Home Depot at no charge.
-Penflex – The Annual Actuarial Report was received on 4/21/2023.
-RBC Wealth Mgmt – Portfolio Review – Period Ending 3/31/2023.

**Status of Grant Applications:**
SAM Grant #24626 - Sponsored by Assemblyman Lawler's Office – Pre-Fab Building - RE:  3/9/2023 reimbursement claim: $19,030.50 – received 4/19/2023.   Expenditures pending reimbursement at this date:  $7,742.50.
-SAM Grant #24595 - Sponsored by Senator Elijah Reichlin-Melnick's Office – Veterans Memorial Park Pond Restoration  Reimbursement claim was filed on 4/18/2023:  $20,856.20.
Hurricane IDA– FEMA – DR 4615 – RE:  6th St. Culvert - Current expenditures at this date: $32,133.25.
NYS Archives – (LGRMIF) Grant –Grant Balance:  $6,425.00 (50%).   Files are being prepared to be sent for scanning.
Corona Virus State & Local Fiscal Recovery Funds (SLFRF) – $100,820.01 - Project: "Veterans Memorial Park Pond Restoration" – Current expenditures at this date total $4,561.75.
-2022 Crest Grant – Proposed Projects:  Garbage Truck and Pre-Fab Garage – Application filed.  Response pending.

**Village Attorney's Report – Village Attorney Terry Rice reported**
-4/14/2023 Petition for Zone Change (Rec'd 4/20/2023) – MS Realty of New York, LLC (Property ID:  47.14-2-42)
Attorney Rice recommended Petition be reviewed by Bonnie Fransen, Village Planner; and that an escrow account be established by the Petitioner in an amount to be determined.   **Approved by Village Board**

|  |  |
|---|---|
| Ayes: | Mayor Tursi, Trustees Tarantino & McNally |
| Noes: | None |

-Draft of Local Law for Amendment of Zoning Law & Comprehensive Plan – Public Hearing remains open at this date.
-Attorney Rice stated that, while there is no deadline for scheduling a date to continue the Public Hearing, Notices would have to be reposted/republished.

**Tax Certioraris – 2023 Assessment Year** – Four Tax Cerioraris have been filed and supplied to the Board of Assessment Review (Village Board), Village Attorney and Village Assessor.

**Board Meeting**                              **April 25, 2023**                              **continued**

### Insurance
-Comp Alliance – Workers' Compensation
-4/14/2023 Letter – RE:  Virtual loss control survey conducted on 4/14/2023 – Results:  No workers' compensation loss control recommendations for improvements at this time.

### 2023-2024 Tentative Budgets
A MOTION was made by Trustee McNally and seconded by Trustee McNally to adopt the 2023-2024 General Fund Budget, as presented at the 4/11/2023 Public Hearing.

Ayes:  Mayor Tursi, Trustees Tarantino & McNally
Noes:  None

A MOTION was made by Trustee McNally and seconded by Trustee McNally to adopt the 2023-2024 Water Fund Budget, as presented at the 4/11/2023 Public Hearing.

Ayes:  Mayor Tursi, Trustees Tarantino & McNally
Noes:  None

### $125,000 BAN – Dated 1/14/2021 (DPW Vehicle, DPW Pre-Fab Garage & Misc. Office Equipment) – A 4/25/2023 Financial Report was provided to the Village Board.

### Various Capital Improvements (In accordance with 9/1/16 BAN) – A 4/25/2023 Financial Report was provided to the Village Board.

### Zoning Board of Appeals –
Applicant: Joseph Levy (Owner: Fulton Estates LLC) - The 3/8/2023 Public Hearing has been adjourned to 5/15/2023.

### Planning Board – Upcoming Meeting:  5/17/2023

### Building/Fire Inspector's Report
-The Village Board acknowledged receipt of copies of correspondence from the Building/Fire Inspector.
-Application Filing fees – On hold.

### Verizon Franchise Renewal – Current franchise expires May 20, 2024.
-Attorney Rice stated that he still has not received a response to his calls and emails.

### Escrow – A Status of Escrow Accounts Report dated 4/25/2023 was supplied.

### Senior Citizens – Schedule of meetings was supplied.

### Recreation
License Agreement with Max McClintock, Rockland After School Programs, Inc. d/b/a The Summer Spot Day Camp: 6/1/2023 - 8/31/2023 Use of Hillburn Youth Center to hold a Summer Camp (6/1/2023-8/31/2023)
-Max McClintock held two "Meet and Greets" at the Youth Center on Sun., 4/16/2023 and Wednes., 4/18/2023, to introduce himself to Hillburn residents and provide information on his program.
-Insurance Requirements -Village insurance agent's recommendation for additional insurance coverage.  Attorney Rice stated that the coverage stated in the License Agreement is sufficient at this time.

### Memorial Day Parade & Service – Monday, May 29, 2023 – 9:00AM
-Arrangements are being made.  Bike decorations will be ordered.

-Mayor Tursi reported he had received an invitation from RC Sheriff Falco III to attend the Annual Memorial Service on 5/21/2023 at the RC Police Memorial site at the RC Courthouse.

### Village Historian Position – Mayor Trustee stated that he would like to contact Craig Long to request if he would be interested in the position (currently serves as Historian for the Village of Suffern and Town of Ramapo).  **Approved by Board.**

Ayes:  Mayor Tursi, Trustees Tarantino & McNally
Noes:  None

### Public Comments – None

### Correspondence - The Village Board acknowledged receipt of correspondence, regular and email
-RC Dept. of Finance – 12/1/22-2/28/2023 Sales Tax Payment - $5,807.00.
-Shining Lights Helping Hands – 4/13/2023 letter – RE:  Blocking off 5th St. for Community Wide Yard Sale on 4/22/2023.

### Voucher Claims and Budgetary Transfers to Cover Approved Expenditures - Approved by Board.
Ayes:  Mayor Tursi, Trustees Tarantino & McNally
Noes:  None

### Personnel
Mayor Tursi reported a high school student has requested to serve as an intern at the Village Office (days/time/compensation to be determined)  **Approved by Board.**

Ayes:  Mayor Tursi, Trustees Tarantino & McNally
Noes:  None

### Upcoming Village Board Meetings:  Tuesdays, May 9th & 23rd –7:00PM

A MOTION was made by Trustee Tarantino and seconded by Trustee McNally to adjourn the meeting at 8:03PM.
Ayes:  Mayor Tursi, Trustees Tarantino & McNally
Noes:  None

Case 7:25-cv-00342-KMK     Document 1     Filed 01/14/25     Page 118 of 167

# Exhibit "F"

**VILLAGE OF HILLBURN**
**Board of Trustees Meeting**
**Tuesday, May 9, 2023 – 7:00PM**

**MINUTES OF THE BOARD OF TRUSTEES MEETING held on Tuesday, May 9, 2023, in the Municipal Meeting Room, 31 Mountain Avenue, Hillburn, New York 10931, commencing at 7:00PM.**

<u>PRESENT:</u>    **Joseph P. Tursi, Mayor**
**Bernadette Tarantino, Trustee**
**David H. McNally, Trustee**
**Terry Rice, Village Attorney (online)**
**Eve Mancuso, Village Engineer**
**Thomas Conklin, DPW Superintendent**

**RECORDER OF MINUTES:  Robin G. Miele, Clerk-Treasurer**

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The Hon. Mayor Joseph P. Tursi called meeting to order.  Ramapo Police Officer Buckley led in the Salute to the Flag.

<u>Minutes of the 4/25/2023 Meeting</u> **- Approved by Village Board.**
Ayes:   Mayor Tursi, Trustees Tarantino & McNally
Noes:   None

<u>Street & Water Commissioners' Reports</u> – **Approved by Village Board.**
Ayes:   Mayor Tursi, Trustees Tarantino & McNally
Noes:   None

<u>**Police Commissioner's Report**</u> – Police Commissioner, Mayor Tursi addressed Ramapo Police Officer Buckley and reported on the digital "No Thru Traffic" sign that was placed on 4th St. bridge area by the Ramapo Police Dept.
-Supt. Conklin reported counters placed on Village streets by the NYS DOT.  No notification was provided to the Village.
-RE:  Bypassing of Sixth St. Gate - Supt. Conklin reported there have been additional incidences whereby people drive vehicles around the gate and congregate at the top of Sixth Street, leaving trash behind.  A key to the gate has been provided to the Ramapo Police.

**<u>Village Water System</u> –**
<u>Veolia Water NY – Bill of 5/1/2023:  $9,902.91</u>    **Approved by Village Board.**
Ayes:   Mayor Tursi, Trustees Tarantino & McNally
Noes:   None

-<u>Tanner Morales - RC Health Department – Request for Survey of Water System</u> – DPW Supt. stated he has an appointment with Mr. Morales on Friday morning.
-<u>Testing of Meter (Route 17 Back-Up Meter)</u> – Supt. Conklin reported that National Meter was scheduled to perform the testing this morning; however they did not show up.  He called and they rescheduled for tomorrow.

**DPW Report - DPW Supt. Conklin**
<u>Replacement of Flags</u> – 5/3/2023 Quote from Gates Flag & Banner Co., Inc.:  $770.90 (a total of 11 flags).   **Approved by Village Board.**
Ayes:   Mayor Tursi, Trustees Tarantino & McNally
Noes:   None

<u>Emergency No Parking Signs</u> – 5/3/2023 Quote from Traffic Safety & Equip. Co., Inc.:  100 Signs @ $1.39 = $139.00.  **Approved by Village Board.**
Ayes:   Mayor Tursi, Trustees Tarantino & McNally
Noes:   None

<u>Purchase of (4) Trees for Veterans Memorial Park</u> – 6/14/2022 Quote from SiteOne Landscape Supply (Approved by Board on 6/14/2022 - PO #2170 Issued 6/15/2022) – Supt. Conklin confirmed SiteOne is honoring the quoted cost of $1,001.00 and that he will be picking up the trees tomorrow.  Locations for the trees in the park need to be decided.

<u>Purchase of Digital Scanner for Terrace Avenue Garage</u> – 5/04/2023 from Goosetown Communications:   $449.99.  **Approved by Village Board.**
Ayes:   Mayor Tursi, Trustees Tarantino & McNally
Noes:   None

<u>Youth Center</u> – 1/05/2023 Inspection by Campbell Fire Systems, Inc. – Notification of need for 12 Year Service of Fire Suppression System.

**2023 CHIPS Program** – Mayor Tursi reported that the Village's total 2023 apportionment for CHIPS, Pave, NY, EWR and POP (including cumulative rollover balance) is $71,041.38 (5/2/2023 CHIPS Report).
-Supt. Conklin advised that paving of the roadway at the intersection of 4th Street and Terrace Avenue is needed.
-Engineer Mancuso stated that she can amend the specifications prepared for the upper end of Sixth St. to include this area.

**<u>H.F.D. Report</u> – Chief Irving Strysko was absent.  Written report submitted.**
<u>Request to Purchase SCBA Facemasks</u> – 5/4/2023 Quote from Municipal Emergency Ser. – 3 @ 366.30 = $1,098.90.  **Approved by Village Board.**
Ayes:   Mayor Tursi, Trustees Tarantino & McNally
Noes:   None

<u>Request for Approval to take HFD Trucks to Wetdowns</u> – 6/3/2023 (New City, NY) and 6/17/2023 (Tuxedo, NY).  **Approved by Village Board.**
Ayes:   Mayor Tursi, Trustees Tarantino & McNally
Noes:   None

**Board Meeting**                                **May 9, 2023**                                **continued**

### 7:15PM

    A MOTION was made by Trustee Tarantino and seconded by Trustee McNally to suspend the regular meeting in order to hold the duly scheduled Public Hearing.

                    Ayes:   Mayor Tursi, Trustees Tarantino & McNally
                    Noes:  None

### Continuation of 4/25/2023 Public Hearing – Introductory Local Law 2 of 2023 – Rental Properties

Attorney Rice summarized the purpose of the local law that would require the owner of any rental property to register with the Village and obtain a permit that requires inspection.   Information obtained, including contact information, would be beneficial in the event of an emergency, and to insure that rental properties comply to all applicable codes and requirements.

-Trustee McNally stated that he had had an opportunity to discuss his concerns with Attorney Rice and felt that the Introductory Local Law is beneficial.
-Mayor Tursi stated that the Introductory Local Law protects the occupants and the Village.

Hearing was opened for public comments.

**Bonnie O'Blenis (124 Sixth Street)** questioned if this law includes trash on the property.
-Mayor Tursi stated that the Building/Fire Inspector enforces the code regarding trash and Orders to Remedy have been issued.

**Mrs. O'Blenis** questioned if the law would address proper occupancy of rental homes.
-Mayor Tursi stated that is one of the purposes of the local law.
-Trustee McNally stated that it is important for the H.F.D. to know how many people are in the dwelling.
-Mayor Tursi also stated that it is important to know that the property is properly insured.

With no further comments,

    A MOTION was made by Trustee Tarantino and seconded by Trustee McNally to close the Public Hearing at 7:25PM and to reopen the regular Board Meeting.

                    Ayes:   Mayor Tursi, Trustees Tarantino & McNally
                    Noes:  None

The following Resolution was offered by Trustee McNally and seconded by Trustee Tarantino who moved its adoption:

    **WHEREAS**, a duly noticed public hearing regarding Introductory Local Law No. 2 of 2023, a Local Law Regulating Rental Properties in the Village of Hillburn, was held on April 25, 2023 and continued on May 9, 2023; and

    **WHEREAS,** the purpose of this local is to insure rental properties are occupied and maintained in accordance with all applicable codes and requirements; and to document pertinent information for use in the event of emergencies; and

    **WHEREAS**, the Village Board determined that the adoption of this local law is a Type II action and no further environmental review is required;

    **NOW THEREFORE, BE IT RESOLVED** that the Village Board of Trustees hereby adopts Introductory Local Law No. 2 of 2023 as Local Law No. 3 of 2023.  Said Local Law will take effect immediately upon filing with the Secretary of State.

                Ayes:   **Joseph P. Tursi, Mayor**
                             **Bernadette Tarantino, Trustee**
                             **David McNally, Trustee**
             Noes:  **None**

**Resolution** was unanimously adopted.

### HFD Report - continued

-5-CFR – Repair of Charging System – Invoice #7330 from Hendrickson Fire:  $2,705.85.   **Approved by Village Board.**

                    Ayes:   Mayor Tursi, Trustees Tarantino & McNally
                    Noes:  None

-HFD Building – Replacement of Smoke/CO Detectors – Invoice #P 0261 – Electrolock, Inc.:  $780.80.  **Approved by Village Board.**

                    Ayes:   Mayor Tursi, Trustees Tarantino & McNally
                    Noes:  None

-Physical for HFD Membership – Inv. #704616N from Partners in Safety:  $274.00.  **Approved by Village Board.**

                    Ayes:   Mayor Tursi, Trustees Tarantino & McNally
                    Noes:  None

-RBC Wealth Mgmt – Account Statement – April 2023.

### Status of Grant Applications:

SAM Grant #24626 - Sponsored by Assemblyman Lawler's Office – Pre-Fab Building
-Expenditures pending reimbursement at this date:  $7,742.50.
SAM Grant #24595 - Sponsored by Senator Elijah Reichlin-Melnick's Office – Veterans Memorial Park Pond Restoration
-Reimbursement claim filed on 4/18/2023:  $20,856.20.  Notification rec'd that payment of the claim will be processed on 5/16/2023.  Expenditures pending reimbursement at this date:  $1,566.75.
Hurricane IDA– FEMA – DR 4615 – RE:  6th St. Culvert –
-Category C Project:  Roads and Bridges (Deadline Date:  3/5/2024) Current expenditures at this date:  $37,353.50.
-Category Z Project: Management Costs (Deadline Date:  9/6/2025) On 5/10/2024, FEMA obligated $26,806.26.

Board Meeting                          May 9, 2023                        continued

NYS Archives – (LGRMIF) Grant –Grant Balance:  $6,425.00 (50%).    Files have been sent for scanning.
Corona Virus State & Local Fiscal Recovery Funds (SLFRF) – $100,820.01 - Project: "Veterans Memorial Park Pond Restoration" – Current expenditures at this date total $4,561.75.
-2022 Crest Grant – Proposed Projects:  Garbage Truck and Pre-Fab Garage – Application filed.  Response pending.

**Village Engineer's Report** – Engineer Mancuso reported:
-Upper Sixth Street Paving Project – Engineer Mancuso stated that bid documents will be updated to include the additional roadway at 4th St and Terrace Ave.
   A MOTION was made by Trustee McNally and seconded by Trustee Tarantino authorizing publication of a Notice to solicit bids for this project, entitled 2023 Road Improvements – Sixth Street, Fourth Street, Terrace Avenue, and
   FURTHER, bids are to be received on or before 4:00PM on Tuesday, 6/13/2023 and will be opened at the Board Meeting on said date.
                    Ayes:   Mayor Tursi, Trustees Tarantino & McNally
                    Noes:   None

-6th Street Culvert – Engineer Mancuso advised a pre-application zoom meeting with NYS DEC will be held on 5/10/2023.
-Veterans Memorial Park Pond – Quotes are being obtained for the installation of the well.
-5th Street DPW Garage – Pole Building - Engineer Mancuso submitted a cost estimate substituting the Line Item 2 of the original bid for the concrete building with the quote from ClearSpan for a pole building.
-Supt. Conklin advised he had reached out to John Lynch of Salomone for a quote to provide the concrete.  Mr. Lynch advised that he may be able to provide a quote for the building as well and requested a copy of the specifications.
-A discussion was held regarding obtaining a Bond to fund the structure, as well as the purchase of a garbage truck.  Amount of the Bond is to be determined.
-MS4 Report – Information is being compiled.

**Village Attorney's Report – Village Attorney Terry Rice reported**
Hillburn vs. Noved/Nicholas Cianciaruso, et. al – Remediation of Site – Attorney Rice reported Judge Eisenpress signed the Order to Remediate the Site with Notice of Settlement on 5/5/2023, exactly as submitted.  The Order contains deadlines, including posting of escrow with the Village Clerk, in the amount of $60,000.00, within 10 days of the date of Order.
-Attorney Rice stated that outstanding escrow, in relation to an application pending before the Planning Board, must also be paid prior to any further action.
-Trustee Tarantino stated her concern that contaminants have seeped underground.
-Attorney Rice stated that test wells will need to be dug to determine if any contaminants have seeped into the water.

-4/14/2023 Petition for Zone Change (Rec'd 4/20/2023) – MS Realty of New York, LLC (Property ID:  47.14-2-42)
Establishment of Escrow for Professional Reviews
   A MOTION was mde by Trustee McNally and seconded by Trustee Tarantino that, as recommended by the Village Planner, Bonnie Fransen of Nelson Pope and Voorhees, the Petitioner be required to establish an escrow account $2,500.00, to cover professional reviews.
                    Ayes:   Mayor Tursi, Trustees Tarantino & McNally
                    Noes:   None

**Tax Certioraris – 2023 Assessment Year** – Four Tax Cerioraris have been filed.

**Insurance**
-NYSHIP – April 2023 Publication – "On the Road with The Empire Plan".
-Selective – HR Essentials – May 2023 Newsletter

**$125,000 BAN – Dated 1/14/2021** (DPW Vehicle, DPW Pre-Fab Garage & Misc. Office Equipment) – No change to 4/25/2023 Financial Report.

**Various Capital Improvements (In accordance with 9/1/16 BAN) –** No change to 4/25/2023 Financial Report.

**Zoning Board of Appeals** –
Applicant: Joseph Levy (Owner: Fulton Estates LLC) - The 3/8/2023 Public Hearing has been adjourned to 5/15/2023.

**Planning Board** – Upcoming Meeting:  5/17/2023

**Building/Fire Inspector's Report**
-The Village Board acknowledged receipt of copies of correspondence from the Building/Fire Inspector.
-Application Filing fees – Increase of fees is being reviewed.

**Verizon Franchise Renewal** – Current franchise expires May 20, 2024.

**Escrow** – No change to Status of Escrow Accounts Report dated 4/25/2023.

**Senior Citizens** – No report.

**Recreation** – No report.

**Memorial Day Parade & Service – Monday, May 29, 2023 – 9:00AM**
Bike decorations are available at Village Hall.

**Public Comments** –
**Chevron Torres (54 5th Street)** stated she is a rental property owner and questioned if existing landlords would have to register their rental property, or would they be "grandfathered".
-Mayor Tursi replied that all rental properties are to be registered.
-The Village Clerk stated that at present, landlords of multiple dwellings (3 or more apartments) must obtain annual Fire Permits that require annual inspections of each unit.
-Trustee Tarantino stated that landlords who are renting and maintaining their property correctly will have no problem.

                                                              **Page 3 of 4**

**Board Meeting**                         **May 9, 2023**                         **continued**

-**Ms. Torres** stated that she feels having to supply information and have an inspection is an invasion of her privacy.

-Attorney Rice stated that while some landlords are responsible and maintain their property, there are some landlords who are not and do not make sure that their tenants take care of the property. The Rental Registry will identify properties that are being rented, provide information such as a contact person, and insure that the dwellings are safe. As stated by Trustee McNally, an important reason for the registry is to insure that the HFD is aware of the number of people living in the dwelling in the event of an emergency.

-**Ms. Torres** asked what happens if she does not obtain a Rental Permit.

-Attorney Rice stated that the property cannot be rented without obtaining a Rental Permit. The law consists of a registration requirement, an information required and an inspection to make sure the dwelling is safe.

**Bonnie O'Blenis (124 6th St.)** stated that, although she does not have a rental property, she feels that the bigger picture needs to be considered; inasmuch as the Rental Registry will be beneficial in insuring that rental dwellings are properly maintained and occupied.

**Ms. Torres** stated she feels the Village is trying to be her landlord. She would rather sell her home than obtain a Rental Permit.

**Tanya Cirincionne (36 Hickory Ave)** requested that the Village's website be updated to include the Hillburn Ladies Auxiliary. **Approved by Village Board**

**Ms. Cirincionne** stated she is aware that there are no alcoholic beverages allowed in Village owned buildings; however, she questioned if the Hillburn Ladies Auxiliary could hold a "Paint & Sip" at the Community Room, if participants brought their own wine.

-Attorney Rice stated that allowing alcoholic beverages is at the discretion of the Village Board. He would recommend that a "Dram Shop" insurance (also referred to as liquor liability insurance) be provided by the applicant.

<u>Installation of Stop Sign</u> – Trustee McNally recommended a Stop sign be placed on 4th St., at the intersection of Lake Ave., as there are many children in the area.

-Attorney Rice stated that, although a traffic study is not needed, the Village should confirm that it would comply with DOT regulations.

<u>Requests for Use of Village Buildings</u>
-Y. Van Dunk–Hillburn Ladies Aux.    – 5/12 & 13/2023 –9AM–2PM – Plant Sale    **Approved by Village Board**
-B. Tarantino-Hillburn Scholarship Com. – 6/10/2023 – Scholarship Award Ceremony    **Approved by Village Board**
                         Ayes:  Mayor Tursi, Trustees Tarantino & McNally
                         Noes:  None

<u>Items Needing Approval</u>
-Rockland Municipal Planning Federation – 2023 Annual Membership Dues:  $ 100.00  **Approved by Village Board**
-Harris Computer Sys. – Info-Fund Prog. Maint. (July 2023-June 2024):    $4,035.33  **Approved by Village Board**
                         Ayes:  Mayor Tursi, Trustees Tarantino & McNally
                         Noes:  None

<u>Correspondence</u> - The Village Board acknowledged receipt of correspondence, regular and email
-RC Sheriff – Invitation to Memorial Service 5/21/2023 at the RC Police Memorial site at the RC Courthouse.
-Village of Sloatsburg – Invitation to Memorial Parade & Service on 5/29/2023 at 10:00AM
-US Bankruptcy Court – RE:  Avaya, Inc.
-NYCOM – 5/4/2023 Email – RE:  Preliminary Details Regarding the 2023-24 State Budget.

<u>**Voucher Claims and Budgetary Transfers to Cover Approved Expenditures**</u> **- Approved by Board.**
                         Ayes:  Mayor Tursi, Trustees Tarantino & McNally
                         Noes:  None

<u>Upcoming Village Board Meetings</u>:  Tuesdays, May 23rd , June 13th & 27th –7:00PM

    A MOTION was made by Trustee Tarantino and seconded by Trustee McNally to adjourn the meeting at 8:18PM.
                         Ayes:  Mayor Tursi, Trustees Tarantino & McNally
                         Noes:  None

Exhibit "G"

New York State Department of State
Division of Corporations, State Records and Uniform Commercial Code
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231-0001
www.dos.ny.gov

# *Local Law Filing*

**(Use this form to file a local law with the Secretary of State.)**

Text of law should be given as amended. Do not include matter being eliminated and do not use italics or underlining to indicate new matter.

☐**County** ☐**City** ☐**Town** ☒**Village**
*(Select one:)*

**of** Hillburn

FILED
STATE RECORDS

MAY 16 2023

**Local Law No.** 3 **of the year 20** 23

DEPARTMENT OF STATE

**A local law** regulating rental properties in the Village of Hillburn
*(Insert Title)*

**Be it enacted by the** Board of Trustees **of the**
*(Name of Legislative Body)*

☐**County** ☐**City** ☐**Town** ☒**Village**
*(Select one:)*

**of** Hillburn **as follows:**

see attached

**(If additional space is needed, attach pages the same size as this sheet, and number each.)**

**(Complete the certification in the paragraph that applies to the filing of this local law and strike out that which is not applicable.)**

1.  **(Final adoption by local legislative body only.)**
I hereby certify that the local law annexed hereto, designated as local law No. _____3_____ of 20_23_ of the (County)(City)(Town)(Village) of ___Village of Hillburn_____ was duly passed by the ___Board of Trustees_____ on _May 9,_____ 20_23_, in accordance with the applicable
*(Name of Legislative Body)*
provisions of law.

2.  **(Passage by local legislative body with approval, no disapproval or repassage after disapproval by the Elective Chief Executive Officer*.)**
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20_____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____ 20_____, and was (approved)(not approved)
*(Name of Legislative Body)*
(repassed after disapproval) by the _____ and was deemed duly adopted
*(Elective Chief Executive Officer*)*
on _____ 20☐, in accordance w ith the applicable provisions of law.

3.  **(Final adoption by referendum.)**
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20_____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____ 20_____, and was (approved)(not approved)
*(Name of Legislative Body)*
(repassed after disapproval) by the _____ on _____ 20_____.
*(Elective Chief Executive Officer*)*

Such local law was submitted to the people by reason of a (mandatory)(permissive) referendum, and received the affirmative vote of a majority of the qualified electors voting thereon at the (general)(special)(annual) election held on _____
20_____, in accordance with the applicable provisions of law.

4.  **(Subject to permissive referendum and final adoption because no valid petition was filed requesting referendum.)**
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20_____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____ 20_____, and was (approved)(not approved)
*(Name of Legislative Body)*
(repassed after disapproval) by the _____ on _____ 20_____. Such local
*(Elective Chief Executive Officer*)*
law was subject to permissive referendum and no valid petition requesting such referendum was filed as of _____
20_____, in accordance with the applicable provisions of law.

_____

* Elective Chief Executive Officer means or includes the chief executive officer of a county elected on a county-wide basis or, if there be none, the chairperson of the county legislative body, the mayor of a city or village, or the supervisor of a town where such officer is vested with the power to approve or veto local laws or ordinances.

**5. (City local law concerning Charter revision proposed by petition.)**

I hereby certify that the local law annexed hereto, designated as local law No._____ of 20\_\_\_\_\_ of the City of _____ having been submitted to referendum pursuant to the provisions of section (36)(37) of the Municipal Home Rule Law, and having received the affirmative vote of a majority of the qualified electors of such city voting thereon at the (special)(general) election held on _____ 20\_\_\_\_, became operative.


**6. (County local law concerning adoption of Charter.)**

I hereby certify that the local law annexed hereto, designated as local law No._____ of 20\_\_\_\_\_ of the County of _____State of New York, having been submitted to the electors at the General Election of November _____ 20\_\_\_\_\_, pursuant to subdivisions 5 and 7 of section 33 of the Municipal Home Rule Law, and having received the affirmative vote of a majority of the qualified electors of the cities of said county as a unit and a majority of the qualified electors of the towns of said county considered as a unit voting at said general election, became operative.


**(If any other authorized form of final adoption has been followed, please provide an appropriate certification.)**

I further certify that I have compared the preceding local law with the original on file in this office and that the same is a correct transcript therefrom and of the whole of such original local law, and was finally adopted in the manner indicated in paragraph _____ above.

*Robert B. Miele*

Clerk of the county legislative body, City, Town or Village Clerk or
officer designated by local legislative body

*(Seal)*

Date: *May 10, 2023*

**Village of Hillburn**
**Village Board of Trustees**

**Resolution to Adopt Local Law No. 3 of 2023**
**A Local Law Regulating Rental Properties in the**
**Village of Hillburn**

The following Resolution was offered by Trustee McNally and seconded by Trustee Tarantino who moved its adoption:

**WHEREAS**, a duly noticed public hearing regarding Introductory Local Law No. 2 of 2023, a Local Law Regulating Rental Properties in the Village of Hillburn, was held on April 25, 2023 and continued on May 9, 2023; and

**WHEREAS**, the purpose of this local is to insure rental properties are occupied and maintained in accordance with all applicable codes and requirements; and to document pertinent information for use in the event of emergencies; and

**WHEREAS**, the Village Board determined that the adoption of this local law is a Type II action and no further environmental review is required;

**NOW THEREFORE, BE IT RESOLVED** that the Village Board of Trustees hereby adopts Introductory Local Law No. 2 of 2023 as Local Law No. 3 of 2023. Said Local Law will take effect immediately upon filing with the Secretary of State.

> **Ayes:** **Joseph P. Tursi, Mayor**
> **Bernadette Tarantino, Trustee**
> **David McNally, Trustee**
>
> **Noes: None**

**Resolution** was unanimously adopted.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**STATE OF NEW YORK**          )
                                                       )  **ss:**
**COUNTY OF ROCKLAND**          )

I, Robin G. Miele, Clerk of the Village of Hillburn, State of New York

**DO HEREBY CERTIFY:**

That I have compared the above resolution of the Board of Trustees of said Village of Hillburn, New York, with the original thereof on file in my office, and do hereby affirm that the same is a true and correct copy of said original, as adopted on May 9, 2023.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the seal of said Village of Hillburn, this 10th day of May 2023.

_Robin G. Miele_
Robin G. Miele,
Hillburn Village Clerk-Treasurer

**VILLAGE OF HILLBURN**

**Introductory Local Law No. 2 of 2023**

**A LOCAL LAW LOCAL LAW REGULATING RENTAL
PROPERTIES IN THE VILLAGE OF HILLBURN**

**BE IT ENACTED,** by the Village of Hillburn Village Board of Trustees as follows:

Section 1. The Code of the Village of Hillburn is hereby amended by adding thereto a new chapter,

Chapter 188, entitled "Rental Properties," to provide as follows:

**§ 188-1. Definitions; interpretation of terms.**

A.  As used in this article, these terms shall have the meanings indicated as follows:

ACTION or PROCEEDING — Any action or proceeding which may be instituted in the Justice Court of the Village of Hillburn or the County Court of the County of Rockland or the Supreme Court of the County of Rockland or any court of competent jurisdiction with an alleged violation of any law of the Village of Hillburn.

BUILDING — Any improved real property, residential or mixed-use (commercial-residential), located within the Village of Hillburn that is non-owner-occupied.

IDENTIFICATION OF BUILDING — It is required that the house number be placed on the building in a conspicuous place.

OWNER — Any individual or individuals, partnership or corporation or any similar type of business organization, whether for profit or otherwise, in whose name title to a building stands, including a mortgagee or vendee in possession, assignee of rents, receiver, executor, trustee, lessee, agent or any other person, firm or corporation directly or indirectly in control of the property.

PROCESS — A summons, appearance ticket or any notice, mandate or any other paper process issued under any provision of the Code of the Village of Hillburn or any law or regulation of the State of New York.

RENTAL PROPERTY — Includes all properties which are either rented, leased, let or hired out to be occupied for residential or mixed use (commercial-residential), and are non-owner-occupied.

B.  For any rental property to be considered owner-occupied, the owner must demonstrate to the Building Department that all individual owners, all partners, or all shareholders of a corporation actually have their principal residence at the rental property and reside therein on a full-time basis, it being the actual domicile of all individual owners, all partners, or all shareholders. At the request of the Village of Hillburn, any owner who claims to occupy the rental property shall provide a sworn affidavit providing the necessary information to support his or her claim that the premises are owner-occupied.

### § 188-2. Registration of owner.

A.  The owner of a property constituting a rental property shall register the same with the Building Department within 60 days of the effective date of this article on a form approved by the Building Department. This form shall be known as a "landlord registration statement" which shall be signed by the owner under oath.

B.  It shall be unlawful for any owner to offer any unit for rent, or to rent any unit, or to allow any rental unit to be occupied without having first registered pursuant to this chapter as required herein within the time prescribed for such registration and to have obtained a permit therefor. Failure to receive notice of the registration deadline will not excuse failure to register rental property. It is the owner's responsibility to fulfill the requirements of this chapter.

### § 188-3. Landlord registration statement.

A.  Every owner of a rental property as above defined shall file with the Building Department, within 60 days after the adoption of this chapter, a landlord registration statement on forms to be supplied by the Building Department, containing the following:

(1)  A description of the premises by street number and section, block and lot number, including tax identification number.

(2)  The owner's name, residential address, and mailing address, together with his/her business telephone number, home phone number, cell phone number, fax number, as well as e-mail address, or, if such owner is a corporation, the name and address of such corporation and the name, residence, business address, together with the residence, business telephone numbers, cell phone numbers, fax numbers and e-mail addresses of all officers.

(3)  Proof of residency of each owner.

(4)  A description of the structure, including the number of rental dwelling units in the structure.

(5)  A floor plan depicting the location, use and dimension of each room situated within the dwelling unit.

(6)  The number of persons intended to be accommodated by, and to reside in, each such rental dwelling unit.

(7)  The name of each person that is and/or will be occupying the premises intended for rental occupancy.

(8)  A copy of the most recent deed and real property tax bill, confirming the ownership of record of the dwelling unit.

(9)  A certification that all municipal real property taxes, Village water and sewer fees and any other Village fees or charges relating to the property are paid and a copy of the current real property tax bills and water and sewer bills, with evidence that the same are paid in full.

(10) Designation of a managing agent. In the event the owner does not reside in Rockland County, then the owner must designate a managing agent. If a managing agent is required, then the owner shall provide the following information to the Building Department: the name, residence, business and e-mail address and residence, business and fax telephone numbers of a natural person, 18 years of age or over, who actually resides within the County of Rockland, and who shall be designated by such owner as a managing agent responsible for and in control of the maintenance and operation of such dwelling, and who shall be designated as the person upon whom process may be served on behalf of the owner. The managing agent and/or owner shall keep a current record of all the tenants, and their names and addresses, who are renting, leasing or living in the premises. There shall be endorsed upon such statements a written consent to such designation signed by such managing agent. An owner who is a natural person and who meets the requirements of this subsection as to the location of the residence or place of transacting business of a managing agent may designate himself/herself as such managing agent.

(11) Each application shall be executed by and sworn to under oath by the owner of the dwelling unit.

(12) The owner shall, at all times, keep this information updated, and when there is a change in ownership, a change in the managing agent, a change in tenant(s), or a change in any information set forth on the registration form, the owner shall update the information by amending the landlord registration statement within 15 days from the date of any such change.

(13) Any designation as managing agent made pursuant to the provisions of this section shall remain in full force and effect until changed or terminated as hereinafter provided.

B. Upon completion and execution and submission of the landlord registration statement as aforesaid, said registration shall be reviewed by the Building Department or its designee for adequacy. Should the Building Department and/or its designee determine that said application is incomplete, defective or untruthful for any reason, said application shall be marked "rejected" and returned to the filer with an explanation of the reason(s) for rejection. A rejected application shall not be deemed to comply with the following provisions of this article.

C. It shall be the responsibility of each owner to timely notify the Building Department whenever the information provided in the landlord registration statement has become outdated or for any reason is no longer accurate.

D. Where, after filing of any landlord registration statement in relation to any rental property under the applicable provisions of this chapter, the owner of such property shall have granted or transferred his/her right, title or interest therein or in any part thereof, such owner shall file with the Building Department within 15 days after such grant or transfer a written statement which, under oath, shall contain the name and residence, business addresses, business and home telephone, cell phone numbers, fax numbers and e-mail of the grantee, transferee or other successor of such right, title or interest, or if such grantee, transferee or successor is a corporation, the name and address of such corporation, including the names of all officers, their addresses, business and residence phone and cell numbers as well as e-mail addresses and fax numbers.

E. Where, after the filing of any landlord registration statement with the Building Department pursuant to the applicable provisions of this chapter, any change other than a designation of a different managing agent or a change of ownership or interest occurs in any name, residence or any business address of a list of officers required to be included in such statement, the owner, within 15 days after such change, shall file in duplicate, on forms to be furnished by the Building Department, a statement under oath setting forth the particulars of such change so as to supply the information necessary to make currently correct the last landlord registration statement filed pursuant to the applicable provisions of this section.

F. An owner may terminate such designation by filing with the Building Department a sworn written statement designating a new managing agent made in conformity with the provisions hereinabove cited.

G. Any landlord registration statement or designation of a managing agent required to be filed with the Building Department by any owner of a rental property under the provisions of this section shall be signed by such owner, or if such owner is a corporation, by an officer thereof, or if such owner is a partnership, by a partner thereof, and said statements must be sworn to under the penalties of perjury.

H. A new application for a rental occupancy permit shall be filed whenever a dwelling unit or portion thereof has become vacant and the owner intends to permit a new tenant or other person to take up residence. No additional fee will be required if the owner is registering a change in tenancy only under an existing valid rental occupancy permit.

I. Any such landlord registration statement or designation of a managing agent shall be deemed *prima facie* proof of the statement therein contained, in any criminal or civil prosecution instituted by the Village of Hillburn or by any proper prosecutorial agency against the owner or managing agent of a rental property.

## § 188-4. Inspection requirements.

A. The Building Department or its authorized designee or agent shall make provisions for inspections of each rental property which is subject to the provisions of this chapter and shall notify each owner and/or managing agent of each rental property as to the time and place of such inspection. The inspection shall take place at a minimum of every 12 months. The inspection shall be for the purpose of determining compliance with all applicable rules and regulations concerning safety and maintenance of all rules and regulations applicable to said rental property, including the Code of the Village of Hillburn and all other such rules and regulations and laws of the State of New York. The owner and/or managing agent may refuse to allow inspections of any dwelling unit contained in the rental property. In such event, the Building Department may apply for a search warrant. In addition, the Building Department may deny a permit with respect to any such property. In addition, the owner and/or managing agent shall be obligated to review with the Building Department and its designee or agent the contents of the landlord registration statement to determine if all said information is up-to-date, complete and accurate in all respects.

B. Any inspection report issued pursuant to Subsection A of this section which reveals the presence of a violation shall be remedied by the owner within the time stated in the report. Failure to bring any building and/or rental property into conformance with such report and/or to remedy within the time set forth therein shall constitute a violation of this chapter, it being expressly understood that this provision shall not constitute the exclusive remedy of the Village of Hillburn, but shall be an addition thereto.

## § 188-5. Application for search warrants.

At the request of the Building Department, the Village Attorney or his deputy or designee is authorized to make application to any other court of competent jurisdiction for the issuance of a search warrant to be executed by a police officer in order to conduct an inspection of any premises believed to be subject to the registry jurisdiction of this chapter. The Building Department may seek a search warrant whenever the owner and/ or managing agent fails to allow inspections of any dwelling unit contained in the rental property where there is a reasonable cause to believe that there is a violation of this chapter or a violation of the New York State Uniform Fire Prevention and Building Code or of any code of the Village of Hillburn.

## § 188-6. Enforcement.

Without limitation on any available remedy, the Village of Hillburn shall have a choice of enforcing this chapter by seeking civil penalties or by instituting a criminal proceeding or may choose to do both.

A. Criminal proceeding. A summons or appearance ticket for any violation of this chapter may be served in the County of Rockland as defined within the meaning of New York Criminal Procedure Law § 150.40. In the event that the owner does not reside in the County of Rockland, then the owner shall be obligated to designate a managing agent who maintains a bona fide residence in the County of Rockland.

B. A designating managing agent of an owner may be served with a notice of violation, order of remedy, order of violation, an appearance ticket or other service of process, whether criminal or civil, pursuant to and subject to the provisions of law as if actually served upon the owner.

C. No owner who designates a managing agent pursuant to the provisions of this chapter may assert the defense of lack of notice or lack of *in personam* jurisdiction based solely upon the service of process upon his designated agent.

## § 188-7. Service of papers; notice of violations.

A. Service of papers and notice of violations shall be:

(1) By delivering to and leaving a copy of the same with any person or persons violating or who may be liable under any of the several provisions of this chapter; and

(2) By registered or certified mail to the most current address on file in the landlord registration statement upon the owner and/or managing agent; and

(3) If none is on file, to the most current address in the Village Receiver of Taxes Office by registered or certified mail to the owner and/or managing agent; and if such person or persons cannot be served by any of the aforesaid methods after diligent search shall have been made for him/her or them, then such notice or order may be served by posting the same in a conspicuous place upon the rental property where such violation is alleged to exist, or to which such notice may refer, or which may be deemed unsafe or dangerous, which shall be the equivalent of personal service of said notice upon all parties, including the owner and/or managing agent for whom such search shall have been made; or

(4) By any other method or service authorized pursuant to Article III of CPLR.

B. Notice by mail to owners residing out of state. If the person or persons or any of them to whom said notice is directed do not reside in the County of Rockland and have no known place of business therein, the same may be served by delivering to or leaving with such person or persons or either of them a copy of said notice; if said person or persons cannot be found with a due-diligence search, then by posting a copy of the same in a manner aforesaid and depositing a copy thereof in a post office in the Village of Hillburn, enclosed in a sealed wrapper addressed to said person or persons at his/her last known place of residence with the postage paid thereon, and said posting and mailing a copy of said notice shall be equivalent to personal service of said notice.

## § 188-8. Rental permit required; fees.

A. Rental permits.

(1) No rental property and/or building as defined herein shall be occupied by anyone, including any tenants, without a valid rental permit.

(2) Upon the filing with the Building Department of the permit application, permit fee, and all documents and information required by this section, the Building Department shall have 30 days to review the application and then either issue the permit, with or without conditions, or notify the applicant in writing that the application has been denied along with the reason or reasons for denial. If a permit is issued, the permit shall bear the signature of the Building Inspector.

(3) In reviewing the application, if the Building Inspector shall have the right to inspect the property for purposes of ensuring compliance with this Chapter. If an inspection authorized herein is conducted, the Building Inspector may use the results of such inspection in determining whether to issue the permit, with or without conditions, or to not issue the permit.

(4) The Building Department shall issue such permit after receipt of a valid landlord registration statement which complies with all of the requirements set forth herein. In issuing a permit, the Building Inspector may impose such reasonable conditions and restrictions as are directly related to and incidental to the use of the property for residential rentals.

(5) No rental permit shall be issued for any property for which there are outstanding real property taxes, water or sewer fees or any other outstanding amount owed with respect to the property to the Village of Hillburn or if a violation of the Zoning Law exists. In order to issue such permit, the Building Inspector must determine that adequate on-site parking is provided and that the parking area is improved in accordance with the provisions of the Zoning Law and to the satisfaction of the Building Inspector. Tenants and guests shall park in the off-street parking spaces and shall not park on any part of the lawn of the property nor on the public or private street. The property must, in the opinion of the Building Inspector, have sufficient off-street parking spaces improved in accordance with Section 250-27(D) of the Zoning Law.

(6) In addition, The Building Inspector may decline an application for any of the following reasons:

    a) If the application is incomplete, the documentation required by this section or regulations adopted by the Village was not included with the application or the full permit fee, in an acceptable form of payment, was not included with the application.

    b) If the Building Inspector previously issued a permit to any of the owners needing to sign the permit application and any of such owners had a permit revoked within the previous year.

    c) If the affidavit from the owners or if an inspection conducted by the Enforcement Officer as authorized in this section evidences that the subject property is not in compliance with this section or the Village of Hillburn Code.

(7) Such rental permit shall be valid until such time as the owner or any new owner is required to file a new landlord registration statement.

(8) The owner and/or managing agent must present the previous rental permit at the time that the new landlord registration statement is submitted.

B. The fee schedule applicable to the inspections required by this chapter shall be set forth in the Village Schedule of Fees.

## § 188-9. Revocation or suspension of permit.

Any permit issued pursuant to this chapter may be revoked or suspended by the Building Department after notice to the owner, setting forth the basis for the suspension or revocation and an opportunity for the owner to be heard upon a finding by the Building Department that the requirements of this chapter or any conditions of said permit have been violated or that the premises are not being maintained in accordance with thereof any applicable law, rule or regulation. Any person who claims to be aggrieved by any such suspension or revocation may file with the Village Clerk a letter setting forth the basis for his/her contention that the suspension or revocation is erroneous within five days after receipt of any such notice of suspension or revocation. The Board of Trustees shall promptly provide an opportunity for the appellant to be heard, either in writing or in person, and shall either affirm, reverse or modify the suspension or revocation.

### § 188-10. Penalties for offenses.

A. Violations of this chapter will constitute an offense within the meaning of the Penal Law of the State of New York, punishable as provided for herein. In addition, a violation of any provision of this chapter shall constitute a municipal infraction and will be subject to applicable penalties under this chapter, and the Village of Hillburn may choose to enforce this chapter as a criminal or civil matter, or both. Any owner who violates, disobeys, neglects or refuses to comply with any of the terms of this chapter shall be subject to a fine of not more than $5,000. Each week a violation continues shall be deemed a separate offense and so subject the owner to an additional fine of up to $5,000. In addition, if the Village of Hillburn chooses to proceed under this chapter as a criminal offense, the violation of this chapter shall be subject to a fine of up to $5,000 and/or up to 30 days in jail, it being understood that each week a violation continues shall be deemed a separate offense subjecting the offender to additional weekly fines of up to $5,000 and/or additional jail sentences of up to 30 days.

B. Legal action. In case any building, structure or land is used in violation of this chapter, the Trustees of the Village of Hillburn or the Code Enforcement Officer or any other official of the Village, in addition to other remedies, may institute any appropriate action or proceeding through the Village Attorney in order to prevent such unlawful use, to restrain, correct or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business or use in or about such building, structure or land. Such owner shall, in addition, pay all the costs and expenses incurred by the Village in prosecuting any action to abate the violation or to compel compliance with this Chapter.

C. Should the aforesaid penalties not be paid within 30 days of being assessed, and after notice of said failure is served as provided by law, then the property covered by this article will be assessed for the unpaid penalties and shall be collected in the same manner and time as Village taxes.

### § 188-11. Miscellaneous.

If any clause, sentence, paragraph, section or part of this local law shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part thereof directly involved in the controversy in which such judgment shall have been ordered.

Section 2. This local law shall take effect immediately upon filing with the Secretary of State.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-------------------------------------------------------------------X

JOSHUA HARPER,

Index No.: 030207/2025

Plaintiff,

-against-

**AFFIRMATION OF**
**ARON GOLDBERGER**
**PURSUANT TO**
**UNIFORM RULE 202.7(f)**

VILLAGE OF HILLBURN, VILLAGE OF HILLBURN
BOARD OF TRUSTEES, and LAWRENCE H.
MCMANNIS, as Building Inspector,

Defendants.

-------------------------------------------------------------------X

ARON GOLDBERGER, an attorney duly admitted to the practice of law in New York

State, does hereby affirm the following to be true under the penalty of perjury:

1.  I am an associate with the law firm of CONDON PAXOS PLLC, attorneys for

Plaintiff, JOSHUA HARPER, in this action. I am fully familiar with the facts and circumstances

surrounding this matter based upon a review of the file maintained by this office in the ordinary

course of business and discussions with my client.

2.  This Affirmation is being submitted pursuant to Uniform Rule 202.7(f) because

Plaintiff is submitting an Order to Show Cause on Monday, January 13, 2025 at 3:00 PM before a

Judge to be assigned by the Clerk of the Court seeking a preliminary injunction with Temporary

Restraining Order.

3.  On Friday, January 10, 2025, an e-mail was sent to the Village of Hillburn's attorney,

Terry Rice, Esq. advising him that we intend on presenting an Order to Show Cause seeking a

Temporary Restraining Order as against Defendants to the Rockland County Supreme Court on

Monday, January 13, 2025 at 3:00 PM to a Judge who has yet to be assigned.

Case 7:25-cv-00342-KMK   Document 1   Filed 01/14/25   Page 137 of 167

4.   No prior application for the relief requested herein has been made.

Dated:      Nanuet, New York
            January 13, 2025

                            *Aron Goldberger*
                            Aron Goldberger

Page **2** of **2**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
-------------------------------------------------------------------X
JOSHUA HARPER,                                                          Index No.:

                Plaintiff,

        -against-                                              **DECLARATION OF
                                                  JOSHUA HARPER**

VILLAGE OF HILLBURN, VILLAGE OF HILLBURN
BOARD OF TRUSTEES, and LAWRENCE H.
MCMANNIS, as Building Inspector,

                Defendants.
-------------------------------------------------------------------X

       Plaintiff, JOSHUA HARPER, of full age, affirms under the penalties of perjury as follows:

       1.    I am the Plaintiff in this action and submit this Declaration in support of Plaintiff's Order to Show Cause for a temporary Restraining Order and Preliminary Injunction enjoining Defendants' enforcement of Local Law 3 of 2023 (the "Law" or "Local Law 3") of the Village of Hillburn ("Hillburn").

       2.    I am a resident of Hillburn and a member of the Orthodox Jewish community. Since 2017, I have lived in Hillburn with my family in a peaceful and responsible manner, contributing to the community as a homeowner and landlord.

       3.    In April 2024, I purchased a second property in Hillburn and leased my initial home to a single family in accordance with all legal requirements.

       4.    Over time, antisemitic sentiment has grown more insidious and institutionalized in Hillburn. Social media posts and statements by residents during public meetings further reveal the underlying religious bias, referring to Orthodox Jews in pejorative terms and expressing fear of being "taken over" by the community. See **Exhibits "A" and "B."**

Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 139 of 167

5.   Local Law 3 of 2023 is a continuation of this discriminatory treatment. The law requires property owners, including myself, to register rental properties, submit to warrantless inspections, and disclose intrusive information about tenants.

6.   The discriminatory impact of Local Law 3 is clear. Rental properties, often owned by Orthodox Jewish families seeking to support their growing community, are singled out for inspection, while non-rental properties remain unaffected.

7.   Local Law 3 is part of a sustained pattern of targeted, unconstitutional, and discriminatory actions by Hillburn officials and residents aimed at discouraging Orthodox Jews from living and practicing their faith in this Village.

8.   Local Law 3 authorizes inspections of rental homes without specifying the permissible scope of these searches, raising concerns about the use of inspections to gather evidence for criminal charges or property condemnation.

9.   Moreover, Local Law 3 imposes severe penalties, including fines up to $5,000, 30 days in jail, weekly fines for ongoing violations determined by Defendant Lawrence H. McMannis, liens on property, and restrictions on future rentals if I exercise my Constitutional right by declining inspections.

10.  Despite its purported purpose of ensuring safety, Local Law 3 targets rental properties exclusively, ignoring the need for similar inspections of non-rental properties. This unequal treatment disproportionately impacts Orthodox Jewish property owners.

11.  If Local Law 3 is enforced, I face irreparable harm, including the loss of rental income necessary to support my family and criminal prosecution and punitive fines for protecting my Constitutional rights.

12. Defendants will suffer no harm if enforcement is stayed, whereas I will continue to endure violations of my rights and financial loss.

13. Enjoining Local Law 3 would also maintain the current status quo—a status the Village itself deemed acceptable for over a century, never seeing the need for such intrusive legislation until the Orthodox Jewish community moved into Hillburn.

14. Furthermore, Hillburn adopted Local Law 3 without referring it to the Rockland County Department of Planning as required by General Municipal Law § 239-m, rendering its enactment procedurally flawed.

15. My property is well-maintained, with no history of complaints, code violations, or nuisances, and I maintain no substantive code violations or hazardous conditions that would warrant inspections. I have been a responsible landlord, and no tenant has ever raised concerns regarding the condition of my property.

16. No prior application for the relief requested herein has been made.

17. Plaintiff's Order to Show Cause for a temporary Restraining Order and Preliminary Injunction should be granted and Plaintiff should be awarded the following relief (i) a temporary restraining order and a preliminary injunction enjoining enforcement of Local Law 3 of 2023 of the Village of Hillburn; and (ii) Plaintiff's attorneys'' fees and costs associated with this motion for injunctive relief, and the underlying Complaint.

I hereby affirm this 13th day of January, 2025, under the penalties of perjury under the laws of the state New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a Court of law.

*Joshua Harper*
JOSHUA HARPER

Page **3** of **3**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-------------------------------------------------------------------X

JOSHUA HARPER,                                                      Index No.: 030207/2025

                 Plaintiff,

          -against-                                      **ORDER TO SHOW
                                                                   CAUSE WITH
                                                                   PRELIMINARY
VILLAGE OF HILLBURN, VILLAGE OF HILLBURN                           INJUNCTION AND
BOARD OF TRSUTEES, and LAWRENCE H.                                 TEMPORARY
MCMANNIS, as Building Inspector,                                   <u>RESTRAINING ORDER</u>**

           Defendants.

-------------------------------------------------------------------X

     **UPON** reading and filing the annexed Declaration of Joshua Harper, January 13, 2025, the

Summons and Verified Complaint used to commence this action, and the exhibits annexed thereto,

let Defendants show cause before a Justice of the Supreme Court of the State of New York, County

of Rockland, at the Courthouse located at 1 South Main Street, New City, New York, on January

____, 2025, at _____ __.m., or as soon thereafter as counsel may be heard, why an Order

should not be immediately entered preliminarily enjoining Defendants, their officers, agents,

servants, employees and attorneys and those acting in concert with them from taking any action to

enforce Local Law 3 of 2023 in the Village of Hillburn, entitled Regulating Rental Properties,

pending final resolution of this action, and granting such other and further relief as this Court

deems just proper, and equitable, and sufficient reason appearing therefore.

     **IT** being sufficiently alleged and shown that immediate and irreparable injury, loss, or

damage shall inure to Plaintiff Joshua Harper unless Defendants is restrained before and until a

preliminary injunction hearing can be held, it is hereby

**ORDERED** that Defendants show cause before a Justice of the Supreme Court of the State of New York, County of Rockland, at the Courthouse located at 1 South Main Street, New City, New York, on January _____, 2025, at _____ __.m., or as soon thereafter as counsel may be heard, why an Order should not be immediately entered temporarily  restraining Defendants, their officers, agents, servants, employees and attorneys and those acting in concert with them from taking any action to enforce Local Law 3 of 2023 in the Village of Hillburn, entitled Regulating Rental Properties; and it is hereby further

**ORDERED** that Defendants shall serve their answering papers upon Plaintiff's counsel on or before the _____ day of _____, 2025, by _____service, and Plaintiff shall serve their reply papers on Defendants' counsel on or before the _____ day of _____, 2025, by _____service.

Date:   New City, New York
        January _____, 2025

**ENTER:**


_____
Hon:                         J.S.C.

UCS-840
(rev. 12/16/2024)

# REQUEST FOR JUDICIAL INTERVENTION

Supreme COURT, COUNTY OF Rockland



Index No: _____030207/2025_____    Date Index Issued: _____01/13/2025_____

| | For Court Use Only: |
|---|---|
| | **IAS Entry Date** |

**CAPTION**    Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

Joshua Harper

Plaintiff(s)/Petitioner(s)

-against-

Village of Hillburn, Village of Hillburn Board of Trustees, Lawrence H McMannis

Defendant(s)/Respondent(s)

| | |
|---|---|
| **Judge Assigned** | |
| **RJI Filed Date** | |

**NATURE OF ACTION OR PROCEEDING:**    Check only one box and specify where indicated.

**COMMERCIAL**
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (specify): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**TORTS**
- ☐ Asbestos
- ☐ Environmental (specify): _____
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (specify): _____
- ☐ Other Negligence (specify): _____
- ☐ Other Professional Malpractice (specify): _____
- ☒ Other Tort (specify): CPLR 3001

**SPECIAL PROCEEDINGS**
- ☐ Child-Parent Security Act (specify): ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☐ CPLR Article 75 - Arbitration    [see *NOTE* in **COMMERCIAL** section]
- ☐ CPLR Article 78 - Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 - Kendra's Law
- ☐ MHL Article 10 - Sex Offender Confinement (specify): ☐ Initial ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (specify): _____
- ☐ Other Special Proceeding (specify): _____

**MATRIMONIAL**
- ☐ Contested
    - **NOTE:** If there are children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum (UCS-840M)**.
    - *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**REAL PROPERTY** Specify how many properties the application includes: _____
- ☐ Condemnation
- ☐ Mortgage Foreclosure (specify): ☐ Residential    ☐ Commercial
    Property Address: _____
    **NOTE:** For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the **FORECLOSURE RJI ADDENDUM (UCS-840F)**.
- ☐ Partition
    **NOTE:** Complete and attach the **PARTITION RJI ADDENDUM (UCS-840P)**.
- ☐ Tax Certiorari (specify):    Section: _____ Block: _____ Lot: _____
- ☐ Tax Foreclosure
- ☐ Other Real Property (specify): _____

**OTHER MATTERS**
- ☐ Certificate of Incorporation/Dissolution    [see **NOTE** in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (specify): _____

**STATUS OF ACTION OR PROCEEDING**    Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☒ | ☐ | If yes, date filed: _____01/13/2025_____ |
| Has a summons and complaint or summons with notice been served? | ☐ | ☒ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION**    Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice    Date Issue Joined: _____
- ☐ Notice of Motion    Relief Requested: _____    Return Date: _____
- ☐ Notice of Petition    Relief Requested: _____    Return Date: _____
- ☒ Order to Show Cause    Relief Requested: Injunction/Restraining Order    Return Date: _____
- ☐ Other Ex Parte Application    Relief Requested: _____
- ☐ Partition Settlement Conference
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Waiver of Court Costs, Fees and Expenses
- ☐ Writ of Habeas Corpus
- ☐ Other (specify): _____

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | | |
|---|---|---|---|---|
| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

| PARTIES | | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | | |
|---|---|---|---|---|---|
| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
| ☐ | Name: Harper, Joshua<br><br>Role(s): Plaintiff/Petitioner | ARON GOLDBERGER, 119 Sixth Street , Hillburn, NY 10931, 470-228-8944, Aron@CondonPaxos.com | ☐ YES  ☒ NO | |
| ☒ | Name: Village of Hillburn<br><br>Role(s): Defendant/Respondent | 31 Mountain Avenue, Hillburn, NY  10931 | ☐ YES  ☒ NO | |
| ☒ | Name: Village of Hillburn Board of Trustees<br>Role(s): Defendant/Respondent | 31 Mountain Avenue, Hillburn, NY  10931 | ☐ YES  ☒ NO | |
| ☒ | Name: McMannis, Lawrence H.<br><br>Role(s): Defendant/Respondent | 31 Mountain Avenue, Hillburn, NY  10931 | ☐ YES  ☒ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER  RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:   01/13/2025

ARON GOLDBERGER
Signature

6078059
Attorney Registration Number

ARON GOLDBERGER
Print Name

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-------------------------------------------------------------------X

JOSHUA HARPER,                                     Index No.: 030207/2025

        Plaintiff,

      -against-

VILLAGE OF HILLBURN, VILLAGE OF HILLBURN
BOARD OF TRUSTEES, and LAWRENCE H.
MCMANNIS, as Building Inspector,

        Defendants.

-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE**
**FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

        Respectfully submitted,

        Aron Goldberger, Esq.
        Brian K. Condon, Esq.
        CONDON PAXOS PLLC
        55 Old Turnpike Road, Suite 502
        Nanuet, New York 10954
        (845) 627-8500
        Aron@CondonPaxos.com
        Brian@CondonPaxos.com
        *Attorneys for Plaintiff, Joshua Harper*

## INTRODUCTION

Plaintiff JOSHUA HARPER, by and through his attorneys, CONDON PAXOS PLLC, submits this Memorandum of Law in Support of his Order to Show Cause (the "Motion") for a Temporary Restraining Order and Preliminary Injunction pursuant to New York Civil Practice Law and Rules ("CPLR") 6301 as against Defendants VILLAGE OF HILLBURN, VILLAGE OF HILLBURN, BOARD OF TRUSTEES, and LAWRENCE H. MCMANNIS, as Building Inspector, (collectively "Defendants") enjoining the enforcement of Local Law 3 of 2023, entitled Rental Properties (the "Law" or "Local Law 3").

The Complaint and Declaration details an egregious and flagrant violation of Plaintiffs' fundamental right to be free from unreasonable search and seizures under the Fourth and Fourteenth Amendment to the United States Constitution. However, the Defendants have attempted to circumvent Plaintiff Harper's Constitutional rights through legislative efforts. This Law, which requires property owners to obtain permits and submit to warrantless inspections to rent their homes, is unconstitutional and disproportionately burden Orthodox Jewish residents like Plaintiff Harper.

Enacted amid a backdrop of growing hostility and discriminatory rhetoric against the Orthodox Jewish community, the Law is a thinly veiled effort to deter and suppress religious and cultural diversity in Hillburn, disguised as a neutral policy. Despite over a century without such legislation, Hillburn only deemed this measure necessary following the influx of Orthodox Jewish families, reinforcing its discriminatory intent. Plaintiff Harper, a responsible homeowner and landlord with no history of complaints or violations, faces irreparable harm, including violations of Constitutional rights, financial loss, and unwarranted government intrusion, absent judicial intervention to maintain the long-standing status quo. As such, Plaintiff Harper's Order to Show

Cause for a Temporary Restraining Order and Preliminary Injunction is essential to prevent this unconstitutional overreach and maintain the status quo.

## STATEMENT OF FACTS

For the sake of brevity and judicial economy, the Court is respectfully referred to the accompanying Verified Complaint, with exhibits, and Declaration of Plaintiff Joshua Harper, for a full recitation of the relevant and material facts.

## ARGUMENT

## PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION

Pursuant to CPLR 6301, Plaintiff Joshua Harper ("Plaintiff Harper" or "Plaintiff") is entitled to a temporary restraining order and preliminary injunction to prevent any further irreparable harm and to maintain the status quo pending trial. CPLR 6301 states as follows:

> A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff. A temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had.

It is well-settled that in order to be entitled to a preliminary injunction, the movant has the burden of demonstrating: (i) a likelihood on the success of the merits; (ii) the prospect of irreparable harm if the provisional relief is withheld; and (iii) a balance of equities in the moving party's favor. *Masjid Usman, Inc. v Beech 140, LLC*, 68 AD3d 942 [2d Dept 2009]. A court evaluating a motion for a preliminary injunction must be mindful that "[t]he purpose of a preliminary injunction is to maintain the status quo, not to determine the ultimate rights of the

parties." *Matter of Wheaton/TMW Fourth Ave., LP v New York City Dept. of Bldgs.,* 65 AD3d 1051 [2d Dept 2009]. As set forth below, Plaintiff Harper can demonstrate all three requisite prongs.

First, Plaintiff Harper is highly likely to succeed on the merits because Local Law 3 is jurisdictionally flawed and, therefore, null and void as a matter of law. More importantly, Local Law 3 unambiguously coerces Plaintiffs into consenting to quasi-criminal searches of his house, without a warrant, and irrespective of whether probable cause exist to conduct such a search. As such, the search itself violates the Fourth Amendment to the United States Constitution. Meanwhile, punishing Plaintiffs for withholding his consent to such a search violates the Fifth and Fourteenth Amendment's "unconstitutional conditions doctrine," as interpreted and applied by the Supreme Courts of the United States.

Secondly, Plaintiffs face irreparable harm insofar as Hillburn maintains the power to criminally prosecute him for refusing their consent to this unconstitutional search, while fining him on a daily basis in response to evidence adduced through such searches and destroying the entire value of his rental investment.

Thirdly, the requested injunctive relief would not result in any injury to Defendants or to third parties, as Plaintiff Harper seeks to maintain the status quo and merely request the right to engage in inherently harmless act of leasing his suitable hazard-free property to a family as he has done for years without incident in Hillburn. For the same reasons, the public interest is clearly in favor of injunctive relief. Moreover, enjoining Local Law 3 will benefit the public by maximizing the protection of citizens' Constitutional liberties - it is always in the public interest to prevent the violation of Constitutional rights.

Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 149 of 167

## Likelihood of Success

A likelihood of success on the merits may be sufficiently established even where the facts are in dispute and the evidence need not be conclusive. *Barbes Rest. Inc. v ASRR Suzer 218, LLC*, 140 AD3d 430 [1st Dept 2016]. Where, as here, the denial of a preliminary injunction would disturb the status quo and render the final judgment ineffectual, the degree of proof required to establish the element of likelihood of success on the merits is reduced. *Masjid Usman, Inc. v Beech 140, LLC*, 68 AD3d 942 [2d Dept 2009].

As an initial matter, General Municipal Law § 239-m provides that a proposed amendment of zoning ordinance or *local law* must be referred to the County Planning Agency if the amendment affects real property located within five-hundred (500) feet of "any existing or proposed county or state parkway, thruway, expressway, road or highway." See Gen. Mun. Law § 239-m(3) et seq.

Failure to make this referral constitutes a "jurisdictional defect" rendering the zoning amendment invalid as a matter of law. See *Calverton Manor, LLC v. Town of Riverhead*, 160 A.D.3d 842, 76 N.Y.S.3d 72 [2d Dept 2018]; *Annabi v. City Council of Yonkers*, 47 A.D.3d at 857, 850 N.Y.S.2d 625 [2d Dept 2008]; see *Matter of Roanoke Sand & Gravel Corp. v. Town of Brookhaven*, 24 A.D.3d 783, 785 [2d Dept 2005]; *Matter of Burchetta v. Town Bd. of Town of Carmel,* 167 A.D.2d 339, 340-341, 561 N.Y.S.2d 305 [2d Dept 1990]; *Matter of Old Dock Assoc. v. Sullivan,* 150 A.D.2d 695, 697, 541 N.Y.S.2d 569 [2d Dept 1989].

Here, it is clear that Hillburn failed to make this necessary referral of Local Law 3 to the County Planning Department. Consequently, Plaintiff seeks to enjoin Hillburn's rental property inspection and permit scheme, implemented by a law which is jurisdictionally null and void: Local Law 3.

I.   *The Village of Hillburn's warrantless search requirement violates the fundamental purposes of the Fourth Amendment*

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment was adopted specifically in response to the Crown's practice of using general warrants and writs of assistance to search "suspected places" for evidence of smuggling, libel, or other crimes. *Boyd v. United States,* 116 U.S. 616, 625–626 (1886). Early patriots railed against these practices as "the worst instrument of arbitrary power" and John Adams later claimed that "the child Independence was born from colonists' opposition to their use." *Id.,* at 625 (internal quotation marks omitted).

The Supreme Court of the United States has recognized that the Amendment reflects a number of foundational principles that require application in this case. *First*, the Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: when "the Government obtains information by physically intruding" on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment" has "undoubtedly occurred." *United States v. Jones, 132 S.Ct. 945, 950–951 (2012).*). The text of the Fourth Amendment reflects its close connection to property, since otherwise it would have referred simply to "the right of the people to be secure against unreasonable searches and seizures"; and the phrase "in their persons, houses, papers, and effects" would have been superfluous. Indeed, The Fourth Amendment "indicates with some precision the places and things encompassed by its protections: 'persons, houses, papers, and effects.'" *Oliver v. United States*, 466 U.S. 170, 176 (1984). A "search" occurs for Fourth Amendment purposes when the government physically

intrudes upon one of these enumerated areas, or invades a protected privacy interest, for t he purpose of obtaining information. Jones, supra, at 949–51, 181 L.Ed.2d 911 (2012); *Katz v. United States*, 389 U.S. 347, 360–61 (1967) (Harlan, J., concurring). Accordingly, "a warrant is generally required for a search of a home." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

*Second*, a fundamental purpose of the Amendment is "to protect against all general searches." *Go–Bart Importing Co. v. United States,* 282 U.S. 344, 357 (1931).

*Third*, "the suspicion-less search is one primary evil the Fourth Amendment was intended to stamp out." See *Boyd,* supra., at 625–630 (1886).

*Fourth*, "a search without a warrant demands exceptional circumstances." *McDonald v. U.S.*, 335 U.S. 451, at 454-455 (1948).

*Fifth,* each of the aforesaid principles apply not just to owner-occupied residential homes, but even to business and commercial property, and even to administrative and regulatory searches. In *New York v. Burger,* the Court held that "[a]n owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable. This expectation exists not only with respect to traditional police searches conducted for the gathering of criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes." *New York v. Burger,* 482 U.S. 691, 699 (1987). And in *Marshall v. Barlow's Inc.,* the Court added "[i]f the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards." *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312 (1978).

The Local Law 3 inspection violates each of these principles. First and foremost, it is indeed a "search." The Building Inspector may investigate every square inch of the home; to wit,

this wide scope and breadth of the search render it a *general* search. Meanwhile, it is axiomatic that anything within the Building Inspector's plain view can serve as evidence in a non-property-related related criminal prosecution of the property owner and/or tenant.

Second, the fruits of this search are used to penalize Plaintiff Harper. Section 188-4(B) indicates that an inspection report which reveals the presence of a violation that is not remedied within the arbitrary timeframe and satisfaction of the Building Inspector, constitutes a violation of Local Law 3, and could also result in criminal penalties.

Third, it is an absolutely suspicion-less search. Local Law 3 requires that rental homes in Hillburn be searched, irrespective of their condition, irrespective of whether tenant or neighbor complaints have been lodged against the property or its owner, and even if a property owner were to voluntarily undergo a private inspection from a non-governmental inspector.

Fourth, it is a search of the exact type of property explicitly protected: "houses." These houses are *homes*, and as to property owners, they are, at minimum, commercial property entitled to heightened protection. *New York v. Burger,* 482 U.S. 691 (1987).

Because the Fourth Amendment not only applies, but was ratified to guard against precisely the type of search Hillburn is mandating through Local Law 3, the only remaining question for the Court, on the merits, is whether subsequent precedent somehow exempts the Local Law 3 search from the Fourth Amendment's strictures. Because it does not, Plaintiff Harper is likely to prevail on the merits, and the search and its attendant terms must be enjoined.

## II.    *Warrantless administrative searches of rental homes are generally unconstitutional*

Courts to have addressed the issue within the proper context have repeatedly concluded that searches of rental houses, even if "administrative" in nature, require a warrant. First and foremost, such searches must abide by the Supreme Court of the United States' 1967 decision in *Camara v.*

*Municipal Court.* There, the Supreme Court held unconstitutional a San Francisco ordinance which permitted nonconsensual warrantless inspections of buildings or premises to ensure compliance with the city's housing code. *Camara v. Municipal Ct.*, 387 U.S. 523 (1967). The Court found applicable to that situation the governing principle that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." 387 U.S. at pp. 528–529.

Further, since "the governmental purpose behind the search would not be frustrated by the burden of obtaining a warrant, and because administrative searches of the type there at issue involved significant intrusions upon the interests protected by the Fourth Amendment," the Court determined that such searches could not be made without the owner's consent unless a search warrant had first been obtained. *Id.*

Later, the Court reinforced this ruling, holding in *See v. City of Seattle* that the warrant procedure and the prohibition against nonconsensual warrantless entry outlined in *Camara* would be applicable to private commercial premises. *See v. City of Seattle*, 387 U.S. 541 (1967).

Likewise, the Court of Appeals in *Sokolov v. Village of Freeport* unanimously held that imposition of a penalty upon a landlord for renting his premises without first consenting to a warrantless search violates the property owner's Fourth Amendment rights. *Sokolov v. Village of Freeport*, 52 N.Y.2d 341, 420 N.E.2d 55 [1981].

The Court's description of the municipal ordinance before it demonstrates that it was strikingly similar to Hillburn's Local Law 3: (1) "Presented for our determination is the constitutionality of a municipal ordinance which provides, effectively, that a landlord is required to consent to a warrantless inspection of his property in order to obtain a rental permit;" (2) "The amended ordinance provides, in effect, that no one can let or relet a residence rental property within the

Village of Freeport without first obtaining a permit from the village. No permit can issue without an inspection of the premises to determine that the property is 'safe, clean, sanitary, in good repair, and free from rodents and vermin;" and (3) "The village may impose a penalty of $250 per day for each day in which a building is occupied without a rental permit. Thus, in substance, a landlord is subject to a fine of $250 per day for failure to consent to a warrantless administrative inspection." *Id.*, at 344-345 (Further explaining "[u]nder the Freeport ordinance a warrantless search is not directly authorized, but instead the ordinance provides that an individual will be subject to criminal penalty if he rents or rerents his premises without first obtaining a permit, which in turn can be obtained only if the property owner consents to an inspection").

The Village there argued that failure to consent to a warrantless inspection was not punishable under the ordinance, but only the renting of the property without a permit. The Court responded "[w]e find this line of reasoning to be unpersuasive, for through an indirect method the property owner is being penalized for his failure to consent to a warrantless search. In this instance the property owner's consent is not voluntarily given, as it is clearly a product of coercion. <u>A property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property</u>." *Id.*

Importantly, the Court further reasoned as follows: "the village may not compel the owner's consent to a warrantless inspection upon the theory that these searches are a burden which a property owner must bear in exchange for the right to open his property to the general public for rental. It is beyond the power of the State to condition an owner's ability to engage his property in the business of residential rental upon his forced consent to forego certain rights guaranteed to him under the Constitution." Thus, the Court applied and enforced *Camara* to invalidate a search

identical to that mandated by Hillburn's Local Law 3, and further explained how such a search violates the Fifth and Fourteenth Amendment's unconstitutional conditions doctrine.

*Camara* and *Sokolov* persuasively demonstrate that warrantless searches of rental property violate the Fourth Amendment. Further, the equally repugnant choices for Plaintiff Harper is: (1) the denial of a permit for refusing to consent to the inspection and thus loss of the ability to make commercial use of his property for economic gain; (2) the withdrawal of consent, which will result in the imposition of substantial monetary fines for refusing to allow the inspection; or (3) consent in advance to the warrantless search or inspection, regardless of the necessity of such an inspection or search. Attempting to coerce a sacrifice of Fourth Amendment rights through an array of such choices violates Plaintiff Harper's Fourth and Fourteenth Amendment rights to due process and freedom from unconstitutional conditions.

This precedent, striking down nearly identical search requirements, demonstrates that Plaintiff Harper is likely to prevail on the merits of his Fourth, Fifth, and Fourteenth Amendment claims. Accordingly, Plaintiff Harper is likely to prevail on the merits, and this Court should enjoin Local Law 3's search requirement and ancillary regulations.

III.     ***It is no defense that Hillburn's search is indirectly rather than directly coercive***

At first glance, one may believe that Local Law 3 does not *force* a property owner to submit to a warrantless inspection, since the owner may avoid the search by ceasing the leasing of his property altogether. Such a view would misguidedly overlook the Supreme Court's "Unconstitutional Conditions" Doctrine, which arises from the Due Process guarantees articulated in the Fifth and Fourteenth Amendments to the United States Constitution.

The Supreme Court has confirmed in a variety of contexts that "government may not deny a benefit to a person because he exercises a constitutional right." *Regan v. Taxation With*

*Representation of Wash.,* 461 U.S. 540, 545 (1983); see also, e.g., *Rumsfeld v. Forum for Academic and Institutional Rights, Inc*., 547 U.S. 47, 59–60 (2006).

Those cases reflect an overarching principle, known as the unconstitutional conditions doctrine, that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v St. Johns River Water Management Dist.,* 133 S.Ct. 2586, at 2594 (2013). Pursuant to this Doctrine, "[R]egardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them." *Koontz,* supra. In 2013, the Supreme Court applied the Unconstitutional Conditions Doctrine within the context of land use permitting. *Id*. (explaining that "land-use permit applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take," citing *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 547 (2005); *Dolan v. City of Tigard,* 512 U.S., 374 (1994).

Despite these rights, Local Law 3 commands Plaintiff Harper to choose between his Constitutionally protected freedom from warrantless searches and his Constitutionally protected property rights. Due Process forbids such a choice. At bottom, Hillburn imminently threatens to force Plaintiff Harper into forfeiting his Fourth Amendment rights by, in response to the exercise of those rights, (1) withholding relatively-newly-required rental permits needed to rent him home in Hillburn and/or (2) prosecuting Plaintiff Harper for criminal violations should he rent his home without newly required rental permits. Yet, this is a false choice and such indirect coercion is

Page **12** of **20**

forbidden. Consequently, Plaintiff Harper is highly likely to prevail on the merits of his claim, and the Local Law 3 search requirement must be enjoined.

IV. ***Local Law 3 of 2023 is insufficient to support the issuance of a warrant***

Plaintiff Harper is further likely to succeed on the merits because Hillburn cannot, in the absence of specific complaints and targeted searches pursuant thereto, remedy its warrantless search requirement by simply seeking and obtaining a warrant to search Plaintiff Harper's property. The warrant authority enacted in Local Law 3 is insufficient to form the administrative probable cause necessary to obtain a warrant (due to a lack of neutral principle and unconstrained discretion of enforcement agents). Consequently, in the absence of a sufficiently specific complaint regarding Plaintiff Harper's house, Hillburn must be enjoined from attempting to seek and/or execute a warrant to perform an *entire search* of Plaintiff Harper's house.

Importantly, Hillburn cannot cure its lack of authority by simply writing itself a warrant provision in Local Law 3. In *Barlow's,* the Supreme Court held that probable cause justifying the issuance of a warrant for administrative purposes may be based either on "specific evidence of an existing violation" or "on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular establishment.'" *Id.* at 320. Expounding on the second basis, the Court noted that a "warrant showing that a specific business has been *chosen* for [a] search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources ... would protect an employer's Fourth Amendment rights." *Id*. at 321 (emphasis added).

Local Law 3 is not "an administrative plan containing specific neutral criteria." *Barlow's*, 436 U.S. at 323. Plaintiff Harper could build a new home, and it would still be subject to inspection. Meanwhile, a home right next to Plaintiff Harper's house may not be subjected to an inspection,

irrespective of its condition simply because it is owner-occupied, even though it may be the same age or older, reside on the same street, or be in objectively worse shape. Can Hillburn honestly assert that the threat posed by one is greater than the other? Of course not.

Consequently, one wealthy enough to purchase his or her own home has essentially purchased back his or her Fourth Amendment rights from Hillburn. Lower income and middle class residents are left to suffer these degrading inspections, irrespective of whether their property is in objectively better or worse condition. At the end of the day, Hillburn fails to establish the type of "neutral criteria" sufficient to form probable cause for a warrant to issue.

Notably, in *Camara,* the Supreme Court suggested that the administrative plan at issue there *may* have sufficed as a basis to obtain a warrant (this decision predates the *Barlows* requirement of neutrality). However, the distinction between that program and Local Law 3 is telling, and the Court found the distinction relevant to its analysis: the rental inspection program under review in *Camara* contemplated "city-wide compliance with minimum physical standards for private property" and code enforcement searches with respect to entire "areas." San Francisco's Ordinance did not and single out single family rental houses alone.

Meanwhile, the Building Inspector in the field is, by law, unconstrained in the scope of his search. The Building Inspector could find a reason to spend 30 minutes at one home, and three days at another. In fact, Local Law 3 leaves inspections at the discretion of the Building Inspector. Such a lack of constraint opens the door to abuse and further defeats the Supreme Court's mandate of neutrality.

Finally, these factors must be weighed in a heightened context: while the Supreme Court articulated them in the context of pure commercial property, such as warehouses, and machine shops, the regulatory scheme at issue here seeks governmental access not just to commercial

properties, but to a much more intimate location: peoples' homes. All the while, the Fourth Amendment expressly protects "houses."

In light of these principles, Hillburn cannot seek, obtain, or execute a warrant on Plaintiff Harper's property. Consequently, Plaintiff Harper remain likely to prevail on the merits of his Fourth, Fifth, and Fourteenth Amendment claim, even if Hillburn were to claim the power (as a litigation position) to seek a warrant. Local Law 3's search requirement must be enjoined.

**Plaintiff will Sustain Irreparable Harm Absent the Preliminary Injunction**

In order to be entitled to injunctive relief, a movant must establish that it is likely to suffer irreparable harm absent the injunction, movant need not establish that irreparable harm is an absolute certainty. *Chernoff Diamond & Co. v Fitzmaurice, Inc*., 234 AD2d 200 [1st Dept 1996]. Irreparable injuries for the purpose of equity, has been held to mean any injury for which money damages are insufficient," *Walsh v Design Concepts, Ltd.*, 221 AD2d 454 [2d Dept 1995].

It "is well-settled that an alleged constitutional violation constitutes irreparable harm." *Basank v. Decker*, 449 F. Supp. 3d 205, 213 (S.D.N.Y. 2020) (citing *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury.")); *see also Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary."); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (clarifying that "it is the alleged violation of a constitutional right that triggers a finding of irreparable harm" and a substantial likelihood of success on the merits of a constitutional violation is not necessary); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of [constitutional] freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."); *Basank*, 449 F.Supp. 3d at 210 ("Petitioners have

shown irreparable injury by establishing the risk of harm to their health and to their constitutional rights."); *Sajous v. Decker*, No. 18 Civ. 2447, 2018 WL 2357266, at *6 (S.D.N.Y. May 23, 2018) (finding that immigration detainee established irreparable injury by alleging that prolonged immigration detention violated his constitutional due process rights).

Further, the protection of Fourth Amendment rights warrants equitable relief: "given the fundamental right involved, namely, the right to be free from unreasonable searches— [one] may suffer irreparable harm arising from a possible deprivation of his constitutional rights." *See Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir.1984).

Here, Plaintiff Harper will without question be irreparably harmed if Defendants are permitted to enforce Local Law 3, since the existence of a Constitutional violation constitutes irreparable harm without any further evidentiary showing.

However, even with irreparable harm so obvious, it bears mentioning that the continuation of the irreparable harm is inevitable absent Court intervention, as Local Law 3 of 2023 unlawfully compels Plaintiff Harper to either consent to unconstitutional warrantless inspections of his private property or face severe penalties, including substantial fines, imprisonment, the loss of rental income, and liens on his property.

There is no question that Plaintiff Harper did not relinquish his Constitutional rights by renting his single unit property to a family. Compliance would violate Plaintiff's constitutional rights to privacy and property under the Fourth and Fourteenth Amendments, while refusal would subject him to harsh and excessive punitive measures. No adequate remedy exists at law to compensate for these harms, as the deprivation of Constitutional rights and the chilling effect on Plaintiff Harper's ability to lawfully rent his property cannot be remedied by monetary damages alone. Accordingly, irreparable harm has been established.

Page **16** of **20**

## Balance of Equities in Favor of Injunction

Finally, Plaintiff has demonstrated the third prong of the test for injunctive relief: that the equities tip sharply in his direction. *See, Clarion Assoc., Inc. v D.J. Colby Co., Inc.*, 276 AD2d 461 [2d Dept 2000]. A party seeking injunctive relief must establish that the burden caused to the defendant by the imposition of the injunction is less than the harm caused to the plaintiff by the defendant's activities. *Burmax Co., Inc. v B & S Indus., Inc.*, 135 AD2d 599 [2d Dept 1987].

The balance of equities between the Parties, and the public interest, both tip overwhelmingly in favor of granting injunctive relief, including a TRO. In the absence of injunctive relief, Plaintiff Harper will continue to suffer daily violation of his fundamental Fourth and Fourteenth Amendment rights; in contrast, if injunctive relief is granted, Defendants will suffer no harm and will simply be compelled to conform their rules with the United States Constitution. This would maintain the current status quo, a status the Village itself deemed acceptable for over a century, never seeing the need for such intrusive legislation until the Orthodox Jewish community moved into Hillburn.

Further, Plaintiff Harper faces (1) loss of his rights; or (2) criminal prosecution and sanction in response to the exercise of his fundamental constitutional rights. At minimum, he faces unfathomable civil sanctions, the non-payment of which will then subject him to further criminal sanctions. Each harm is irreparable and demands equitable relief.

The public interest would also be served by granting injunctive relief because doing so would uphold the Constitution and comply with the Supreme Court's Fourth and Fourteenth Amendment jurisprudence; in contrast, denial of injunctive relief would cause severe harm to the public interest, since public authorities—here, Hillburn officials—that flout the Constitution cause harm to the public.

**Plaintiff Should Not Be Required to Post More Than a De Minimis Bond**

The temporary restraining order should, moreover, be granted without requiring an undertaking by Plaintiff. CPLR 6312 (b) directs the court to fix an undertaking in an amount that will compensate the defendant for damages incurred by reason of an injunction in the event it is determined that the plaintiff was not entitled to the injunction. *91-54 Gold Rd., LLC v Cross-Deegan Realty Corp.*, 93 AD3d 649 [2d Dept 2012]. The fixing of the amount of an undertaking is a matter within the sound discretion of the Supreme Court, and its determination will not be disturbed absent an improvident exercise of that discretion. *Olympic Ice Cream Co., Inc. v Sussman*, 151 AD3d 872 [2d Dept 2017].

Accordingly, an undertaking is not a required condition to this Court granting Plaintiff the temporary restraining order requested herein. Based upon the arguments set forth, *supra*, Plaintiff requests this relief without an undertaking or no more than a *de minimis* bond because Defendants will suffer no harm if the requested injunction is granted. Maintaining the status quo will merely suspend enforcement of Local Law 3, a Law that was not deemed necessary for over a century until the Orthodox Jewish community began moving into Hillburn. Therefore, a bond is unnecessary to protect defendants from harm or loss during the pendency of this action.

## **CONCLUSION**

Defendants' violation of the Constitution is egregious and clear-cut. The Village of Hillburn's Local Law 3 of 2023, mandating warrantless searches of the properties of those owning in and living in rental homes within Hillburn, unduly infringes upon Plaintiff Harper's Fourth, Fifth, and Fourteenth Amendment rights. The fees and permit requirement are each dependent upon and intertwined with the unlawful inspection requirement. Accordingly, Plaintiff Harper's motion for a Temporary Restraining Order and Preliminary Injunction should be granted and Plaintiff Harper should be awarded the following relief: (i) a temporary restraining order and a preliminary injunction enjoining enforcement of Local Law 3 of 2023; and (ii) Plaintiff's attorneys' fees and costs associated with this motion for injunctive relief, and the underlying Complaint.

Dated:    Nanuet, New York
          January 13, 2025

                                CONDON PAXOS PLLC

                                By: *Aron Goldberger*
                                    Aron Goldberger
                                    Brian K. Condon
                                    *Attorneys for Plaintiff, Joshua Harper*
                                    55 Old Turnpike Road, Suite 502
                                    Nanuet, New York 10954
                                    (845) 627-8500 (telephone)
                                    Aron@CondonPaxos.com
                                    Brian@CondonPaxos.com

Page **19** of **20**

Case 7:25-cv-00342-KMK    Document 1    Filed 01/14/25    Page 164 of 167

## **CERTIFICATE OF COMPLIANCE**

In accordance with 22 NYCRR § 202.8-b, I hereby certify that the foregoing Memorandum

of Law was prepared using a proportionally spaced typeface as follows:

Name of typeface:     Times New Roman
Point size:               12
Line spacing:           double

Word count: The total number of words in this Memorandum of Law, inclusive of point headings

and footnotes and exclusive of signature blocks and pages containing the table of contents, table

of citations, proof of service, certificate of compliance, or any authorized addendum containing

statutes, rules, regulations, etc., is 5,355 words. I have relied on the word count function of

Microsoft Word to prepare this Certification.

Dated: Nanuet, New York
          January 13, 2025

*Aron Goldberger*
Aron Goldberger

EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF NEW YORK
-------------------------------------------------------------X

**JOSHUA HARPER**,

                        Plaintiff,

      -against-

**VILLAGE OF HILLBURN**, **VILLAGE OF**              Index No. 030207/2025
**HILLBURN BOARD OF TRUSTEES, and**
**LAWRENCE H. MCMANNIS, as**
**Building Inspector**,

                     Defendants.

-------------------------------------------------------------X

## NOTICE OF REMOVAL

      **PLEASE TAKE NOTICE** pursuant to 28 U.S.C. § 1441(c) that on January 14,

2025, Defendants Village of Hillburn, Village of Hillburn Board of Trustees and

Lawrence H. McMannis, as Building Inspector, filed a Notice of Removal of the above-

captioned action in the United States District Court for the Southern District of New

York, together with copies of all process, pleadings and orders served upon Defendants in

this action. The case was removed from New York State Supreme Court, Rockland

County pursuant to 28 U.S.C. § 1441 *et seq*. A copy of the Notice of Removal filed in the

United States District Court is annexed hereto. Accordingly, the above-captioned matter

has now been removed from New York State Supreme Court, Rockland County to the

United States District Court for the Southern District of New York.

Dated: Suffern, New York
          January 14, 2025

                                        /s__*Terry Rice*_____
                                        Terry Rice
                                        Attorneys for Defendants
                                        Four Executive Boulevard
                                        Suite 100
                                        Suffern, New York 10901
                                        (845) 590-8430
                                        tr0823@msn.com

                       CERTIFICATE OF SERVICE

        I, Terry Rice, hereby state that I am not a party to the action, am over 18 years of age and
reside in Suffern, New York.  On January 14, 2025, I personally served a copy of the annexed
Notice of Removal in the above matter by emailing the same to:

        Brian Condon                          Rockland County Clerk
        Aron Goldberger                       rocklandcountyclerk@co.rockland.ny.us
        Attorneys for Plaintiff
        Brian@condonpaxos.com
        Aron@CondonPaxos.com


and personally served a copy of the annexed Notice of Removal in the above matter by filing the
same on the New York State Courts Electronic Filing site, thereby notifying:

        Brian Condon                          Rockland County Clerk
        Aron Goldberger
        Attorneys for Plaintiff

Dated: Suffern, New York
          January 14, 2025

                                        /s__*Terry Rice*_____
                                        Terry Rice
                                        Attorneys for Defendants
                                        Four Executive Boulevard
                                        Suite 100
                                        Suffern, New York 10901
                                        (845) 590-8430
                                        tr0823@msn.com