UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSHUA HARPER and DAVID
GOLDBERGER,

<em>Plaintiffs</em>,

v.

VILLAGE OF HILLBURN, VILLAGE OF
HILLBURN BOARD OF TRUSTEES, and
LAWRENCE H. MCMANNIS, as Building
Inspector,

<em>Defendants</em>.

No. 25-CV-342 (KMK)

<u>ORDER & OPINION</u>

---

<u>Appearances</u>:

Aron Goldberger Esq.
Brian K. Condon, Esq.
Condon Paxos PLLC
Nanuet, NY
*Counsel for Plaintiffs*

Terry Rice, Esq.
Law Office of Terry Rice
Suffern, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Plaintiffs Joshua Harper ("Harper") and David Goldberger ("Goldberger") (collectively,

"Plaintiffs") bring this Action against the Village of Hillburn (the "Village"), Village of Hillburn

Board of Trustees ("BOT"), and Lawrence H. McMannis, in his official capacity as building

inspector ("McMannis") (collectively, "Defendants"). (*See generally* Dkt. No. 9 ("Amended

Complaint" or "Am. Compl.").)[1]  Plaintiffs raise various claims pursuant to the General

Municipal Law ("GML") § 239-m, the Fair Housing Act (the "FHA"), 42 U.S.C. § 3604, *et seq.*,

and 42 U.S.C. § 1983, alleging multiple constitutional violations by an allegedly discriminatory

rental registration law.  (*See generally id.*; Pls.' Mem. of Law in Opp'n to Mot. to Dismiss

Pursuant to Rule 12(b)(6) ("Pls.' Mem.") (Dkt. No. 19).)

Before the Court are Defendants' Motion to Dismiss Plaintiffs' Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6), (*see* Not. of Mot. (Dkt. No. 15)), and

Plaintiffs' Motion for a Preliminary Injunction ("PI") and a Temporary Restraining Order

("TRO"), (*see* Emergency Mot. for TRO ("PI Motion") (Dkt. No. 5)).  For the reasons stated

below, Defendants' Motion is granted and the PI Motion is denied.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiffs' Amended Complaint and materials of

which the Court may take judicial notice.  They are taken as true for the purposes of resolving

the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v.*

*N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

### 1.  Friction between the Orthodox Jewish Community and the Village

Plaintiffs are Orthodox Jews.  (Am. Compl. ¶¶ 7–8.)  Plaintiff Harper owns two

residential properties in the Village; he resides in one and rents out the other.  (*Id.* ¶¶ 7, 50.)

Plaintiff Goldberger is a tenant of a residential property in the Village owned by Areivim, a

Jewish non-profit organization.  (*Id.* ¶ 8.)

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record.

The Village has a population of around 1,000 people.  (*Id.* ¶ 12.)  Defendant BOT is the governing and legislative body of the Village.  (*Id.* ¶ 10.)  Defendant McMannis is the Village's building inspector.  (*Id.* ¶ 11.)

Many Orthodox Jews have moved to the Village in the past decade.  (*Id.* ¶¶ 2, 25.)  They have faced antisemitism from some residents.  (*Id.* ¶¶ 2–3.)  For instance, the installation of an *Eruv*—a thin line bordering an area to enable Orthodox Jewish residents to use items like strollers during the Sabbath—was met with antisemitic backlash during public hearings and on Facebook posts.  (*Id.* ¶¶ 20–24.)

2.  <u>Rental Registration Law</u>

In May 2023, the BOT enacted Local Law Three of 2023 ("Local Law Three"), (*see* Am. Compl. Ex. G ("Local Law 3 of 2023") (Dkt. No. 9-7)), which required property owners to register rental property with the Village, submit a rental application form, and authorized a building inspector to conduct annual inspections of rental property, (Am. Compl. ¶¶ 52–54, 56). Plaintiffs allege that Local Law Three targeted and disproportionately burdened Orthodox Jews. (*See id.* ¶ 4.)

The rental application form required "the name of each occupant, whether the occupant is an adult or child, and the specific bedroom or room they occupy within their personal home." (*Id.* ¶ 53.)  If a property owner refused an inspection, the building inspector could apply for a search warrant subject to a demonstration of reasonable cause.  (*See* Local Law 3 of 2023 § 188-5.)  And upon refusal, the building inspector could deny or revoke the rental permit.  (*Id.* ¶¶ 59–60.)  A property owner could appeal such a decision to the BOT, which had to provide the property owner an opportunity to be heard.  (*Id.* ¶¶ 63–64.)  And non-compliance could result in fines of $5,000 per violation, jail time, and the imposition of property liens.  (*Id.* ¶¶ 65–66.)

After the Amended Complaint was filed, Local Law Three was amended by Local Law Two of 2025.  (*See* Defs.' Affirmation ("Rice Aff.") Ex. B ("Local Law Two" or "Rental Law") (Dkt. No. 16).)  The amended law allows an owner of rental property to receive a certification of code compliance from an engineer or architect licensed in New York State instead of an inspection by a building inspector.  (*Id.* at 8.)  And the revision, inter alia, deleted requirements for the name and number of unit occupants, allowed a building inspector's finding to be appealed to a hearing officer rather than the BOT, eliminated the jail sentence, and decreased the maximum fine per violation from $5,000 to $1,000.  (*See generally id.*)

B.  Procedural Background

Plaintiffs initiated this Action on January 13, 2025, in New York Supreme Court, County of Rockland.  (*See* Not. of Removal 1 (Dkt. No. 1).)  On January 14, 2025, Defendants removed the Action to this Court.  (*See generally* Not. of Removal.)  On January 15, 2025, Plaintiffs filed a request for a TRO and PI against Defendants.  (*See* PI Motion.)  After oral argument before the Court on the same day, (*see* Dkt. (Minute Entry for Jan. 15, 2024)), the TRO request was resolved by stipulation on January 17, 2025, that Plaintiffs will not be subject to any penalty for noncompliance while the PI Motion was pending, (Dkt. No. 8).

Plaintiffs filed an Amended Complaint on January 26, 2025.  (*See* Dkt. No. 10.)  On February 14, 2025, Defendants filed their Motion to Dismiss the Amended Complaint and accompanying papers.  (*See* Not. of Mot. to Dismiss; Decl. of T. Rice, Esq. in Supp. of Mot. (Dkt. No. 15); Def's Mem. of Law in Supp. of Mot. to Dismiss Pursuant to Rule 12(b)(6) ("Def's Mem.") (Dkt. No. 17).)  Plaintiffs filed their Opposition on February 28, 2025.  (*See* Pls.' Mem.)  Defendants filed their Reply on March 7, 2025.  (*See* Reply in Supp. of Mot. to Dismiss Pursuant to Rule 12(b)(6) ("Reply") (Dkt. No. 21).)

## II.  Discussion

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a plaintiff's claim based on "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  At the motion to dismiss stage, a court must "draw all reasonable inferences in [the] plaintiff's favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *United States v. Medtronic, Inc.*, No. 18-CV-1628, 2024 WL 4165522, at *3 (S.D.N.Y. Sept. 12, 2024) (alterations adopted) (quoting *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).

To survive a motion to dismiss, the Supreme Court has held that a complaint "does not need detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  However, "a [plaintiff's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  Certainly, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

When a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Bailon v. Pollen Presents*, No. 22-CV-6054, 2023 WL 5956141, at *5 (S.D.N.Y. Sept. 13, 2023) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Barkai v. Neuendorf*, No. 21-CV-4060, 2024 WL 710315, at *4 (S.D.N.Y. Feb. 21, 2024) (quoting *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted)).  Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe his complaint liberally and interpret it to raise the strongest arguments that it suggests." *Mejia v. Carter*, No. 21-CV-9049, 2022 WL 17653826, at *3 (S.D.N.Y. Nov. 2, 2022) (internal quotations and citations omitted), *report and recommendation adopted*, No. 21-CV-9049, 2022 WL 17624254 (S.D.N.Y. Dec. 13, 2022).  Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Barkai*, 2024 WL 710315, at *4 (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants

generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B.  Analysis

Plaintiff asserts six claims in the Amended Complaint: (1) a GML § 239-m claim, (Am. Compl. ¶¶ 80–90); (2) a § 1983 claim for unlawful searches and seizures, in violation of the Fourth Amendment, (*id.* ¶¶ 91–118); (3) a § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment, (*id.* ¶¶ 119–29); (4) a § 1983 claim for violation of the Due Process Clause of the Fourteenth Amendment, (*id.* ¶¶ 130–46); (5) a § 1983 claim for violation of the Takings Clause of the Fifth Amendment, (*id.* ¶¶ 147–57); and (6) a FHA claim, (*id.* ¶¶ 158–67).  Defendants move to dismiss all claims.  (*See generally* Def's Mem.)

"A facial challenge is an attack on a statute itself as opposed to a particular application[,]" and is "the most difficult [ ] to mount successfully[,]" *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 425 (2015) (internal quotation marks omitted), because, with the exception of First Amendment challenges, "the challenger must establish that no set of circumstances exists under which the [statute] would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987).  "The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]"  *Id.* at 745. Because the Rental Law has yet not been applied to Plaintiffs, all the constitutional claims are facial challenges.  (*See* Pl.'s Mem. 14) (recognizing that the due process claims are "limited to a facial challenge because Defendants, through their Building Inspector, have not applied the Rental Law to Plaintiffs").)  Thus, Plaintiffs have a "heavy burden" of demonstrating that the Rental Law is "facially unconstitutional" under the Fourth, Fifth, and Fourteenth Amendments. *Salerno*, 481 U.S. at 745 (internal quotation marks omitted).

Plaintiffs concede that the amended Rental Law renders the GML claim moot.  (Pl.'s Mem. 9.)  The Court agrees and dismisses Count One.  *See Randall v. Dish Net., LLC*, No. 17-CV-5428, 2018 WL 3235543, at *5 (E.D.N.Y. July 2, 2018) (granting defendant's motion to dismiss because "the [p]laintiff's failure to address [certain] claims in his opposition papers to [the] motion [to dismiss]," showed that they were "abandoned") (collecting cases); *see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . , a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").  The Court thus addresses the remaining claims in order.

### 1. Fourth Amendment Claim (Count II)

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures'" and "further provides that 'no Warrants shall issue, but upon probable cause.'"  *Patel*, 576 U.S. at 419 (quoting U.S. Const. amend IV).  Some "[s]earch regimes where no warrant is ever required may be reasonable where special needs make the warrant and probable-cause requirement impracticable."  *Id.* at 420 (internal quotation marks and alterations omitted).  "[C]ivil administrative inspection schemes, generally known as 'administrative searches,' undertaken for purposes other than to 'search for evidence of crime,'" are one such regime.  *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 487 (S.D.N.Y. 2019) (alteration adopted) (quoting *Michigan v. Tyler*, 436 U.S. 499, 511–12 (1978)).  In *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523 (1967), however, the Supreme Court clarified that municipal housing inspections were administrative searches covered by the Fourth Amendment.  *Id.* at 534; *see also Airbnb, Inc.*, 373 F. Supp. 3d at 487 (noting the Fourth Amendment applies to "municipal housing inspections");

*Cox v. Dawson*, No. 18-CV-578, 2020 WL 127890, at *5 (D. Conn. Jan. 10, 2020) (citing *Camara* and noting that "a housing inspection . . . is a classic example of an administrative search"); *Marom v. Town of Hempstead*, No. 14-CV-3005, 2017 WL 5495808, at *5 (E.D.N.Y. Mar. 22, 2017) ("The Supreme Court has held that the Fourth Amendment's protections also apply to regulatory inspections of homes and businesses."), *aff'd*, 710 F. App'x 38 (2d Cir. 2018).

Camara also clarified that, although administrative searches are not subject to the same standards as governing criminal searches, 387 U.S. at 538–39, such searches, "when authorized and conducted without a warrant procedure[,] lack the traditional safeguards which the Fourth Amendment guarantees to the individual," *id.* at 534; *see also Airbnb, Inc.*, 373 F. Supp. 3d at 487 (noting that administrative searches still require officials "to obtain an administrative warrant that satisfies a relaxed standard of probable cause" and citing *Camara*, 387 U.S. at 538); *Marom*, 2017 WL 5495808, at *5 ("[P]rior to conducting a regulatory inspection of a private home, a government officer must either obtain the homeowner's or tenant's permission, or obtain a warrant if permission is refused.").  Accordingly, the Supreme Court has clarified that—at minimum—"absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker."  *Patel*, 576 U.S. at 420; *see also Mamakos v. Town of Huntington*, 715 F. App'x 77, 78 (2d Cir. 2018) (summary order) (noting the "dispositive factor" for determining whether ordinances authorizing municipal inspections of residential properties are constitutional "was whether the ordinance requires either consent or a warrant before a search is conducted").

Without opining on the constitutionality of Local Law Three, the amended Rental Law does not violate the Fourth Amendment.  The crux of the Fourth Amendment claim in the Amended Complaint is that Local Law Three enables warrantless searches.  (*See* Am. Compl. ¶¶ 99–106.)  But the Rental Law allows an inspection only if the owner consents or the building inspector obtains a warrant.  (Rental Law § 188-5 ("Nothing in this chapter shall be deemed to authorize an enforcement officer to conduct an inspection of any premises subject to this chapter without the consent of the owner, tenant or lessee of the premises or without a warrant duly issued by an appropriate court.").)  An ordinance, like the Rental Law, that requires either "consent or a warrant for an administrative search except in emergency situations" is not facially unconstitutional.  *Pashcow v. Town of Babylon*, 421 N.E.2d 498, 498 (N.Y. 1981); *see also Wisoff v. City of Schenectady*, 670 F. App'x 724, 725 (2d Cir. 2016) (summary order) (affirming the lawfulness of an ordinance authorizing municipal inspections of residential property "either with the consent of the owners or, absent consent, pursuant to a search warrant"); *Mamakos v. Town of Huntington*, No. 16-CV-5775, 2017 WL 2861719, at *10 (E.D.N.Y. July 5, 2017) (affirming that an ordinance "'that requires either consent or a warrant for an administrative search except in emergency situations,' is not unconstitutional on its face" (quoting *Pashcow*, 421 N.E.2d at 498)), *aff'd*, 715 F. App'x 77 (2d Cir. 2018) (internal quotation marks and citation omitted).

And under the amended rental law, owners of rental property have the option to avoid a government inspection altogether by submitting a certification of compliance.  A licensed engineer or architect can certify compliance with, inter alia, the New York State Uniform Fire Prevention and Building Code and the Village Code.  (*See* Rental Law § 188-4(A).)  Plaintiffs note that in *Patel,* the Supreme Court held "that a statute authorizing a zoning officer's

administrative search without affording an opportunity to obtain pre-compliance review before a

neutral decisionmaker is 'facially invalid[.]'" (Pls.' Mem. 11 (quoting *Patel*, 576 U.S. at 421).)

But under the Rental Law, a licensed engineer or architect—a neutral decisionmaker—allows

pre-compliance review by issuing a certificate. Thus, there is no facial invalidity to the Rental

Law. *See Mamakos*, 2017 WL 2861719, at *13 (concluding a housing ordinance was not facially

unconstitutional where it allowed a property owner to "not consent to an inspection by a Town

ordinance/code enforcement official" if the owner "provide[d] a certification from a licensed

professional engineer or registered architect, or an independent state certified code enforcement

official," thus "afford[ing] rental property owners . . . an opportunity to have a neutral

decisionmaker review" (internal quotation marks omitted)).

 The amended Rental Law also moots other Fourth Amendment concerns raised by

Plaintiffs. For instance, Plaintiff argued that Local Law Three's requirement of the disclosure of

personal information—such as the names of inhabitants and what rooms they occupy—violated

their legitimate expectations of privacy. (Am. Compl. ¶¶ 93–95.) That provision was deleted in

the 2025 amendment, thus eliminating that potential Fourth Amendment violation. (*See* Rental

Law at 14.)

 Thus, the Court dismisses the Fourth Amendment claim.

 <u>2. Equal Protection Claim (Count III)</u>

 The Equal Protection Clause states that "no state shall . . . deny to any person within its

jurisdiction the equal protection of the laws," U.S. Const. Am. XIV, "which is essentially a

direction that all persons similarly situated should be treated alike," *City of Cleburne v. Cleburne*

*Living Ctr.*, 473 U.S. 432, 439 (1985). "Although the prototypical equal protection claim

involves discrimination against people based on their membership in a vulnerable class, [the

Second Circuit] ha[s] long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Artec Constr. & Dev. Corp. v. City of New York*, No. 15-CV-9494, 2017 WL 5891817, at *3 (S.D.N.Y. Nov. 28, 2017) (quotation marks omitted).

"Where . . . a plaintiff does not claim to be a member of a constitutionally protected class, he may bring an [e]qual [p]rotection claim pursuant to one of two theories: (1) selective enforcement, or (2) class of one." *Kirton v. Doe*, No. 20-CV-10860, 2024 WL 809904, at *5 (S.D.N.Y. Feb. 27, 2024) (internal quotation marks and citation omitted). "[B]oth types of [e]qual [p]rotection claims require a showing that the plaintiff was treated differently from another similarly situated comparator[.]" *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019). To prevail on a "class of one" claim, a plaintiff must establish that "[i] no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and [ii] the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id.* at 92 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008)). "[C]lass of one" claims require "an 'extremely high' degree of similarity between a plaintiff and comparator[.]" *Id.* at 93.

Although the question of "whether two comparators 'are similarly situated is [generally] a factual issue that should be submitted to the jury[,]'" *Marom v. Town of Greenburgh*, No. 18-CV-7637, 2020 WL 978514, at *6 (S.D.N.Y. Feb. 28, 2020) (alteration in original) (quoting *LTTR Home Care, LLC v. City of Mount Vernon Indus. Dev. Agency*, No. 17-CV-9885, 2019 WL

4274375, at *12 (S.D.N.Y. Sept. 10, 2019)), on a Rule 12(b)(6) motion the Court "must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated," *Williams v. Novoa*, No. 19-CV-11545, 2021 WL 431445, at *9 (S.D.N.Y. Feb. 5, 2021) (quoting *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 434) (S.D.N.Y. 2013)).

Thus, "[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Bishop v. Best Buy*, Co., No. 08-CV-8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (citations and quotation marks omitted); *see also Rosario v. Town of Mount Kisco*, No. 16-CV-8766, 2020 WL 764280, at *6 (S.D.N.Y. Feb. 14, 2020), *appeal withdrawn sub nom. Rosario v. Vill. of Mount Kisco*, No. 20-956, 2020 WL 3250485 (2d Cir. June 9, 2020) ("[I]t is . . . incumbent upon a [p]laintiff to allege facts that would allow this Court to determine if it is plausible that a jury could determine that the alleged comparators are similarly situated and were treated differently.")

Here, Plaintiffs bring a class-of-one claim. (Am. Compl. ¶¶ 122–27.) They allege that the Rental Law "arbitrarily discriminates against tenants and owners of single family rental homes, while refusing to inspect single family owner-occupied homes." (*Id.* ¶ 123.) But owners and renters of residential units are not similarly situated. *Cf. Moody v. Related Cos., L.P.*, 620 F. Supp. 3d 51, 55–56 (S.D.N.Y. 2022) (finding that condominium owners and tenants are not similarly situated). Indeed, it may seem obvious, but owners and renters of property do not share an "'extremely high degree' of similarity." *Hu*, 927 F.3d at 93. Among other differences, owners may be more likely to ensure fastidious compliance with the building and fire codes

because of the financial stake they have in their property, whereas renters do not share this pecuniary interest.  *Cf. Mamakos*, 2017 WL 2861719, at \*15 ("Here, the Town's clear-and-reasonable-interest is the safety of its residents who live in rental properties.  The enactment of the Rental Permit Law is rationally related to its purpose of furthering safety.  No further analysis of the law is necessary to dismiss Plaintiff's claim that the Rental Permit Law on its face violates the Equal Protection Clause." (quoting *Palmieri v. Town of Babylon*, No. 01-CV-1399, 2006 WL 1155162, at \*7 (E.D.N.Y. Jan. 6, 2006), *aff'd*, 277 F. App'x. 72 (2d Cir. 2008))); *Arrowsmith v. City of Rochester*, 765 N.Y.S.2d 130, 131 (N.Y. App. Div. 2003) ("The requirement that plaintiffs apply for renewal of certificates of occupancy every five years bears a reasonable relationship to defendant's legitimate goals of promoting public health and safety and maintaining property values[,] . . . and [the municipality's] decision not to impose the same requirement on owner-occupied residential property has a rational basis.").

Thus, the Court dismisses the Equal Protection claim.

3. Due Process Claim (Count IV)

Plaintiffs next allege that they suffered procedural and substantive due process violations.

a. Procedural Due Process

"The Fourteenth Amendment to the United States Constitution provides in part that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law.'" *Martinez v. Town of Clarkstown*, No. 23-CV-5364, 2024 WL 4124717, at \*2 (S.D.N.Y. Sept. 9, 2024) (quoting U.S. Const. Am. XIV, § 1).  "A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process." *Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019).  "The Second Circuit instructs" that "[t]he threshold issue is

always whether the plaintiff has a property . . . interest protected by the Constitution." *Morales v. New York*, 22 F. Supp. 3d 256, 276 (S.D.N.Y. 2014) (quoting *Narumanchi v. Bd. of Trs.*, 850 F.2d 70, 72 (2d Cir. 1988)). "Such property interests cannot be found on the face of the Constitution, but rather are created, and their dimensions are defined by, existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits." *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012) (alterations adopted) (internal quotation marks omitted) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Thus, "[w]hen determining whether a plaintiff has a claim of entitlement, [courts] focus on the applicable statute, contract or regulation that purports to establish" it. *Brown v. New York*, 975 F. Supp. 2d 209, 242 (N.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Martz v. Inc. Village of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994)).

However, "[a] 'unilateral expectation' is not sufficient to establish a constitutionally protected property right." *Looney*, 702 F.3d at 706 (quoting *Roth*, 408 U.S. at 577). "Rather, a plaintiff must have 'a legitimate claim of entitlement to' the alleged property interest." *Id.* (quoting *Roth*, 408 U.S. at 577); *see also Harrington v. County of Suffolk*, 607 F.3d 31, 34 (2d Cir. 2010) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (internal quotation marks omitted) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005))).

Moreover, "[w]here a local regulator has discretion with regard to the benefit at issue, there normally is no entitlement to that benefit." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994); *see also Demunn v. Sheepdog Warrior LLC*, No. 19-CV-1517, 2020 WL 6318221, at *14 (N.D.N.Y. Oct. 29, 2020) (holding that, "[p]laintiffs are not entitled to the

enforcement of discretionary zoning requirements"). In other words, "[w]here the deciding authority has the ability to exercise discretion in considering the merits of an application, there is simply no interest 'for process to protect.'" *Stahl York Ave. Co., LLC v. City of N.Y. Landmarks Preservation Comm'n*, 641 F. App'x. 68, 72–73 (2d Cir. 2016) (summary order) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)); *see also Melvin v. City of New York*, No. 24-CV-4118, 2025 WL 692126, at *5 (S.D.N.Y. Mar. 4, 2025) ("When the issuing authority has broad, significant discretion to deny an application based on a number of factors or criteria, the presence of that discretion precludes any legitimate claim of entitlement.") (quoting *Spanos v. City of New York*, No. 15-CV-6422, 2016 WL 3448624, at *2 (S.D.N.Y. June 20, 2016), *aff'd*, 672 F. App'x 124 (2d Cir. 2017))).

Plaintiffs argue that the Rental Law violates procedural due process because it (1) gives too much unbridled discretion to the building inspector with respect to the rental permits, and (2) a neutral decisionmaker is not guaranteed because the building inspector or other hearing officers can be appointed by the BOT. (Pls.' Mem. 14.)

The procedural due process claim fails for two reasons. First, Plaintiffs' facial challenge does not "establish that no set of circumstances exists under which the [statute] would be valid." *Salerno*, 481 U.S. at 745. Plaintiffs conjecture that the Rental Law does not "specify whether the Building Inspector *would* qualify as a hearing officer" or that "Board of Trustees *could* appoint a different hearing officer for different individuals." (Pls.' Mem. 14 (emphasis added).) These hypothetical musings reveal that circumstances exist in which the hearing officer could be an unbiased neutral decisionmaker, rendering the facial challenge futile. *See Hudson Shore Assocs. Ltd. P'ship v. New York*, 139 F.4th 99, 107, 112–15 (2d Cir. 2025) (affirming the dismissal of a facial procedural due process challenge where "the [plaintiff-landlords] failed to plausibly allege

16

that the [challenged] Vacancy Provisions are unconstitutional in all [their] applications" (internal

quotation marks omitted)); *see also Dorce v. City of New York*, 608 F. Supp. 3d 118, 142–43

(S.D.N.Y. 2022) (dismissing a facial procedural due process challenge because, "[w]hile there

remain questions as to whether this process was in fact followed in the plaintiffs' cases, there is

nothing facially unconstitutional" about the challenged provision).

Second, even on the merits, Plaintiffs fail to adequately plead that they have a property

interest in the rental permit.  Under the Rental Law, the issuance of a rental permit is a

discretionary matter.  (*See* Rental Law § 188-3(B) ("Upon completion and execution and

submission of the landlord registration statement as aforesaid, said registration shall be reviewed

by the Building Department or its designee for adequacy.").)  The ordinance includes various

reasons why a permit could be denied and a list of reasons that a permit could be revoked.  (*See

id.* §§ 188-8 to -9.)  Accordingly, because the issuance of the rental permit is a discretionary

process, Plaintiffs do not have a protectable property interest in the permit.  *See Gagliardi*, 18

F.3d at 192–93 (holding that landowners had no property interest in enforcement of zoning laws

for adjacent property, as municipal officials had broad discretion in determining whether to grant

or deny building permit, site plan, and variances); *RRI Realty Corp. v. Incorporated Vill. of

Southampton*, 870 F.2d 911, 918–19 (2d Cir. 1989) (holding that no property interest existed in

building permit because town officials had discretion to either grant or deny the permit); *689

Eatery Corp. v. City of New York*, 716 F. Supp. 3d 88, 204 (S.D.N.Y. 2024) (holding that the

plaintiffs had no property interest to be free from zoning regulations because the government had

significant discretion to enact regulations); *Stahl York Ave. Co., LLC*, 641 F. App'x. at 72–73

(holding that plaintiff lacked constitutionally protected interest in hardship relief from landmark

designation, since landmark preservation commission had discretion in making such a determination).

Thus, the Court dismisses the procedural due process claim

b. Substantive Due Process (Count IV)

As noted, Plaintiffs also plead a substantive due process claim.  (*See* Am. Compl. ¶¶ 130–46.)  "To state a claim for substantive due process a plaintiff must allege that: (1) he had a valid property interest and (2) 'defendants infringed on that . . . right in an arbitrary or irrational manner.'"  *Cherry v. N.Y.C. Hous. Auth.*, No. 15-CV-6949, 2017 WL 4357344, at *28 (E.D.N.Y. Sept. 29, 2017) (alteration omitted) (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014)).  "The threshold inquiry in a substantive due process analysis is whether the property interest claimed rises to the level of a property interest cognizable under the substantive Due Process Clause."  *Cunney v. Bd. of Trustees of Vill. of Grand View*, 56 F. Supp. 3d 470, 493 (S.D.N.Y. 2014) (alteration adopted) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 132 (2d Cir. 1998)).  "In order for an interest in a particular land-use benefit to qualify as a property interest for purposes of the substantive due process clause, a landowner must show a 'clear entitlement' to that benefit."  *Id.* (alteration adopted) (quoting *O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007)).

First, as a threshold matter, Plaintiffs cannot invoke the substantive due process doctrine to circumvent the requirements of a takings claim.  In *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 560 U.S. 702 (2010) (plurality opinion), the Supreme Court explained that plaintiffs cannot use substantive due process "to do the work of the Takings Clause" in circumstances in which "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior."  *Id.*

at 721; *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))); *Gounden v. City of New York*, No. 10-CV-3438, 2011 WL 13176048, at *4 (E.D.N.Y. Apr. 22, 2011) (finding that the Fifth Amendment, an explicit textual source, guides the analysis for plaintiff's taking claim rather than substantive due process).

Second, even considering the merits, Plaintiffs encounter the same roadblock as with the procedural due process claim—the lack of a protected property interest in the rental permit. As explained above, "a protected property interest does not exist where a local authority has discretion to deny the application on non-arbitrary grounds." *Martinez*, 2024 WL 4124717, at *4 (internal quotation marks and citation omitted). Because such discretion exists with respect to the rental permits here, Plaintiffs do not have a protected property interest in the permits, and thus cannot sustain a substantive due process claim. *See RRI Realty Corp.*, 870 F.2d at 918 ("The fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim."); *see also Watrous v. Town of Preston*, 902 F. Supp. 2d 243, 259–60 (D. Conn. 2012) (same); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 368 (S.D.N.Y. 2011) (same).

### 4. Takings Clause (Count V)

The Takings Clause of the Fifth Amendment provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. Am. V. The Takings Clause applies to the states through the Fourteenth Amendment. *See Kelo v. City of New London*, 545 U.S. 469, 472 n.1 (2005). To state a takings claim, Plaintiffs must show "(1) a property interest

(2) that has been taken under color of state law (3) without just compensation." *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, No. 19-CV-11285, 2021 WL 4198332, at *13 (S.D.N.Y. Sept. 14, 2021) (quoting *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 452 (S.D.N.Y. 1998)), *aff'd*, No. 21-2448, 2024 WL 1061142 (2d Cir. Mar. 12, 2024).  A plaintiff's property interest must stem from some "legitimate claim of entitlement" and not just an "abstract need or desire" or "unilateral expectation." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  The law recognizes two types of takings: physical takings and regulatory takings. *See Buffalo Teachers Fed'n v. Tobe,* 464 F.3d 362, 374 (2d. Cir. 2006).

Plaintiff Harper "recognize[s] that he bears a heavy burden" in bringing a claim under the Takings Clause.[2]  (Pls.' Mem. 17.)  This is correct.  The Takings Claim fails for two reasons. First, Plaintiff fails to allege a cognizable property interest.  Although Plaintiff Harper does not clarify the exact nature of the property interest at stake, analysis of the Amended Complaint reveals that the property interest Plaintiff evokes is not regarding the entire residential property, but in the rental permit.  (*See* Am. Compl. ¶ 154 ("A violation of Local Law 3 also allows the Building Inspector the revoke Plaintiff Harper's permit to rent his property[.]").)  As discussed above, the Court concludes that Plaintiffs fail to adequately plead that they had a property interest in the rental permit.  "It is black letter law that if the Plaintiffs do not have a protected property interest, the [Takings Clause of the Fifth] Amendment cannot work to take an interest that does not exist." *Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405, 425 (S.D.N.Y. 2022) (citing *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 261 (2d Cir. 2014)), *modified sub nom. Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 22-CV-

_____

[2] Only Plaintiff Harper brings a Takings Clause claim because he owns the properties; Plaintiff Goldberger rents.  (*See* Pls.' Mem. 17.)

2753, 2023 WL 6037949 (S.D.N.Y. Sept. 15, 2023). Thus, Plaintiff Harper has failed to plead a protectable property that plausibly states a Takings Clause claim.

Second, even if a property interest exists, the Takings Clause claim fails because the facial challenge is unsuccessful. As noted, a facial challenge is the "most difficult challenge to mount successfully," because the challengers "must establish that no set of circumstances exists under which the [the Rental Law] would be valid." *Salerno*, 481 U.S. at 745. Plaintiff does not meet this high bar because the Rental Law would not violate the Takings Clause if a rental permit is granted without causing economic harm after inspection or certification. The "uphill battle" of a facial claim is "made especially steep" when those seeking relief "have not claimed . . . that [government action] makes it commercially impracticable" for the plaintiffs to continue business use of their property. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495–96 (1987).

Thus, the Court dismisses the Takings Clause claim.

### 5. FHA (Count VI)

The FHA makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. § 3604(a), and likewise prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin," *id.* § 3604(b). Plaintiffs allege that they "are being subjected to excessive scrutiny and burdensome administrative obligations under the rental registry law, which disproportionately

impacts Jewish property owners and renters on the basis of religion in violation of the Fair

Housing Act[.]"  (*See* Am. Compl. ¶ 162.)  And they allege that the

> Village and residents' animus toward Orthodox Jews moving into Hillburn, as
> evidenced by their statements[,] was the significant factor in Hillburn's attempt to
> impose Local Law 3, with Hillburn now acting on behalf of their constituents to
> burden Plaintiffs, visibly Orthodox Jews in their dress and appearance, from renting
> or residing in their home.

(*Id.* ¶ 165.)

A plaintiff can establish a violation of the FHA by proving discrimination in the form of:

(1) "disparate treatment or intentional discrimination" or (2) "disparate impact of a law."  *Human*

*Res. Research & Mgmt. Grp., Inc. v. County of Suffolk*, 687 F. Supp. 2d 237, 254 (E.D.N.Y.

2010); *see also LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995) ("An FHA

violation may be established on a theory of disparate impact or one of disparate treatment.").

"To establish a prime facie case of intentional discrimination under the FHA, plaintiffs must

present evidence that animus against the protected group was a significant factor in the position

taken by the municipal decision-makers themselves or by those to whom the decision-makers

were knowingly responsive."  *Human Res. Research*, 687 F. Supp. 2d at 254 (citation and

internal quotation marks omitted).  Relevant considerations for "discerning a racially

discriminatory intent include the historical background of the decision particularly if it reveals a

series of official actions taken for invidious purposes, departures from the normal procedural

sequence, substantive departures, and the legislative or administrative history especially where

there are contemporary statements by members of the decisionmaking body, minutes of its

meetings, or reports."  *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 606 (2d Cir. 2016)

(alterations adopted) (citations and internal quotation marks omitted).

Here, Plaintiffs have not alleged sufficient facts to state a disparate treatment claim.  "A

claim for disparate treatment requires factual allegations that would permit the Court plausibly to

infer that Plaintiffs were treated differently from similarly situated persons because of their membership in a protected class." *Moody*, 620 F. Supp. 3d at 55 (citing *Boykin v. KeyCorp*, 521 F.3d 202, 214–15 (2d Cir. 2008)). The disparate treatment claim is not plausible because Plaintiffs do not allege that similarly situated non-Jewish renters were treated more favorably than Jewish renters under the Rental Law. *Cf. id.* at 56 (noting that "if Plaintiffs had alleged, in a non-conclusory manner, that tenants of affordable housing units who are white are given access to amenities denied to Black and Hispanic affordable housing tenants, they would adequately allege disparate treatment. Instead, because Plaintiffs have not adequately pleaded a comparator who is similarly situated but treated better, they have not adequately pled a disparate treatment claim."); *Indig v. Vill. of Pomona*, No. 18-CV-10204, 2024 WL 4008231, at *16 (S.D.N.Y. Aug. 30, 2024) (dismissing an FHA disparate treatment claim brought by an Orthodox Jewish plaintiff because while plaintiff "is a member of a protected class, he has not shown that Defendants' actions were improperly based on discriminatory animus, nor that similarly situated comparators were treated differently than him"); *Gurevitch v. Emerald Green Prop. Owners Ass'n, Inc.*, No. 23-CV-8156, 2025 WL 642347, at *9 (S.D.N.Y. Feb. 27, 2025) (dismissing an FHA disparate treatment claim because Hasidic Jewish plaintiffs did not allege that "Defendants did not charge non-Jewish residents for similar structures on or alterations to their properties" while charging Jewish residents).

Plaintiffs also fail to plausibly allege intent motivated by animus. They assert that animus towards Orthodox Jews was a "significant factor" in the passage of the Rental Law. (Am. Compl. ¶ 165.) To evince animus, Plaintiffs point to antisemitic Facebook posts by Village residents and antisemitic remarks by Village officials during meetings. (Pls.' Mem. 20–21.) Although the Court is deeply troubled by those comments, "stray remarks are insufficient to

plausibly allege an intent by defendants to discriminate against plaintiff." *Gurevitch*, 2025 WL 642347, at *10 (citation omitted); *see Mohamed v. McLaurin*, 390 F. Supp. 3d 520, 553 (D. Vt. 2019) ("When considering isolated stray remarks to determine whether they are probative of discriminatory intent, the more remote and oblique the remarks are in relation to the decision-maker's adverse action, the less they prove that the action was motivated by discrimination." (alterations adopted) (internal quotation marks and citation omitted)). "This is so even when the stray remarks come from decision-makers." *Gurevitch*, 2025 WL 642347, at *10 (internal quotation marks and citation omitted). The Facebook posts were made by Village residents who are not the decisionmakers behind the Rental Law. *See Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 281 (S.D.N.Y. 2019) ("Stray remarks by non-decisionmakers . . . are rarely given great weight."); *Paladino v. Beaumont*, No. 20-CV-65, 2023 WL 9469277, at *5 (W.D.N.Y. Sept. 1, 2023) ("[S]tray remarks are insufficient to plausibly allege an intent by defendants to discriminate against plaintiff."), *report and recommendation adopted*, 2024 WL 343308 (W.D.N.Y. Jan. 29, 2024). And the remarks by officials were made in board meeting about synagogues unrelated to the Rental Law. (*See* Am. Compl. ¶¶ 29, 30, 43.) These stray remarks are not sufficient to plausibly allege animus for the intentional discrimination claim. Thus, the Court dismisses the disparate treatment claim under the FHA.

The disparate impact claim also fails. "The starting place to allege a prima facie case of disparate impact housing discrimination [is] facts that tend to show that a facially neutral policy has a significantly adverse or disproportionate impact on persons in a protected group." *Moody*, 620 F. Supp. 3d at 57 (italics omitted). "At the pleading stage, a plaintiff must 'allege facts . . . or produce statistical evidence demonstrating a causal connection' between the challenged policy and the discriminatory effect." *Paige v. New York City Hous. Auth.*, No. 17-CV-7481, 2018 WL

3863451, at *3 (S.D.N.Y. Aug. 14, 2018) (quoting *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 543 (2015)).

Plaintiffs allege that the Rental Law "disproportionately impacts Jewish property owners and renters."  (Am. Compl. ¶ 162.)  Beyond this conclusory allegation, Plaintiffs allege no facts or statistics from which the Court can deduce that the facially neutral Rental Law has a disproportionate impact on Orthodox Jews.  Indeed, Plaintiffs offer no facts or statistics about the demographics of renters, housing market, or enforcement of the Rental Law on different communities.  Because Plaintiffs offer no statistical evidence or facts to sufficiently plead the existence of disproportionate impact, they also fail to "demonstrat[e] a causal connection" between the Rental Law and the alleged disproportionate burden on Orthodox Jews.  *Inclusive Communities*, 576 U.S. at 543; *see Dickerson v. BPP PCV Owners LLC*, No. 21-CV-9003, 2024 WL 1348497, at *3–4 (S.D.N.Y. Mar. 28, 2024) (conclusory assertions that defendant was motivated by discriminatory intent, in combination with allegations of "historic and widespread discrimination against African Americans in the [town housing complex]," are insufficient to state FHA claim); *Glover v. HPC-Eight, LLC*, No. 20-CV-1535, 2022 WL 1004572, at *9 (D. Conn. Apr. 4, 2022) ("Plaintiff's conclusory allegation that she was discriminated against due to Race[,] is insufficient to state a claim." (internal quotation marks and citation omitted)).  Thus, the Court dismisses the disparate impact claim under the FHA.

### III.  Conclusion

For the reasons set forth above, Defendants' Motion is granted and Plaintiffs' PI Motion is denied as moot.[3]  Because this is the first adjudication of Plaintiffs' claims on the merits, all

---

[3] *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 20-CV-6158, 2021 WL 4392489, at *10 n.8 (S.D.N.Y. Sept. 24, 2021) (dismissing preliminary

claims except count one are dismissed without prejudice.[4]  If Plaintiffs wish to file a second

amended complaint alleging additional facts and otherwise addressing the deficiencies identified

above, Plaintiffs must do so within 30 days of the date of this Opinion & Order.

The Clerk of the Court is respectfully requested to terminate the pending Motions, (Dkt.

Nos. 5, 15).

SO ORDERED.

Dated:    September 16, 2025
          White Plains, New York

                                      KENNETH M. KARAS
                                      United States District Judge

---

injunction as moot because each of plaintiffs' claims was dismissed), *aff'd sub nom.*
*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, No. 21-2822, 2022 WL
1697660 (2d Cir. May 27, 2022).

[4] Plaintiffs' GML claim is dismissed with prejudice as it was abandoned.  *See Jennings v.
Hunt Cos., Inc.*, 367 F. Supp. 3d 66, 69–70 (S.D.N.Y. 2019) ("[T]he [c]ourt considers these
claims abandoned and dismisses them with prejudice.").